Tracy J. Copenhaver
COPENHAVER, KATH, KITCHEN & KOLPITCKE, LLC
P.O. Box 839
Powell, WY 82435
Telephone (307) 754-2276
Fax (307) 754-4744
Email tracy@ckattorneys.net

Attorney for Powell Valley Health Care, Inc.,
Powell Hospital District, and Dr. Jeffrey Hansen

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

_____

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY | ) | |
| OF NEW YORK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CV-31-J |
| | ) | |
| POWELL HOSPITAL DISTRICT, | ) | |
| POWELL VALLEY HEALTH CARE, | ) | |
| INC., HEALTHTECH MANAGEMENT | ) | |
| SERVICES, INC., JEFFREY HANSEN, | ) | |
| M.D., and WILLIAM D. PATTEN, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**DEFENDANT POWELL HOSPITAL DISTRICT, POWELL VALLEY HEALTH CARE, INC., and JEFFREY HANSEN'S ANSWER AND DEFENSES TO HOMELAND INSURANCE COMPANY OF NEW YORK'S COMPLAINT AND COUNTERCLAIM AGAINST HOMELAND INSURANCE COMPANY OF NEW YORK**

COME NOW, the Defendants Powell Hospital District, Powell Valley Health Care, Inc. and Jeffrey Hansen (the Defendants for purpose of this pleading), by and through their counsel, Tracy J. Copenhaver of Copenhaver, Kath, Kitchen & Kolpitcke, LLC, and for their answer to the Complaint of Plaintiff, answer as follows:

1

**Nature of Action**

1.   These Defendants admit the description of the nature of action set forth in paragraph 1, but deny that Homeland is entitled to a declaration that it has no duty to defend or identify the Defendants.

**Parties**

2.   Defendants are without sufficient knowledge or information from which to ascertain the truth of this allegation and it is therefore denied.

3.   Admit.

4.   Admit.

5.   Defendants are without sufficient knowledge or information from which to ascertain the truth of this allegation and it is therefore denied.

6.   Deny.

7.   Deny that William D. Patten is currently a resident of Park County, Wyoming, and admit the remaining allegations.

**Jurisdiction and Venue**

8.   Admit.

9.   Admit.

10.   Admit.

11.   Admit.

**The Underlying Claims and Related Claims**

12.   Admit that the action addresses certain insurance coverage issues for Defendants, and deny the remaining allegations in paragraph 12.

2

13.  Admit that the Plaintiff has asserted various claims against the Defendants and that such claims include a claim of allegedly negligent medical procedures performed by Dr. Hansen and that some of the claims include an allegation of negligent credentialing, hiring, supervising, monitoring, reviewing and training, all of which separately set forth completely separate and unrelated claims for medical negligence and which claims are not all identical and are not related and, except as admitted herein, the remaining allegations are denied.

14.  Deny.

15.  Deny.

16.  Deny.

17.  Deny.

18.  Admit.

19.  Admit that Scott Wilson and Brad Mangum provided some information pertaining to some patients, none of which information confirmed any medical negligence by Dr. Hansen prior to August 1, 2013 pertaining to any of the underlying claims, nor did it give rise to any reasonable belief or understanding prior to August 1, 2013 that any of the underlying claimants might be pursuing a claim at the Hospital and except as admitted herein, deny any and all other allegations.

**The Insurance Contracts**

20.  Admit.

21.  Admit that the primary policy is attached and the language therein set forth speaks for itself, and deny any allegations to the contrary.

3

22.   Admit that the primary policy includes the coverage terms, conditions, definitions and exclusions set forth in paragraph 22, and assert that there are other relevant coverage terms, conditions and definitions.  Defendants assert that the quoted language does not completely or accurately represent the terms of the insurance policy relevant to this dispute.  Defendants deny all other allegations not herein admitted.

23.   Admit and assert that there are other applicable provisions relevant to the additional insured.

24.  Admit.

25.  Admit.

26.  Admit.

27.  Admit.

28.   Admit that the excess policy contains the coverage terms, conditions and definitions set forth in paragraph 28 and assert that there are other applicable and relevant coverage terms, conditions and definitions and that the quoted language does not completely or accurately represent the terms of the insurance policies relevant to this dispute.

**Demand for Coverage and Reservation of Rights**

29.  Admit.

30.  Admit.

31.   Defendants are without sufficient knowledge or information from which to ascertain the truth as to what information Plaintiff learned of, when it learned of such information and upon what information it based its decision and that allegation is therefore

4

denied.  Defendants admit that Plaintiff notified the Hospital and Dr. Hansen that there was no coverage and there would be no defense.

32.  Admit.

33.  Admit.

34.  Admit that paragraph 34 sets forth the position of the Plaintiff, but deny that Defendants agree with Plaintiff's position.

35.  Admit, and assert that Plaintiff has to this date not paid any of the defense costs.

36.  Admit.

## Count I
## Declaratory Judgment

37.  These Defendants hereby incorporate and re-allege each of their answers to the foregoing allegations in the Complaint as if fully set forth herein.

38.  Admit.

39(a)-(j), (l) and (m) are denied; and admit that the deductible applies as set forth in the policy, and deny any other allegations to the contrary.

## AFFIRMATIVE DEFENSES

1.  Homeland's request for relief is barred by the doctrines of waiver, laches and estoppel.

2.  <u>Accord and Satisfaction</u>.  The Plaintiff demanded and was paid for insurance coverage pursuant to the terms of the insurance agreement and demand for payment and, in exchange therefore, owes an obligation to the Defendants to provide the coverage that it represented it would be providing to Defendants.

5

3. <u>Estoppel</u>.  Plaintiff represented to the Defendants that the information contained in the AIG application was acceptable for purposes of providing professional services liability insurance and the Defendants relied upon the representation that the information requested by AIG for the AIG insurance program was satisfactory to the Plaintiff for purposes of the Plaintiff's professional liability insurance coverage.

4. <u>Waiver</u>.  The Plaintiff having chosen not to use its own insurance application, requesting specific information as to incidents that could lead to a claim, has thereby waived its rights to assert the failure to provide such information as a defense to any of the claims being asserted by the underlying claimants.

5. Plaintiff's failure to request information regarding incidents that could reasonably be foreseen to result in a claim results in the Plaintiff waiving and being barred from asserting that the failure to provide such information constitutes legal grounds to deny coverage.

6. <u>Laches</u>.  The Plaintiff unreasonably failed and delayed providing notice or information to the Defendants that Plaintiff intended to deny coverage for any incident which the Defendant was aware of or could have reasonably foreseen would result in a future claim until after Defendant had discontinued its insurance coverage with its prior carrier and accepted insurance coverage with the Plaintiff and paid a premium to Plaintiff which Plaintiff accepted, without providing such information or notice to the Defendants. Plaintiff's action gives rise to an affirmative defense of laches in that Defendants have been prejudiced by Plaintiff's unreasonable failure to provide timely notice and information to the Defendants of its intent to assert these claims.

7.  <u>Release</u>.  By Plaintiff's action in choosing to use an insurance application from a different insurance carrier, it has released the Defendants of any obligation to provide information that may have been requested on Plaintiff's insurance application that was not utilized in favor of the AIG insurance application that was utilized.

8.  Plaintiff has attempted to impute information of various employees of Defendants to Defendants which is barred by the plain language of Plaintiff's policy except for material facts or information known to the person who signed the application.

9.  Plaintiff has breached the implied covenant of good faith and fair dealing by making grossly exaggerated, unfair and inappropriate arguments to support the denial of Plaintiff's obligation to provide coverage as to the Johnson, Oliver, Snell, Sommerville, Stambaugh and Shane Wilson claims.

10.  Plaintiff has breached its contract of insurance with the Defendants by failing to provide coverage and indemnification against damages for the claims of Johnson, Oliver, Snell, Sommerville, Stambaugh and Wilson, which denial is without a reasonable basis and for which Defendants are entitled to recover costs, expenses and attorney fees.

11.  Plaintiff's conduct in denying coverage to these Defendants as to the Johnson, Oliver, Snell, Sommerville, Stambaugh and Wilson claims has been done in bad faith.

12.  Homeland's policy language is ambiguous and, because Homeland is the scrivener of this document, the insurance policy should be interpreted and construed against Plaintiff and in favor of the Defendants.

13.  Homeland's request for relief is barred because of its unreasonable conduct.

14.  Homeland's request for relief is barred by the doctrine of unclean hands.

15.  Homeland's Complaint fails to state a claim upon which relief may be granted.

These Defendants reserve the right to assert additional defenses should they become aware of additional defenses during the course of this litigation.

## COUNTERCLAIM AGAINST PLAINTIFF

1.   On information and belief, these Defendants assert that Homeland Insurance Company of New York is an insurance company incorporated in New York, with its principal place of business in Minnesota, and which does business in the State of Wyoming.

2.   Powell Hospital District is a hospital district organized and existing under the laws of the State of Wyoming with its principal place of business in Park County, Wyoming. Powell Valley Health Care, Inc. is a Wyoming corporation with its principal place of business in Powell, Wyoming.   Jeffrey Hansen, M.D., at all times relevant hereto was a resident of Park County, Wyoming.

3.   These Defendants for several years prior to August 1, 2013, had been insured for hospital professional liability insurance by insurance purchased from American International Companies (AIG).

4.   Plaintiff sought to provide insurance to insure these Defendants commencing August 1, 2013.

5.   Plaintiff has it own form of health care organization and employer professional liability application which it utilizes for health care organizations and providers seeking professional liability insurance.

6.   Plaintiff had, during 2013, a One Beacon Insurance Company/Homeland Insurance Company Health Care Organization and Provider Professional Liability Application form G16166 (7-05 ed) ("Homeland insurance application") to acquire

8

information in part to help Plaintiff evaluate the risk of insuring applicants for whom Plaintiff was considering professional liability insurance and to give notice of claims it would not cover.

7.   The Homeland insurance application utilized by Plaintiff in 2013 at page 10 required applicants to provide specific information pertaining to facts, circumstances, situations, transactions, events, acts, errors or omissions which the applicant had reason to believe may result in a claim that may fall within the scope of the proposed insurance and provided notice that claims arising out of such information would be excluded from the proposed insurance.

8.   Neither Plaintiff nor anyone on behalf of Plaintiff ever, prior to August 1, 2013, provided to these Defendants a copy of the Homeland insurance application and no such application was ever reviewed, considered or filled out by these Defendants prior to August 1, 2013.

9.   Plaintiff, in lieu of utilizing the Homeland insurance application for the policy year commencing August 1, 2013, received and reviewed prior to offering insurance coverage to these Defendants, a copy of the AIG Application for Hospital Professional Liability/ General Liability and Umbrella Excess Liability Insurance.

10.   Plaintiff reviewed, accepted and relied upon the information provided by Defendants on the AIG application form to bind coverage for the Defendants for the policy year commencing August 1, 2013.

11.   The Defendants provided to AIG all information requested to be provided by AIG in accordance with the AIG insurance application and the same information was

provided to Plaintiff for its consideration in binding coverage and selling Plaintiff's insurance product to Defendants.

12.   Plaintiff at no time requested any information from Defendants prior to binding coverage that was not provided by these Defendants.

13.   The American International Companies were satisfied that its application had been adequately filled out and all information requested in accordance therewith was provided in order for it to quote to the Defendants a premium cost to continue to provide professional and general liability insurance and excess liability insurance.

14.   No one on behalf of Plaintiff, either verbally or in writing, requested from Defendants any documents or information that was not provided by Defendants in connection with the application process for the policy year commencing August 1, 2013.

15.   The AIG application form received, reviewed and utilized by the Plaintiff to bind coverage for the Defendants commencing August 1, 2013 does not include a request for information asking the applicant to disclose any facts, circumstances, situations, transactions, events, acts, errors or omissions which the applicant had reason to believe may result in a claim nor does it provide notice that any claims arising out of such information would be denied.

16.   Plaintiff offered to provide to Defendants professional and general liability insurance and excess insurance as per the terms of the policies issued by or on behalf of Plaintiff commencing August 1, 2013.

17.   Plaintiff or its agents and/or representatives quoted to the Defendants a premium which Plaintiff intended to charge for the insurance coverage offered to

Defendants, which offer was accepted by Defendants and the premium was fully paid by Defendants for the insurance coverage offered by Plaintiff.

18.  The Defendants were not provided with and did not see or review a copy of the professional liability policy nor the excess insurance policy until after they had paid the insurance premium and the policy year had commenced.

19.  Defendants did not receive or review Plaintiff's insurance policies until after they had commenced the new policy year and discontinued their insurance provided by AIG Companies for the 2012-13 policy year.

20.  Because these Defendants were only provided with an AIG application and were only requested to provide the information that was requested by AIG for the renewal period commencing August 1, 2013, they reasonably believed that this was the only information that was necessary to be provided and relevant to the insurance coverage.

21.  As a part of the insurance application process, Plaintiff had been provided with loss runs which included information pertaining to the DuRose and Harris claims.

22.  At no time prior to accepting the insurance premium from Defendants and issuing its insurance policies did Plaintiff notify Defendants that it would deny coverage for all claims asserted against these Defendants arising out of the alleged negligence of Jeffrey Hansen, M.D. and/or claims asserting negligent credentialing, hiring, supervision, training and/or granting privileges pertaining to Jeffrey Hansen, M.D.

23.  The insuring agreements issued by Plaintiff for the policy year commencing August 1, 2013 insured Defendants Powell Valley Health Care, Inc. and Powell Hospital District as named insureds and insured Jeffrey Hansen, M.D. as a named employee provider.

11

UNDERLYING LITIGATION.

24.   The Defendants received notice of a potential claim of Shane Wilson in September of 2013 and gave notice of the claim to Plaintiff on or about September 18, 2013.

25.   Plaintiff was also provided with a copy of the formal Notice of Governmental Claim filed on behalf of Shane Wilson and now has also been provided with a copy of the lawsuit filed by Shane and Jayme Wilson against these Defendants, which lawsuit was filed May 22, 2015 in the District Court, Fifth Judicial District, Park County, Wyoming, as Civil Action No. 28059 ("Wilson claim").  A copy of the Complaint has been provided to Plaintiff with a request for a defense and indemnity for any damages arising out of the litigation.

26.   Defendants received notice of a claim being asserted by Susan and Scott Stambaugh arising out of medical care provided to Susan Stambaugh in March of 2014, and on or about March 18, 2014, Plaintiff was notified of the claim being asserted by the Stambaughs.

27.   The Stambaughs have filed lawsuits in the District Court of Park County, Wyoming, Fifth Judicial District, against the Defendants, being Civil Action No. 27758 filed in the Fifth Judicial District, Park County, Wyoming, and Civil Action No. 27818 also filed in the District Court, Fifth Judicial District, Park County, Wyoming.  Copies of the Complaints have been provided to Plaintiff with a request for a defense and indemnity for any damages arising out of the litigation.

28.   The Defendants received notice from the attorney for Joetta Johnson, Michelle Oliver, Lynn Snell, and Veronica Sommerville, of their intent to file a claim against the Defendants for medical negligence and other negligence on July 31, 2014.

29.   Defendants provided notice to Plaintiff of the Johnson, Oliver, Snell and Sommerville claims on or about August 1, 2014 and again more formally by providing a Notice of Claim dated August 6, 2014, which Notice was received by Plaintiff on or about August 12, 2014.  Defendants thereafter received a formal Notice of Governmental Claim which was also provided to Plaintiff as to Johnson, Oliver, Snell and Sommerville in August and September, 2014.

30.   Joetta Johnson has filed a lawsuit in Park County, Wyoming, Fifth Judicial District, Civil Action No. 27821, naming some or all of these Defendants, which Complaint has been provided to Plaintiff with a request to provide a defense and indemnity for any damages arising out of the litigation.

31.   Michelle Oliver has filed litigation in the United States District Court for the District of Wyoming, Case No. 14-CV-168-S against some or all of these Defendants, which Complaint was dismissed and re-filed in State District Court, Fifth Judicial District, as Civil No. 28035, and has been provided to Plaintiff with a request to provide a defense and indemnity for any damages arising out of the litigation.

32.   Lynn and Janet Snell have filed a lawsuit in the Fifth Judicial District, Park County, Wyoming, Civil Action No. 27805 against some or all of these Defendants.  A copy of this Complaint has been provided to Plaintiff with a request to provide a defense and indemnity for any damages arising out of the litigation.

33.   Veronica and William Sommerville have filed a lawsuit in the Fifth Judicial District, Park County, Wyoming, being Civil Action No. 27813 against some or all of these Defendants.  A copy of this Complaint has been provided to Plaintiff with a request to provide a defense and indemnity for any damages arising out of the litigation.

34.  For purposes of this Counterclaim, the claims of Shane Wilson, Susan and Scott Stambaugh, Joetta Johnson, Michelle Oliver, Lynn and Janet Snell, and Veronica and William Sommerville, are referred to as the "six claimants".

INSURANCE POLICIES, TENDERS AND DENIALS.

35.  Commencing August 1, 2013, Homeland issued policies nos. MPP-5514-13 and MPX-3502-13 (the Homeland policies) to Powell Valley Health Care (PVHC)/Powell Hospital District, effective from August 1, 2013 to August 1, 2014.  The Homeland policies include coverage for professional liability.

36.  The Homeland policies also provide professional liability insurance coverage for Jeffrey Hansen, M.D.

37.  By letter dated October 23, 2014 addressed to Jeffrey Hansen, M.D., and by letter dated November 3, 2014 addressed to Powell Hospital District, Plaintiff advised these Defendants that it would not be providing coverage and would not provide a defense for the Shane Wilson claim.

38.  In response to this position, Defendants responded and advised Plaintiff of issues it needed to reconsider and of reasons why there was coverage.  In response to these communications that Plaintiff reconsider its coverage and defense position, Plaintiff sent another letter dated November 20, 2014 to counsel for the Hospital and Dr. Hansen again advising Defendants that they would not be providing a defense or providing coverage.

39.  By letter dated November 25, 2014 from counsel for Plaintiff, Plaintiff changed its position as to providing a defense but continued to assert that its policy provided no coverage for the matters asserted against these Defendants.

40.  By letters dated September 22, 2014 and September 30, 2014, Plaintiff notified Powell Hospital District and Powell Valley Health Care, Inc. that it would not be providing a defense or coverage for the Stambaugh claims against the Defendants.

41.  By letters dated October 8, 2014 and October 9, 2014, Defendants provided Plaintiff with additional information as to why its coverage opinion was erroneous and requested that Plaintiff reconsider providing a defense and coverage.

42.  By letter dated November 20, 2014, Plaintiff again advised Defendants that it would not be providing a defense nor indemnity, asserting there was no coverage for these Defendants.

43.  By letter dated November 25, 2014, Plaintiff changed its position regarding defense and agreed to provide a defense, but continues to assert that the policy provides no coverage and there is no obligation to indemnify Defendants for damages arising out of these claims.

44.  By letters dated September 26, 2014 and September 30, 2014, Defendants were notified by Plaintiff that it would not be providing a defense and was denying any obligation to indemnify and provide coverage for the claims asserted by Joetta Johnson.

45.  In response to these claims, Defendants sent letters to Plaintiff on October 8 and October 9, 2014, providing Plaintiff with information and asserting that Plaintiff's coverage position was erroneous and requesting that Plaintiff reconsider.

46.  By letter dated November 20, 2014, Plaintiff advised Defendants that it continued to deny coverage and would not provide a defense.

47.  By letter dated November 25, 2014 to these Defendants, Plaintiff stated that it had reconsidered its position and would provide a defense, but continued to deny coverage and any obligation to indemnify Defendants as to damages asserted by Joetta Johnson.

48.     By letters dated September 26, 2014 and September 30, 2014, Defendants were notified by Plaintiff that it would not be providing a defense and was denying any obligation to indemnify and provide coverage for the claims asserted by Michelle Oliver.

49.  In response to these claims, Defendants sent letters to Plaintiff on October 8 and October 9, 2014, providing Plaintiff with information and asserting that Plaintiff's coverage position was erroneous and requesting that Plaintiff reconsider.

50.  By letter dated November 20, 2014, Plaintiff advised Defendants that it continued to deny coverage and would not provide a defense.

51.  By letter dated November 25, 2014 to these Defendants, Plaintiff stated that it had reconsidered its position and would provide a defense, but continued to deny coverage and any obligation to indemnify Defendants as to damages asserted by Michelle Oliver.

52.     By letters dated September 24, 2014 and September 30, 2014, Defendants were notified by Plaintiff that it would not be providing a defense and was denying any obligation to indemnify and provide coverage for the claims asserted by Lynn Snell.

53.  In response to these claims, Defendants sent letters to Plaintiff on October 8 and October 9, 2014, providing Plaintiff with information and asserting that Plaintiff's coverage position was erroneous and requesting that Plaintiff reconsider.

54.  By letter dated November 20, 2014, Plaintiff advised Defendants that it continued to deny coverage and would not provide a defense.

55.  By letter dated November 25, 2014 to these Defendants, Plaintiff stated that it had reconsidered its position and would provide a defense, but continued to deny coverage and any obligation to indemnify Defendants as to damages asserted by Lynn Snell.

56.  By letters dated September 24, 2014 and September 30, 2014, Defendants were notified by Plaintiff that it would not be providing a defense and was denying any obligation to indemnify and provide coverage for the claims asserted by Veronica Sommerville.

57.  In response to these claims, Defendants sent letters to Plaintiff on October 8 and October 9, 2014, providing Plaintiff with information and asserting that Plaintiff's coverage position was erroneous and requesting that Plaintiff reconsider.

58.  By letter dated November 20, 2014, Plaintiff advised Defendants that it continued to deny coverage and would not provide a defense.

59.  By letter dated November 25, 2014 to these Defendants, Plaintiff stated that it had reconsidered its position and would provide a defense, but continued to deny coverage and any obligation to indemnify Defendants as to damages asserted by Veronica Sommerville.

Homeland's Denial.

60.  Homeland has denied coverage to these Defendants as to claims by all six claimants under the Homeland policies.

61.  As its basis for denial, Homeland alleges that claims asserted by Harris and DuRose against PVHC prior to inception of the Homeland policies constitute related claims and therefore the six claims tendered by Defendants to Plaintiff were not first made during Homeland's policy period.

17

62.   Harris and DuRose filed complaints on August 6, 2012 and September 20, 2013.

63.   Both the Harris and DuRose litigations included specific claims of medical negligence separate and apart from any claims which were ever raised pertaining to credentialing, hiring, supervision, training and/or granting privileges and which are unrelated to the medical negligence claims of the six claimants.

64.   All six claimants have asserted claims for medical negligence which are unrelated to Harris, DuRose, or any other claimant, and which include claims for medical negligence unrelated to any claims pertaining to credentialing, hiring, supervising, training or granting privileges.

65.   Additionally, Homeland denied coverage to these Defendants, asserting the application exclusion (D)(1) and (2), alleging that Defendants had knowledge of a wrongful act that they knew or reasonably could have foreseen might result in a claim prior to the inception of the Homeland insurance policy.

66.   The Homeland insurance policy form HPF10001-07-08 issued to Defendants under Part IV, General Conditions (P), Representations; Incorporation of Application; Entire Agreement, specifically provides that "No knowledge or information processed by any insured shall be imputed to any other insured, except for material facts or information known to the person or persons who signed the application."  The only person that signed the application on behalf of Defendants was Bill Patten, the then CEO.

67.   At the time of signing the application, Bill Patten was not aware of any circumstances, incidents, or facts which he reasonably could have foreseen would result in claims by any of the six claimants.

18

68.   Prior to August 1, 2013, none of the six claimants had ever alleged that Defendants had committed a wrongful act or they were liable for damages of any kind or otherwise gave notice of intent to file a claim.

69.   Plaintiff agreed to insure these Defendants and pay up to the applicable limits of liability for any loss that the insureds become legally obligated to pay as a result of any covered claim for a professional services wrongful act happening on or after the retroactive date; provided that the claim is first made against the insured during the policy period or applicable extended reporting period and reported to the underwriter in accordance with General Condition (c) of the Homeland policy.

70.   Each of the six claimants individually assert distinct and separate claims for medical negligence falling under the definition of a professional services wrongful act against these Defendants.

71.   There is nothing pertaining to the care and treatment by Dr. Hansen of the six individual claimants which is related between these six claimants, or Harris or DuRose. The claims by the six claimants against Jeffrey Hansen, M.D. and vicariously against Powell Valley Health Care, Inc. or Powell Hospital District are additional, separate and distinct claims from the claims which the Plaintiff asserts are related.

### Claim I.  Breach of Contract

72.   These Defendants by reference incorporate each of their prior answers and allegations from the foregoing paragraphs of this pleading.

73.   As described above, Homeland entered into binding, written agreements to provide professional liability insurance and excess liability insurance to these Defendants as insureds under the above-referenced Homeland insurance policies.

19

74.   Homeland has a duty to defend these Defendants and provide insurance coverage and indemnify these Defendants as to damages arising out of the claims of the six claimants pursuant to the primary and/or excess policies.

75.   These Defendants fully performed their obligations under the policies by paying premiums in full and in a timely basis, and by providing timely notice to Plaintiff.  These Defendants have satisfied any conditions precedent to coverage under these policies.

76.   Homeland has materially breached the insurance policies by refusing to perform its contractual obligations.

77.   Specifically, Homeland has breached its contractual obligation by refusing to provide coverage and indemnification for damages as to the six claimants.  Homeland's refusal to perform is not excused or justified in any manner.

78.   Homeland has also breached its duty to act in good faith and to deal fairly with these Defendants.

79.   As a result of Homeland's breaches of its respective insurance policies, Defendants have been damaged and are entitled to recover damages from the insurers in an amount to be determined at trial, specifically including, but not limited to, damages that it may be ordered to pay as a result of any judgments that may be entered against these Defendants, as well as costs and attorney fees to enforce the coverage obligations of Plaintiff as allowed under W.S. §26-15-124.

**Claim II**
**Bad Faith - Breach of Insurance Contract**

80.   These Defendants hereby incorporate by reference their answers and allegations from the foregoing paragraphs of this pleading.

81.  Every contract or policy of insurance contains implied covenants of good faith and fair dealing owed by the insurer to the insured.

82.   The insurance policy sold by Homeland to Defendants contains implied covenants of good faith and fair dealing owed by Homeland to its respective insureds.

83.   Homeland owes a duty of good faith and fair dealing to Defendants in connection with their claims for coverage under the insurance policies.

84.  Homeland's handling and denials of the claims were done with knowledge of or in reckless disregard of the fact that there was no reasonable basis to deny coverage to Defendants including, but not limited to, the following acts or practices constituting bad faith denial of such coverage:

a.   refusing to provide coverage and acknowledge an obligation to pay claims without conducting a reasonable investigation based upon all available information;

b.   denying and delaying coverage due under the insurance policies without any reasonable or fairly debatable basis for the denials;

c.   interpreting the insurance policies in an unreasonable manner;

d.   on information and belief, colluding with another insurer to make coverage decisions based in part or in whole on coverage determinations of an affiliated insurer under an unrelated contract;

e.   compelling these Defendants to institute litigation and to incur attorney fees and other costs in order to obtain coverage tortuously and wrongfully denied;

f.   failing to acknowledge and act reasonably and promptly upon communications with respect to claims arising under the insurance policies and/or to provide information relevant to Plaintiff's coverage positions.

85.   Homeland either knew their acts as shown in the foregoing allegations were unreasonable and in bad faith or recklessly disregarded the fact that their acts were unreasonable and in bad faith.

86.   Homeland has received settlement offers from each of the six claimants, which individually and collectively are within the policy limits of the primary and excess insurance policies, wherein the six claimants have offered to settle the underlying malpractice claims and Plaintiff has refused to settle the claims and continues to deny any obligation to indemnify Defendants for damages asserted by the six claimants.

87.   Homeland's unreasonable refusal to provide coverage and to indemnify these Defendants within the policy limits has exposed these Defendants to the risk of judgments in excess of policy limits.

88.   Homeland's unreasonable acts and bad faith misconduct have caused damages to these Defendants in an amount to be determined at trial.

**Claim III**
**Attorney Fees and Pre-Judgment Interest**

89.   These Defendants hereby incorporate their answers and allegations from the foregoing paragraphs of this pleading.

90.   As described above, Homeland is obligated to defend these Defendants as insureds under its policies with regard to the six claimants' claims for medical negligence/ malpractice.

91.   Homeland has denied coverage to these Defendants as set forth above.

92.   Homeland's denial of coverage is erroneous and unreasonable.

22

93.  Pursuant to W.S. §26-15-124(c), these Defendants are entitled to an award of reasonable attorney fees and interest at ten percent (10%) per year.

## Claim IV
## Declaratory Judgment

94.  These Defendants incorporate their answers and allegations from the foregoing paragraphs of this pleading.

95.  There is an existing controversy between these Defendants and Plaintiff concerning the Plaintiff's duty to indemnify Defendants for the claims asserted by the six claimants.

96.  Pursuant to F.R.C.P. 57 and the Declaratory Judgment Act, 28 U.S.C. §2201, these Defendants request that the Court declare the duties and obligations of Homeland under the insurance policies.  Specifically, these Defendants request the Court to declare:

a.  that there is coverage under the applicable Homeland insurance policies for these Defendants and Plaintiff is obligated to indemnify these Defendants as to any damages that may be awarded to any of the six claimants;

b.  that none of the provisions in the Homeland insurance policies exclude insurance coverage for these Defendants relating to the claims asserted by the six claimants or, alternatively, should the Court determine that there is a basis for denying claims pertaining to credentialing, supervision, hiring, training or awarding privileges as related claims, that that does not bar the duty to defend and provide coverage/indemnification for the unrelated claims of medical negligence asserted against Dr. Hansen and for which the six claimants assert there is vicarious liability owed by Powell Valley Health Care, Inc.;

c.  that Homeland reimburse Defendants for all legal expenses incurred by Defendants resulting from the conduct of Plaintiff in refusing to cover the claims of the six claimants and indemnify the Defendants.

## Claim V - Punitive Damages

23

97.  Defendants hereby incorporate their answers and allegations from the foregoing paragraphs in this pleading.

98.  The decision by the Plaintiff to deny coverage and to indemnify Defendants against claims of the six claimants is unsupported by any reasonable facts or interpretation of the policy documents.

99.  The conduct of the Plaintiff amounts to willful and wanton misconduct intentionally engaged in, in violation of the express terms and conditions of the insurance policy which Plaintiff was fully compensated for.

100.  The conduct of Plaintiff was done for the sole purpose of protecting Plaintiff's financial well being, without regard to Plaintiff's obligation to protect the interests of its insured and with full knowledge that Plaintiff's conduct could likely result in financial ruin to Defendants.

101.  Plaintiff's misconduct is such as to warrant an award of punitive damages in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, these Defendants pray that the Court enter judgment for and on behalf of these Defendants and against Plaintiff as follows:

1.  that all relief requested by Plaintiff be denied;

2.  that the Court award to the Defendants declaratory relief as specified above;

3.  that the Court award actual, compensatory and consequential damages in an amount to be proven at trial;

4.  that the Court award to Defendants all statutory damages available per statute in an amount to be determined at trial;

5.  That the Court award to Defendants punitive damages in an mount to be proven at trial;

6.  pre-judgment and post-judgment interest as allowed by law;

7.  costs for pursuing this lawsuit, including attorney fees as allowed by law; and

8.  any and all other relief as the Court deems just and proper.

**Demand for Jury Trial**

These Defendants demand a trial by jury on all claims so triable.

DATED this 1st day of June, 2015.


/s/__Tracy J. Copenhaver
TRACY J. COPENHAVER, State Bar #5-2063
COPENHAVER, KATH, KITCHEN &
KOLPITCKE, LLC
P.O. Box 839, Powell, WY 82435
(307) 754-2276
tracy@ckattorneys.net


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a true and accurate copy of the foregoing Answer and Counterclaim of Defendants upon the following counsel of record, to-wit:

Attorneys for Plaintiff:
    Judith Studer
    Schwartz, Bon, Walker & Studer, LLC
    141 South Center Street, Suite 500
    Casper, WY 82601
    Attorney for Plaintiff
    jstuder@schwartzbon.com

Attorneys for Defendants HealthTech Management Services,, Inc. and William D. Patten:

Joanna R. Vilos
Holland & Hart, LLP
P.O. Box 1347
Cheyenne, WY 82003-1347
jvilos@hollandhart.com

Jose A. Ramirez
Holland & Hart, LLP
8390 E. Crescent Parkway, Suite 400
Greenwood Village, CO 80111
jramirez@hollandhart.com

this 1st day of June, 2015.


/s/   Tracy J. Copenhaver
TRACY J. COPENHAVER