Joanna R. Vilos (Wyo. State Bar # 6-4006)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
Cheyenne, WY  82001
Telephone:  (307) 778-4200
jvilos@hollandhart.com

Jose A. Ramirez (admitted *pro hac vice*)
HOLLAND & HART LLP
8390 E. Crescent Parkway, Suite 400
Greenwood Village, CO 80111
Telephone:  (303) 290-1600
jramirez@hollandhart.com

ATTORNEYS FOR DEFENDANTS
HEALTHTECH MANAGEMENT SERVICES, INC.
AND WILLIAM D. PATTEN

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, )<br><br>Plaintiff )<br><br>v. )<br><br>POWELL HOSPITAL DISTRICT, POWELL VALLEY HEALTHCARE, INC., HEALTHTECH MANAGEMENT SERVICES, INC., JEFFREY HANSEN, M.D., and WILLIAM D. PATTEN, )<br><br>Defendants. )<br><br>AND )<br><br>HEALTHTECH MANAGEMENT SERVICES, INC. and WILLIAM D. PATTEN, )<br><br>Counterclaimants )<br><br>v. )<br><br>UMIA INSURANCE, INC., )<br><br>Counterclaim-Defendant. ) | Civil Action No. 15CV31-J<br><br>**DEFENDANTS HEALTHTECH MANAGEMENT SERVICES, INC.'S AND WILLIAM D. PATTEN'S ANSWER AND DEFENSES TO HOMELAND INSURANCE COMPANY OF NEW YORK'S COMPLAINT AND COUNTERCLAIMS AGAINST HOMELAND AND UMIA INSURANCE, INC.** |

Defendants HealthTech Management Services, Inc. (HTMS) and William D. Patten (Patten), by and through their attorneys Holland & Hart LLP, hereby submit their answer and affirmative defenses in response to Plaintiff Homeland Insurance Company of New York's (Homeland's) Complaint as follows:

## NATURE OF ACTION

1.      HTMS and Patten admit Homeland brings an insurance coverage action seeking declaratory relief as described in Paragraph 1 of the Complaint, but HTMS and Patten deny Homeland is entitled to the declaratory relief requested.  HTMS and Patten admit this controversy arises out of litigation filed by or on behalf of patients of Powell Valley Health Care, Inc. (PVHC) alleging negligence by Dr. Jeffrey Hansen (Hansen) and asserting claims against Hansen, PVHC, HTMS and Patten.  HTMS and Patten also admit there is a dispute between themselves and Homeland regarding whether there is coverage for these claims under the policy issued by Homeland and whether Homeland has a duty to defend and indemnify HTMS and Patten.  All allegations not specifically admitted above are expressly denied.

## PARTIES

2.      Upon information and belief, HTMS and Patten admit the allegations of Paragraph 2 of the Complaint.

3.      HTMS and Patten admit the allegations of Paragraph 3 of the Complaint.

4.      HTMS and Patten admit the allegations of Paragraph 4 of the Complaint.

5.      HTMS and Patten admit the allegations of Paragraph 5 of the Complaint.

6.      HTMS and Patten lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 6 of the Complaint and therefore deny the same.

7.     HTMS and Patten admit that Patten was formerly a resident of Park County, Wyoming but currently resides in Taos County, New Mexico.  HTMS and Patten further admit that during the period of approximately February 27, 2012 to April 9, 2015, Patten was an employee of HTMS serving as the CEO of PVHC pursuant to an Agreement for Management Services between HTMS and PVHC.

## JURISDICTION AND VENUE

8.     HTMS and Patten admit Homeland brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, but HTMS and Patten deny Homeland is entitled to the relief requested.

9.     HTMS and Patten admit only that an actual justiciable controversy exists between Homeland and the Defendants within the meaning of 28 U.S.C. § 2201 and deny the remaining allegations of Paragraph 9 of the Complaint.

10.     HTMS and Patten admit the allegations of Paragraph 10 of the Complaint.

11.     HTMS and Patten admit the allegations of Paragraph 11 of the Complaint.

## THE UNDERLYING CLAIMS AND RELATED CLAIMS

12.     HTMS and Patten admit only that the action addresses insurance coverage for claims asserted against the Defendants and deny the remaining allegations of Paragraph 12 of the Complaint.

13.     HTMS and Patten deny the allegations of Paragraph 13 of the Complaint.

14.     HTMS and Patten assert that the Homeland Policies speak for themselves and they deny any remaining allegations of Paragraph 14 of the Complaint.

15.     HTMS and Patten admit Austin DuRose filed a Notice of Governmental Claim against PVHC on or about May 10, 2013 and filed a lawsuit (Case No. 13-CV-216-S) against

PVHC and Hansen on or about September 20, 2013.   HTMS and Patten assert that the DuRose

Complaint speaks for itself and they deny any remaining allegations of Paragraph 15 of the

Complaint.

16.     HTMS and Patten admit Aaron and Glenda Harris filed a lawsuit against Hansen

on August 6, 2012 in the Fifth Judicial District Court for Park County, Wyoming.  HTMS and

Patten assert that the Harris Complaint speaks for itself and they deny any remaining allegations

of Paragraph 16 of the Complaint.

17.     HTMS and Patten assert that the Homeland Primary Policy and the Homeland

Excess Policy (as defined in Homeland's Complaint) speak for themselves and they deny any

remaining allegations of Paragraph 17 of the Complaint.

18.     HTMS and Patten lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 18 of the Complaint and therefore deny the same.

19.     HTMS and Patten admit that Scott Wilson and Brad Mangum were two former

employees of PVHC.  On information and belief, HTMS and Patten believe that Mangum was

deposed in the DuRose and Harris litigation.  HTMS and Patten admit that Wilson was deposed

in the Harris litigation but lack knowledge or information sufficient to form a belief about

whether Wilson was deposed in the DuRose litigation.  HTMS and Patten deny the remaining

allegations of Paragraph 19 of the Complaint.

## THE INSURANCE CONTRACTS

20.     HTMS and Patten admit Homeland issued a Hospital Professional Liability

Primary Policy (No. MPP-5514-13) to Powell Hospital District for the policy period August 1,

2013 to August 1, 2014.  Because Exhibit A to Plaintiff's Complaint is not a certified copy of the

policy, HTMS and Patten lack knowledge or information sufficient to form a belief about the

truth of the allegation that it is a true and accurate copy of the policy and HTMS and Patten therefore deny the same.

21.     HTMS and Patten assert that the policy language speaks for itself and they deny any remaining allegations of Paragraph 21 of the Complaint.

22.     HTMS and Patten admit the Homeland Primary Policy includes Healthcare Professional Liability form HPF-10001-07/08.  HTMS and Patten, however, assert that the Homeland Primary Policy speaks for itself and they deny that the quoted language completely or accurately represents the terms of the insurance policies relevant to this dispute.  HTMS and Patten deny any remaining allegations of Paragraph 22 of the Complaint.

23.     HTMS and Patten admit the Homeland Primary Policy includes Endorsement No. 12 – Additional Insured Endorsement – which makes HTMS an insured under the Homeland Primary Policy.  HTMS and Patten, however, assert that the Homeland Primary Policy speaks for itself.  HTMS and Patten deny they are merely an "additional insured" and affirmatively state that they qualify as an insured as defined by the Homeland Primary Policy.  HTMS and Patten deny any remaining allegations of Paragraph 23 of the Complaint.

24.     HTMS and Patten admit the Homeland Primary Policy includes Endorsement No. 14 – Delete Endorsement.  HTMS and Patten, however, assert that the Homeland Primary Policy speaks for itself and they deny any remaining allegations of Paragraph 24 of the Complaint.

25.     HTMS and Patten admit the Homeland Primary Policy includes Endorsement No. 15 – Additional Insured Endorsement – which states that it is effective at 12:01 a.m. on December 30, 2013.  However, HTMS and Patten affirmatively state that they were listed as additional insureds per Endorsement No. 12 effective at 12:01 a.m. on August 1, 2013.  HTMS and Patten deny they are merely an "additional insured" and affirmatively state that they qualify

as an insured as defined by the Homeland Primary Policy.  HTMS and Patten deny any

remaining allegations of Paragraph 25 of the Complaint.

26.     HTMS and Patten admit the Declarations to the Homeland Primary Policy include

a portion, Item 7, regarding notices to be given to the underwriter.  HTMS and Patten, however,

assert that the Homeland Primary Policy speaks for itself.  HTMS and Patten deny that the

quoted language completely or accurately represents the terms of the insurance policies relevant

to this dispute and deny any remaining allegations of Paragraph 26 of the Complaint.

27.     HTMS and Patten admit Homeland issued a Hospital Professional Liability

Excess Policy (No. MPX-3502-13) to Powell Hospital District for the policy period August 1,

2013 to August 1, 2014.  Because Exhibit B to Plaintiff's Complaint is not a certified copy of the

policy, HTMS and Patten lack knowledge or information sufficient to form a belief about the

truth of the allegation that it is a true and accurate copy of the policy and HTMS and Patten

therefore deny the same.

28.     HTMS and Patten assert that the Homeland Excess Policy speaks for itself and

they deny that the quoted language completely or accurately represents the terms of the insurance

policies relevant to this dispute.  HTMS and Patten deny any remaining allegations of Paragraph

28 of the Complaint.

## DEMAND FOR COVERAGE AND RESERVATION OF RIGHTS

29.     HTMS and Patten admit the allegations of Paragraph 29 of the Complaint.

30.     HTMS and Patten deny Homeland's characterization or interpretation of the word

"Claim."  Upon information and belief, HTMS and Patten admit the remaining allegations of

Paragraph 30 of the Complaint.

31.     HTMS and Patten admit Homeland advised HTMS in September 2014 that it was denying coverage for the Underlying Claims under both the Homeland Primary Policy and the Homeland Excess Policy.  HTMS and Patten lack knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 31 of the Complaint and therefore deny the same.

32.     Upon information and belief, HTMS and Patten admit the allegations of Paragraph 32 of the Complaint.

33.     Upon information and belief, HTMS and Patten admit Homeland agreed in November 2014 to defend PVHC and Hansen against certain Underlying Claims subject to a complete reservation of rights.  HTMS and Patten lack knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 33 of the Complaint and therefore deny the same.

34.     Upon information and belief, HTMS and Patten admit Homeland denied coverage in February 2015 to PVHC and Hansen for certain Underlying Claims.  HTMS and Patten lack knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 34 of the Complaint and therefore deny the same.

35.     Upon information and belief, HTMS and Patten admit Homeland has agreed to defend PVHC and Hansen against certain Underlying Claims subject to a complete reservation of rights.  HTMS and Patten, however, deny that Homeland is providing a defense for all of the Underlying Claims that are covered by the Homeland Primary Policy and/or the Homeland Excess Policy.

36.     HTMS and Patten admit the allegations of Paragraph 36 of the Complaint.

## COUNT I
## DECLARATORY JUDGMENT

37.     HTMS and Patten incorporate their prior responses to Homeland's allegations as if set forth fully herein.

38.     HTMS and Patten admit the allegations of Paragraph 38 of the Complaint as to the dispute between HTMS/Patten and Homeland.  HTMS and Patten admit the allegations of Paragraph 38 as to the other three defendants upon information and belief.

39.     HTMS and Patten admit Homeland requests a declaration pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as described in Paragraph 39 of the Complaint.  HTMS and Patten, however, deny that Homeland is entitled to the relief requested or that it has acted in good faith.  HTMS and Patten further deny all of the remaining allegations of Paragraph 39, including without limitation those contained in Paragraph 39 (a)-(m) of the Complaint.

### DENIAL OF PRAYER FOR RELIEF AND GENERAL DENIAL

HTMS and Patten deny that Homeland is entitled to the relief requested in the "Prayer for Relief" portion of its Complaint.  HTMS and Patten also generally deny any allegation of Homeland's Complaint not specifically admitted herein.

### DEFENSES

1.     Homeland's Complaint fails to state a claim upon which relief can be granted.

2.     Homeland's request for relief is barred by the doctrines of waiver, laches and estoppel.

3.     Homeland's request for relief is barred by the plain meaning of the policy.

4.     Homeland's request for relief is barred by its own bad faith conduct.

5.      Homeland's request for relief is barred by its breach of contract.

6.      Homeland's policy provisions are subject to multiple reasonable interpretations and are therefore ambiguous.

7.      Homeland's request for relief is barred because of its unreasonable conduct.

8.      Homeland's request for relief is barred by the doctrine of unclean hands.

HTMS and Patten reserve the right to assert additional defenses should they become aware of additional defenses during the course of this litigation.

## COUNTERCLAIMS AGAINST HOMELAND AND UMIA

### BACKGROUND

1.      Homeland Insurance Company of New York is an insurance company incorporated in New York with its principal place of business in Minnesota.

2.      UMIA Insurance, Inc. is an insurance company incorporated in Oregon with its principal place of business in Utah.

3.      HealthTech Management Services, Inc. is an Oregon corporation with its principal place of business in Tennessee.  HTMS provides management support services to various hospitals throughout the United States, typically pursuant to an agreement for management support services in effect between HTMS and the particular client hospital.

4.      Among other management support services provided to a client hospital, HTMS in some cases identifies and provides an individual to serve as the Chief Executive Officer of the hospital.  During the period of approximately February 27, 2012 to April 9, 2015, Patten was an employee of HTMS serving as the CEO of PVHC pursuant to an Agreement for Management Services (Agreement) between HTMS and PVHC.

5.      Pursuant to the Agreement between HTMS and PVHC, HTMS agreed, among other things, to provide "supervision and effective management of the day-to-day business operations of [PVHC] through the CEO."

6.      HTMS and Patten did not, however, take on responsibility for matters requiring professional medical judgment, such as the credentialing of medical staff.  As expressed in the Agreement, "All matters requiring professional medical judgment shall remain the sole responsibility of Hospital's medical staff, nurses, and allied health professionals.  HTMS, its employees, and contractors shall have no responsibility, control over, or liability whatsoever for such medical judgments and HTMS shall not in any way be responsible for the credentialing of any healthcare professionals on staff at the Hospital."

## UNDERLYING LITIGATION

7.      These counterclaims filed by HTMS and Patten against Homeland and UMIA arise from Homeland and UMIA's denial of coverage to HTMS and Patten in connection with alleged medical malpractice by Dr. Jeffrey Hansen while Dr. Hansen was employed by PVHC (referred to herein as the Insurance Claims).

8.      HTMS has been named as a defendant in nine lawsuits stemming from the alleged malpractice by Dr. Hansen.  The plaintiffs in the nine lawsuits naming HTMS as a defendant are Stambaugh, Oliver, Snell, Johnson, Sommerville, McMillen, Brinkerhoff, DiPilla and Eller.

9.      Patten has been named as a defendant in six lawsuits stemming from the alleged malpractice by Dr. Hansen.  The plaintiffs in the six lawsuits naming Patten as a defendant are Oliver, Snell, Brinkerhoff, McMillen, DiPilla and Eller.

## INSURANCE POLICIES, TENDERS AND DENIALS

10.     In August 2013, Homeland issued policies numbered MPP-5514-13 and MPX-3502-13 (the Homeland Policies) to PVHC effective from August 1, 2013 to August 1, 2014. The Homeland Policies include coverage for professional liability.

11.     HTMS and Patten are insureds under the Homeland Policies.

12.     In August 2014, UMIA issued policy number WY920017 (the UMIA Policy) to Powell Valley Hospital District and PVHC effective from August 1, 2014 to August 1, 2015. The UMIA Policy includes professional liability coverage and excess coverage.

13.     HTMS and Patten are insureds under the UMIA Policy.

14.     There was no gap in coverage between the expiration of the Homeland Policies and the inception of the UMIA Policy.

15.     On September 4, 2014, HTMS tendered the Stambaugh claim to Homeland and on September 10, 2014, HTMS tendered the claim to UMIA.  By letters dated September 24, 2014 and January 23, 2015, Homeland denied coverage under the Homeland Policies.  By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy.

16.     On September 4, 2014, HTMS tendered the Oliver claim to Homeland and on September 10, 2014, HTMS tendered the claim to UMIA.  By letters dated September 24, 2014, and January 23, 2015, Homeland denied coverage under the Homeland Policies.  By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy.

17.     On September 4, 2014, HTMS tendered the Snell claim to Homeland and on September 10, 2014, HTMS tendered the claim to UMIA.  By letters dated September 24, 2014, November 25, 2014 and January 23, 2015, Homeland denied coverage under the Homeland Policies.  By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy.

11

18.     On September 12, 2014, HTMS tendered the Johnson claim to Homeland and UMIA.  By letters dated September 24, 2014, November 25, 2014 and January 23, 2015, Homeland denied coverage under the Homeland Policies.  By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy.

19.     On September 15, 2014, HTMS tendered the Sommerville claim to Homeland and UMIA.  By letters dated September 24, 2014, November 25, 2014 and January 23, 2015, Homeland denied coverage under the Homeland Policies.  By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy.

20.     On January 29, 2015, HTMS tendered the McMillen claim to Homeland and UMIA.  By letter dated February 26, 2015, Homeland denied coverage under the Homeland Policies. By letter dated April 20, 2015, UMIA agreed to defend the McMillen claim under a full reservation of rights.

21.     On January 29, 2015, HTMS tendered the Brinkerhoff claim to Homeland and UMIA.  By letter dated February 26, 2015, Homeland denied coverage under the Homeland Policies.  By letter dated April 20, 2015, UMIA agreed to defend the Brinkerhoff claim under a full reservation of rights.

22.     On January 29, 2015, HTMS tendered the DiPilla claim to Homeland and UMIA. By letters dated February 10, 2015 and February 23, 2015, UMIA denied coverage under the UMIA Policy.  By letter dated February 26, 2015, Homeland denied coverage under the Homeland Policies.

23.     On April 14, 2015, HTMS tendered the Eller claim to UMIA and on April 24, 2015, HTMS tendered the claim to Homeland.  By letter dated April 20, 2015, UMIA agreed to

defend the Eller claim under a full reservation of rights.  By letter dated May 7, 2015, Homeland denied coverage under the Homeland Policies.

## HOMELAND'S DENIAL

24.     Homeland has denied coverage to HTMS and Patten for all of the claims submitted under the Homeland Policies.

25.     As its basis for denial, Homeland alleges that claims asserted by Harris and DuRose against PVHC prior to the inception of the Homeland Policies constitute Related Claims and therefore the nine claims tendered to it by HTMS and Patten were not first made during Homeland's policy period.

26.     Harris and DuRose filed complaints on August 6, 2012 and September 20, 2013, respectively, against PVHC and Hansen and asserted no claims against HTMS and Patten in their litigation.

27.     Additionally, Homeland denied coverage to HTMS and Patten asserting the application of exclusions (D)(1) and (2) alleging that HTMS and Patten had knowledge of a wrongful act that they knew or reasonably could have foreseen might result in a claim and that notice had been provided to a prior insurer.

28.     HTMS's first knowledge that claims were being asserted against it did not occur until August 2014 when it received notice of the Stambaugh Medical Review Panel proceeding. Patten's first knowledge that claims were being asserted against him did not occur until August 2014 when he received notice of the Oliver Medical Review Panel proceeding.

29.     Prior to August 2014, no claimant had ever alleged that HTMS or Patten had committed a wrongful act or that they were liable for damages of any kind.

30.     PVHC filed notices of claims for Stambaugh, Oliver, Snell, Johnson and Sommerville with Homeland prior to HTMS's and Patten's notices of claims.

31.     Homeland denied coverage to HTMS and Patten without taking into consideration whether HTMS's and Patten's notices of the Stambaugh, Oliver, Snell, Johnson and Sommerville claims were Related Claims, as defined by its policy, to the prior claims made by PVHC for Stambaugh, Oliver, Snell, Johnson and Sommerville.

32.     Homeland also asserted that HTMS and Patten were not covered as insureds under the Homeland Policies and that the only coverage afforded to HTMS and Patten was limited to "additional insured" status per endorsement 15.

33.     The Homeland Policies include as insureds, "any person communicating information to the Named Insured or its medical or professional staff for the purpose of aiding in the evaluation of Professional Services or the qualifications, professional competence, fitness, or character of an applicant for membership or privileges on such medical or professional staff or for purposes of initiating corrective action."

34.     Plaintiffs in the underlying actions specifically allege, "defendants had the legal duties to exercise that degree of care and skill usually exercised and maintained by reputable hospitals in the extension and continuation of medical staff privileges to its employees.  Those duties include the responsibility to competently and closely monitor admission to the medical staff and, if warranted, to revoke or limit privileges already extended to its medical staff."  (*See Stambaugh Complaint*, Ex. 1.)  "On information and belief, Patten and HealthTech failed to take steps, or took insufficient steps, to investigate, oversee and monitor Dr. Hansen's performance to ensure patient safety."  (*See Johnson, Snell, Brinkerhoff and McMillen Complaints,* Exs. 2, 3, 4 and 5, respectively.)

14

35.     The allegations within the four corners of the complaints as compared to the Homeland Policies' definition of insured establish that HTMS and Patten are insureds under the policy.

36.     The Stambaughs in their complaint numbered 27758 at paragraphs 8, 34, 35 and 37, allege vicarious liability against HTMS for the acts of employees, officers, or agents acting within the scope of their employment or agency in the care of Susan Stambaugh.  (*See Stambaugh Complaint*, Ex. 1.)

37.     The Stambaughs' vicarious liability allegations against HTMS for the care of Susan Stambaugh relate to their medical malpractice claims and as such fall within the Homeland Policies' definition of insured and the additional insured endorsement.

## UMIA'S CLAIMS HANDLING

38.     After submitting the Insurance Claims to UMIA, HTMS (through counsel) requested a coverage determination and/or disclosure as to when a coverage determination would be forthcoming.  Specifically, on September 17, September 26, October 22 and October 27, HTMS (through counsel) emailed UMIA to request an update regarding the status of UMIA's coverage determination.

39.     On October 27, 2014, HTMS received an email from UMIA stating, in part, "As you're aware, there are numerous issues, not least of which is the denial of all previous claims by One Beacon Insurance.  That and other coverage issues have delayed our decision."

40.     In response, on October 30, 2014, HTMS (through counsel) asked for clarification as to how OneBeacon's denial was relevant to UMIA's determination of coverage under UMIA's policy.  Having heard no response from UMIA, HTMS (through counsel) again inquired by email on November 17, 2014 as to when a coverage determination could be expected

and why OneBeacon's position was relevant to UMIA's coverage determination under UMIA's own policy language.  Having received no response whatsoever from UMIA, HTMS sent a letter to UMIA on December 4, 2014 again seeking answers to its questions regarding coverage and the relevance of OneBeacon's denials.

41.     During the time HTMS was seeking a response from UMIA, HTMS was accruing legal fees to defend itself from the allegations of the Insurance Claims.

42.     By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy for the Stambaugh claims (UMIA Claim No. 198085-1).  The letter stated that coverage was being denied because the Stambaughs' counsel sent correspondence in March 2014 "generally describing the circumstances surrounding their likely claims against PVHC" and served a Notice of Claims against PVHC in April 2014 and July 2014.  UMIA's denial letter further stated, "PVHC and HealthTech were aware of the existence of a potential claim as of the date the Policy was issued (August 11, 2014).  The Stambaughs' claim against PVHC and HealthTech was therefore not first made and reported during the policy period or reporting period, and is not subject to coverage under Coverage A or C under the Policy."  The letter does not provide any express or legitimate basis for UMIA's conclusion that HTMS was aware of the existence of a potential claim against HTMS by the Stambaughs prior to the August 1, 2014 inception of the UMIA Policy.  The Stambaugh complaint naming HTMS as a defendant was filed on August 5, 2014 and was not served on HTMS until August 27, 2014.

43.     By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy for the Oliver claims (UMIA Claim No. 198089-1).  The letter stated that coverage was being denied because Oliver's counsel sent an email to PVHC's counsel on July 31, 2014 stating that they intended to file claims against Hansen and PVHC.  UMIA's denial letter further stated,

"PVHC and HealthTech were aware of the existence of a potential claim as of the date the Policy was issued (August 11, 2014).  Ms. Oliver's claim was therefore not first made and reported during the policy period or reporting period, and is not subject to coverage under Coverage A or C under the Policy."  The letter does not provide any express or legitimate basis for UMIA's conclusion that HTMS was aware of the existence of a potential claim by Oliver prior to the August 1, 2014 inception of the UMIA Policy.  The Oliver complaint naming HTMS and Patten as defendants was filed on August 15, 2014.

44.     By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy for the Sommerville claims (UMIA Claim No. 198093-1).  The letter stated that coverage was being denied because "PVHC and HealthTech were aware of the existence of a potential claim as of the date the Policy was issued (August 11, 2014).  The Sommervilles' claim was therefore not first made and reported during the policy period or reporting period, and is not subject to coverage under Coverage A or C under the Policy."  The letter does not provide any express or legitimate basis for UMIA's conclusion that HTMS was aware of the existence of a potential claim by the Sommervilles prior to the August 1, 2014 inception of the UMIA Policy.  The Sommerville complaint naming HTMS as a defendant was filed on September 22, 2014.

45.     By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy for the Snell claims (UMIA Claim No. 198091-1).  The letter stated that coverage was being denied because the Snells' counsel sent an email to PVHC's counsel on July 31, 2014 stating that they intended to file claims against Hansen and PVHC.  UMIA's denial letter further stated, "PVHC and HealthTech (through, at a minimum, Mr. Patten) were aware of the existence of a potential claim as of the date the Policy was issued (August 11, 2014).  The Snells' claim was therefore not first made and reported during the policy period or reporting period, and is not

17

subject to coverage under Coverage A or C under the Policy." The letter does not provide any express or legitimate basis for UMIA's conclusion that HTMS was aware of the existence of a potential claim by the Snells prior to the August 1, 2014 inception of the UMIA Policy. The Snell complaint naming HTMS and Patten as defendants was filed on September 12, 2014.

46.     By letter dated February 6, 2015, UMIA denied coverage under the UMIA Policy for the Johnson claims (UMIA Claim No. 198092-1). The letter stated that coverage was being denied because Johnson's counsel sent an email to PVHC's counsel on July 31, 2014 stating that they intended to file claims against Hansen and PVHC. UMIA's denial letter further stated, "PVHC and HealthTech were aware of the existence of a potential claim as of the date the Policy was issued (August 11, 2014). Ms. Johnson's claim was therefore not first made and reported during the policy period or reporting period, and is not subject to coverage under Coverage A or C under the Policy." The letter does not provide any express or legitimate basis for UMIA's conclusion that HTMS was aware of the existence of a potential claim by Johnson prior to the August 1, 2014 inception of the UMIA Policy. The Johnson complaint naming HTMS as a defendant was filed on September 29, 2014.

47.     By letter dated February 10, 2015, UMIA denied coverage under the UMIA Policy for the DiPilla claims (UMIA Claim No. 198194-1). The letter stated that coverage was being denied because counsel for the DiPillas had made a request for medical records relating to Mr. DiPilla's treatment at PVHC prior to the inception of the UMIA Policy. UMIA's denial letter further stated, "PVHC and HealthTech were aware of the existence of a potential claim as of the date the Policy was issued (August 11, 2014). The DiPillas' claim against PVHC and HealthTech was therefore not first made and reported during the policy period or reporting period, and is not subject to coverage under Coverage A or C under the Policy." The letter does

not provide any express or legitimate basis for UMIA's conclusion that HTMS was aware of the existence of a potential claim by DiPilla prior to the August 1, 2014 inception of the UMIA Policy.  The DiPilla complaint naming HTMS and Patten as defendants was filed on January 20, 2015.

48.     By letter dated April 20, 2015, UMIA agreed to defend HTMS and Patten, under a complete reservation of rights, against the Brinkerhoff claims (UMIA Claim No. 198227-1).

49.     By letter dated April 20, 2015, UMIA agreed to defend HTMS and Patten, under a complete reservation of rights, against the Eller claims (UMIA Claim No. 198364-1).

50.     By letter dated April 20, 2015, UMIA agreed to defend HTMS and Patten, under a complete reservation of rights, against the McMillen claims (UMIA Claim No. 198221-1).

51.     UMIA takes the position that it does not provide coverage to HTMS or Patten for the Stambaugh, Oliver, Snell, Johnson, Sommerville and DiPilla claims because those claims were first made during the period of the Homeland Policies.

52.     The correspondence relied upon as the basis for UMIA's denial does not list HTMS or Patten as parties against whom claims are to be made, nor is there or has UMIA asserted there is any basis for claiming that HTMS and/or Patten were aware of such correspondence to PVHC's counsel until after the UMIA policy period commenced.

53.     The first notice HTMS and Patten respectively received that the Insurance Claims were more than medical malpractice claims against Hansen and PVHC did not occur until HTMS received notice of the Stambaugh Medical Review Panel proceeding in August 2014 and Patten received notice of the Oliver Medical Review Panel proceeding in August 2014.

54.     HTMS and Patten have incurred legal costs and expenses defending themselves in the Medical Review Panel proceedings and such proceedings are part of the Insurance Claims.

## CLAIM I
## BREACH OF CONTRACT – HOMELAND AND UMIA

55.     HTMS and Patten hereby incorporate their answers and allegations from the

foregoing paragraphs of this pleading.

56.     As described above, Homeland and UMIA entered into binding written

agreements to provide professional liability insurance and excess liability insurance to HTMS as

an insured under PVHC's insurance policies.

57.     HTMS is an insured and an intended third-party beneficiary under the policies.

58.     Homeland and UMIA have a duty to defend HTMS and Patten pursuant to the

Primary and/or Excess Policies.

59.     PVHC fully performed its obligations under the policies by paying premiums in

full and on a timely basis.  PVHC, HTMS and Patten have satisfied any conditions precedent to

coverage under the policies, including submission of timely notices.

60.     Homeland and UMIA have materially breached the insurance policies by refusing

to perform their contractual obligations.

61.     Specifically, Homeland and UMIA have breached their contractual obligations

by:

        a.      refusing to defend HTMS and Patten;

        b.      refusing to reimburse HTMS and Patten for fees and expenses incurred;

and

        c.      refusing to pay HTMS/Patten's counsel.

62.     Homeland and UMIA's refusals to perform are not excused or justified in any

manner.

63.     Homeland and UMIA have also breached their duty to act in good faith and to deal fairly with HTMS and Patten.

64.     As a result of Homeland and UMIA's breaches of their respective insurance policies, HTMS and Patten have been damaged and are entitled to recover damages from the insurers in an amount to be determined at trial.

## CLAIM II
## BAD FAITH BREACH OF INSURANCE CONTRACT — HOMELAND AND UMIA

65.     HTMS and Patten hereby incorporate their answers and allegations from the foregoing paragraphs of this pleading.

66.     Every contract or policy of insurance contains implied covenants of good faith and fair dealing owed by the insurer to the insured.

67.     The Insurance Policies sold by Homeland and UMIA to PVHC contain implied covenants of good faith and fair dealing owed by Homeland and UMIA to their respective insureds, including without limitation PVHC, HTMS and Patten.

68.     Homeland and UMIA owe a duty of good faith and fair dealing to HTMS and Patten in connection with their claims for coverage under the Insurance Policies.

69.     Homeland's and UMIA's investigation, handling and denials of the claims were done with knowledge of, or in reckless disregard of, the fact that there was no reasonable basis to deny coverage to HTMS and Patten for the claims, including but not limited to the following acts or practices constituting bad faith denial of such coverage:

        a.      Refusing to pay claims without conducting a reasonable investigation based upon all available information;

21

> b.      Denying and delaying coverage due under the Insurance Policies without any reasonable or fairly debatable basis for the denials;

> c.      Interpreting the Insurance Policies in an unreasonable manner;

> d.      On information and belief, colluding with another insurer to make coverage decisions based in part or in whole on the coverage determinations of an unaffiliated insurer under an unrelated contract;

> e.      Compelling HTMS and Patten to institute litigation and incur attorneys' fees and other costs in order to obtain coverage tortiously and wrongfully denied;

> f.      Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Insurance Policies.

70.      Homeland and UMIA either knew their acts, as shown in the foregoing allegations, were unreasonable and in bad faith or recklessly disregarded the fact that their acts were unreasonable and in bad faith.

71.      Homeland and UMIA have failed to settle the underlying malpractice claims despite receiving demands within their policy limits.

72.      Homeland and UMIA's failure to settle the underlying malpractice claims within their policy limits is unreasonable.

73.      Homeland and UMIA's unreasonable acts and bad faith misconduct have caused damages to HTMS and Patten in an amount to be determined at trial.

## CLAIM III
### ATTORNEYS' FEES AND PREJUDGMENT INTEREST – HOMELAND AND UMIA

74.      HTMS and Patten hereby incorporate their answers and allegations from the foregoing paragraphs of this pleading.

75.     As described above, Homeland and UMIA are obligated to defend HTMS and Patten, as insureds under the Policies, in the Insurance Claims.

76.     Homeland and UMIA have denied coverage to HTMS and Patten as explained above.

77.     Homeland and UMIA's denials of coverage are unreasonable.

78.     Pursuant to Wyo. Stat. § 26-15-124(c), HTMS and Patten are entitled to an award of reasonable attorneys' fees and interest at ten percent (10%) per year.

## CLAIM IV
### DECLARATORY JUDGMENT

79.     HTMS and Patten hereby incorporate their answers and allegations from the foregoing paragraphs of this pleading.

80.     There is an existing controversy between HTMS and Patten, on one hand, and Homeland and UMIA, on the other, concerning the Insurers' duty to defend HTMS and Patten and fulfill other obligations under the Insurance Policies.

81.     Pursuant to Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201, HTMS and Patten request that the Court declare the duties and obligations of Homeland and UMIA under the Insurance Policies.  Specifically, HTMS and Patten ask the Court to declare:

a.     That HTMS and Patten are entitled to a defense from Homeland and/or UMIA in the underlying litigation.

b.     That HTMS and Patten are entitled to be indemnified by Homeland and/or UMIA for any damages awarded in the underlying litigation.

      c.     That none of the provisions in the Insurance Policies exclude insurance coverage for HTMS or Patten relating to the underlying litigation.

      d.     That Homeland and/or UMIA must reimburse HTMS and Patten for the legal expenses they incur in defending and/or settling the Insurance Claims.

## PRAYER FOR RELIEF

WHEREFORE, HTMS and Patten seek judgment against Homeland and UMIA for:

o  Declaratory relief as specified above;

o  Actual, compensatory and consequential damages in an amount to be proven at trial;

o  All statutory damages available per statute, in an amount to be determined at trial;

o  Pre-judgment and post-judgment interest as allowed by law;

o  Costs for pursuing this lawsuit, including attorneys' fees, as allowed by law; and

o  Any and all other relief the Court deems proper.

## DEMAND FOR JURY TRIAL

HTMS and Patten demand a trial by jury on all claims so triable.

DATED:  June 1, 2015

/s/ Joanna R. Vilos

Joanna R. Vilos (Wyo. State Bar # 6-4006)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY  82003-1347
Telephone:  (307) 778-4200
jvilos@hollandhart.com

Jose A. Ramirez (admitted *pro hac vice*)
HOLLAND & HART LLP
8390 E. Crescent Parkway, Suite 400
Greenwood Village, CO 80111
Telephone:  (303) 290-1600
jramirez@hollandhart.com

ATTORNEYS FOR DEFENDANTS
HEALTHTECH MANAGEMENT SERVICES, INC.
AND WILLIAM D. PATTEN

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2015, I served a true and correct copy of the foregoing by

CM/ECF addressed to the following:

> Judith Studer
> Schwartz, Bon, Walker & Studer, LLC
> 141 South Center Street, Suite 500
> Casper, WY  82601
> jstuder@schwartzbon.com

/s/ Joanna R. Vilos

7694047_5