Robert A. Krause; krause@spencelawyers.com (WSB # 5-2824)
Mel C. Orchard, III; orchard@spencelawyers.com (WSB # 5-2894)
Sarah A. Kellogg; kellogg@spencelawyers.com (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290; (307) 733-5248 Fax

William L. Simpson; bsimpson@skelaw.com (WSB # 5-2189)
BURG, SIMPSON, ELDREDGE, HERSH & JARDINE, PC
1135 14th Street, P.O. Box 490
Cody, Wyoming 82414
(307) 527-7891; (307) 527-7897 Fax

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2015 JUN 15 PM 1 34
STEPHAN HARRIS, CLERK
CHEYENNE

*Attorneys for Applicants*

## UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

HOMELAND INSURANCE COMPANY OF
NEW YORK,

           Plaintiff,

v.

POWELL HOSPITAL DISTRICT, et al.,

           Defendants.

Case No: 15-cv-00031

### MOTION TO INTERVENE

Applicants, by an through their attorneys, Robert A. Krause, Mel C. Orchard, and Sarah

A. Kellogg of THE SPENCE LAW FIRM, LLC and William L Simpson of BURG, SIMPSON, HERSH

& JARDINE, PC, move this Court for leave to intervene as Defendants in this Action, pursuant to

Fed. R. Civ. P. 24(a) and (b) and to file the Answer, attached hereto as Exhibit A, in compliance

with Rule 24(c).

I.      INTRODUCTION

Applicants are the Plaintiffs in eight underlying lawsuits arising out of the medical

negligence of Dr. Jeffrey Hansen and the negligence of Powell Valley Health Care, Inc.

("PVHC"), HealthTech Management Services, Inc. ("HealthTech") and/or William D. Patten.

This Action stems from Homeland Insurance Company of New York ("Homeland") and UMIA

Insurance, Inc.'s ("UMIA") denial of coverage to PVHC, HealthTech, Dr. Hansen, and Mr. Patten ("existing Defendants") for Applicants' underlying claims.[1]  If Homeland and UMIA prevail, Applicants' ability to recover for their injuries will be severely impaired.

Applicant Michelle Oliver was injured when Dr. Hansen negligently operated on her knee to perform an ACL reconstruction. Exh. B, *Oliver Complaint*, at ¶ 27.  During this surgery Dr. Hansen inappropriately placed the femoral tunnel for the graft. *Id.* at ¶ 34.  This caused Ms. Oliver to endure three additional surgeries and suffer permanent damage. *Id.* at ¶ ¶ 29-30.

Applicant Veronica "Ronnie" Sommerville was injured when Dr. Hansen performed a bunion surgery, a gastroc lengthening, and an unconsented medial column fusion. Exh. C, *Sommerville Complaint*, at ¶ ¶ 27, 29.  Before this surgery Ms. Sommerville was an avid runner. Today she endures constant and all-consuming nerve pain, which is so severe that she may have to have her foot amputated. *Id.* at ¶ 42.  William Sommerville is Ms. Sommerville's husband, and A.L.S. is their minor child. *Id.* at ¶ ¶ 2-3.

Applicant Lynn Snell saw Dr. Hansen for a humerus fracture repair. Exh. D, *Snell Complaint*, at ¶ ¶ 27-28.  During this surgery, Dr. Hansen negligently damaged Mr. Snell's radial nerve. *Id.* at ¶ 32.  Three years later, Mr. Snell still deals with numbness, pain, and limited movement. *See id.* at ¶ 35.  Janet Snell is Mr. Snell's wife. *Id.* at ¶ 3.

Applicant Joetta Johnson saw Dr. Hansen for wrist pain. Exh. E, *Johnson Complaint,* at ¶ 26.  Dr. Hansen recommended and performed an ulna shortening — a procedure that never should have been done. *Id.* at ¶ 63(a).  Consequently, Ms. Johnson went on to develop a non-union, requiring two additional surgeries to date with permanent damage. *Id.* at ¶ ¶ 34, 39.

---

[1] Dr. Hansen was an employee of PVHC.  HealthTech is a hospital management company. PVHC and HealthTech had a management agreement, whereby HealthTech managed PVHC by placing a HealthTech employee to function as the CEO of PVHC.  William Patten was a HealthTech employee who served as the CEO of PVHC from February 2012 through April 2015.

Applicant Martha McMillen was treated surgically by Dr. Hansen for a partial sprain of the MCL and a medial meniscus tear. Exh. F, *McMillen Complaint*, at ¶ ¶ 29, 30. Only three months later, Dr. Hansen hastily and unnecessarily recommend a total knee replacement, which he performed on November 13, 2012. *Id.* at ¶ 33. This was followed by a manipulation of the knee, during which Dr. Hansen negligently fractured Ms. McMillen's distal femur. *Id.* at ¶ 38. On March 29, 2013, Dr. Hansen operated yet again, this time to repair the fracture and perform a total knee revision. *Id.* at ¶ 39. Richard McMillen is Ms. McMillen's husband. *Id.* at ¶ 2.

Applicant Jan Brinkerhoff saw Dr. Hansen for plantar fasciitis. Exh. G, *Brinkerhoff Complaint*, at ¶ 27. Dr. Hansen did not recommend or document any conservative treatment prior to resorting to surgery. *Id.* at ¶ 31. In fact, he never even had an appointment with Ms. Brinkerhoff before the surgery. *Id.* at ¶ 32. Dr. Hansen damaged Ms. Brinkerhoff's sural nerve and left a painful scar on the bottom of her foot, in a weight baring location. *Id.* at ¶ 65. Bart Brinkerhoff is Ms. Brinkerhoff's husband. *Id.* at ¶ 2.

Applicant Anthony DiPilla was injured when Dr. Hansen performed a carpal tunnel release, scaphoid resection, and capitate-lunate fusion. Exh. H, *DiPilla complaint*, at ¶ 29. During this surgery Dr. Hansen damaged the median nerve and ruptured two tendons. *Id.* at ¶ 35. Laurie DiPilla is Mr. DiPilla's wife. *Id.* at ¶ 2.

Applicant Shannon Eller[2] was injured when Dr. Hansen operated on her shoulder. Exh. I, *Eller Complaint*, at ¶ 18. Dr. Hansen over-tightened the capsule, causing a complete breakdown of cartilage and necessitating a total shoulder replacement. *Id.* at ¶ ¶ 23-24.

After Applicants filed their underlying tort claims, Homeland filed this Action, asking the

---

[2] The Homeland Complaint does not specifically name the DiPilla case nor the Eller case. However, the Complaint does specify that it is seeking declaratory relief on coverage for "Any other written notice…or lawsuits by patients of Hospital, alleging injuries suffered as a result of medical procedures performed by Dr. Hansen." *Doc. 1*, at ¶ 13.

Court to declare that there is no insurance coverage available to satisfy any judgments or settlements in the underlying cases. *Doc. 1, Complaint*, at ¶ 1. HealthTech and Patten then filed a claim against UMIA, seeking declaratory judgment on the coverage under that policy and asserting claims for bad faith and breach of contract. *Doc. 16, HealthTech/ Patten Answer*.

## II.   DISCUSSION

Applicants' intervention is this Action is necessary to protect their ability to recover in the underlying cases.  Given the high stakes of this Action, and the adversarial relationship between the Applicants and the existing Defendants in the underlying actions, it would be unfair to require Applicants to trust the fate of their recovery to the existing Defendants who have different incentives.  Applicants have made a good faith effort under Local Rule 7.1, to confer with opposing counsel prior to filing this Motion.  Counsel for HealthTech, Patten, Powell Hospital District, PVHC, and Dr. Hansen have represented that their clients will not oppose this Motion.  Counsel for Homeland has represented that her client will object to this Motion.[3] Nevertheless, Applicants' intervention is proper as a matter of right under Rule 24(a) or upon the Court's discretion under Rule 24 (b).

A.   Timeliness

Rule 24 allows un-named parties to intervene in an existing action when the motion is timely. "The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."

---

[3] Counsel for HealthTech, Mr. Patten, Powell Hospital District, PVHC, and Dr. Hansen represented via email on June 10, 2015, that their clients do not oppose this motion.  Robert Krause, Counsel for Applicants, spoke with Judith Studer, counsel for Homeland, by telephone on June 11, 2015.  During this conversation, Ms. Studer represented that Homeland does not believe that Applicants are proper parties to this action.  Mr. Krause and Ms. Studer could not reach an agreement.

*Utah Ass'n of Cntys v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001).   There can be no doubt

that Applicants' intervention is timely — the existing Defendants only recently answered the

Complaint, UMIA has not answered, there has not been a scheduling order, and discovery has

not begun.   *See U.S. v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1392 (10th Cir. 2009) ("[Intervenor]

filed its motion shortly after the action was filed … and before any scheduling order.").

B.      Intervention as a Right
        Rule 24 (a)(2) allows for *intervention as a matter of right* when: 1) the applicant has an

interest in the suit; 2) his interest may be impaired by the resolution of the action; and 3) his

interest is not adequately protected by the exiting parties.   *Elliot Indus. Ltd. P'ship v. BP Am.*

*Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005).   These "factors are not rigid, technical

requirements." *San Juan Cnty, Utah v. U.S.*, 503 F.3d 1163, 1195 (10th Cir. 2007).   Instead, "the

determination of a party's right to intervene is, at least in part, a process of equitable balancing."

*Id.*   Because this test is satisfied, this Court should allow Applicants to intervene as a right.

1.      **The outcome of this Action will profoundly impact Applicants' ability to recover for
        their injuries**
        The first two requirements for intervention as a right are that the "applicant must have an

interest that could be adversely affected by the litigation." *Id.* at 1199 (emphasis added).   "The

*interest* element is a practical guide to disposing of lawsuits by involving as many apparently

concerned persons as is compatible with efficiency and due process." *WildEarth Guardians v.*

*Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (internal quotations omitted) (emphasis

in original).   Where other Circuits have required this interest to be "direct, substantial, and

legally protectable" — the Tenth Circuit has taken a more liberal approach.[4]   *See Id.*

---

[4] *See San Juan Cnty, Utah*, 503 F.3d at 1197 (stating in dicta that the intervention of a church in
an insurance dispute between its architect and the architect's insurer "was clearly proper"); *Minn.*
*Lawyers Mut. Ins., Co. v. Vedisco*, No. 10-cv-01008, 2010 WL 3239217, at * 3 (D. Colo. 2010)

As a practical matter, this Action will determine if there is coverage for Applicants' underlying claims. *Id.* at 1193 ("The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention."). PVHC alleges that it is a governmental entity. *See* Exh. J, *PVHC Answer Sommerville*, at ¶ 5. If this is true, in the absence of insurance, Applicants will be precluded from recovering against Dr. Hansen and will be limited to recovering $1,000,000 per "occurrence" against PVHC. W.S. § 1-39-104 (a) (granting tort immunity to public employees); W.S. § 1-39-110 (b) (waiving governmental immunity for health care facilities but limiting liability to $1,000,000 per occurrence); W.S. § 1-39-118 (allowing for additional recovery against governmental entities when they have insurance).

If PVHC is not a governmental entity, there is a danger that it will declare bankruptcy should Homeland and UMIA prevail in this Action. *See Gen. Ins. Co. of Amer. v. Rhoades,* 196 F.R.D. 620, 624 (D.N.M. 2000) ("Where the claimant's only real hope of recovery rests in establishing the existence of insurance coverage, courts have a strong tendency to grant the claimant's motion to intervene."). The public record demonstrates that PVHC is, at the very least, in difficult financial straights. Exh. K, *Declining revenue worries PVHC Bd.* ("Currently, we're losing — in the hole — about $500,000 per month."); Exh. L, *PVHC Annual Report 2014* (demonstrating a net loss of $1,367,658 in 2014); Exh. M, *PVHC Annual Report 2013* (demonstrating a net loss of $497,391 in 2013). Given the number of medical malpractice cases against PVHC and Dr. Hansen, Applicants find bankruptcy to be a credible concern.

Although HealthTech and/or Patten may have additional assets, it is uncertain whether or not these parties will remain in the underlying actions. HealthTech and/or Patten have filed

---

(allowing a former client to intervene in an insurance dispute between an attorney and her malpractice insurer).

Motions for Judgment on the Pleadings in *Snell*, *Sommerville*, and *Johnson*. In *Oliver*, the federal court judge dismissed HealthTech and Patten after a similar motion was filed.[5] In short, absent the Homeland policies, it is unclear whether or not Applicants will be able to recover at all for their injuries.

2. **It would be unfair to require Applicants to trust their recovery to the existing Defendants given their adversarial relationship in the underlying litigation and PVHC's belief that it is a governmental entity with a maximum exposure, without insurance, of $1,000,000 per claim**
Applicants also satisfy the third requirement for intervention as a matter of right because the existing Defendants do not adequately represent their interests. *See Kane Cnty. v. U.S.*, 597 F.3d 1129, 1134 (10th Cir. 2010). Representation is presumed to be sufficient when the existing parties and the intervening party have identical objectives. *San Juan Cnty., Utah*, 503 F.2d at 1204. However, "[t]he movant must show only the **possibility** that representation may be inadequate." *WildEarth Guardians*, 604 F.3d at 1200 (emphasis added); *Utah Ass'n of Counties*, 255 F.3d at 1254 ( "The possibility that the interests of the applicant and the parties may diverge need not be great ....") (internal quotations omitted). There are three reasons why the existing Defendants do not adequately represent Applicants' interests.

First and foremost, the existing Defendants may not have the financial resources to fully defend this Action. *Minn. Lawyers Mut. Ins., Co. v. Vedisco*, No. 10-cv-01008, 2010 WL 3239217, * 4 (D. Colo. 2010) ("Moreover, if the movants' statements concerning [the defendant's] financial status prove to be true, it is likely [the defendant] will not put forth vigorous efforts to defend this second action, and might abandon her defense altogether."). In 2014, PVHC operated at a loss of $1,367,658. Exh. L. Given the institution's dire financial state, Applicants are not comfortable trusting their recovery to PVHC's limited budget.

---

[5] This decision was effectively vacated by the case's subsequent dismissal for lack of subject matter jurisdiction. Afterwards, *Oliver* was re-filed in Wyoming state court.

Second, because of the adversarial relationship between the existing Defendants and the Applicants in the underlying action, it would be unfair to require the Applicants to put the fate of their recovery in the hands of the existing Defendants. *Minn. Lawyers Mut. Ins., Co.,* No. 10-cv-01008, 2010 WL 3239217, at * 4 ("The Court finds it contrary to the interest of justice and fairness that parties involved in hotly disputed litigation ... be expected suddenly to represent the interests of their adversary in a related case."). This is especially true in light of PVHC's insistence that it is a governmental entity, with a maximum exposure, without insurance, of $1,000,000 per claim. *See* W.S. § 1-39-110. By Contrast, a total of $15,000,000 is available under the Homeland policies and $17,000,000 is available under the UMIA polices.[6] Both polices include an excess policy and an underlying policy. PVHC's incentives to fight for coverage under the excess policies are minimized because it perceives itself to be a governmental entity, with a maximum exposure, without insurance, of $1,000,000 per occurrence. *See* W.S. 1-39-110.

Finally, Applicants' interests in coverage are not identical to that of the existing Defendants. 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed.) ("[I]f the absentee's interest is similar to, but not identical with, that of one of the parties ... intervention ordinarily should be allowed unless it is clear that the party will provide adequate representation for the absentee."). Although the existing Defendants have an interest in securing insurance coverage in the aggregate, Applicants have a more specific interest in ensuring insurance coverage in their <u>individual</u> cases. *See United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund. Soc.* 819 F.2d 473, 474 (4th Cir. 1987) (allowing the largest

---

[6] The underlying Homeland policy provides $1,000,000 per claim and $3,000,000 aggregate. Exh. N, *OneBeacon Declarations*. The excess policy would provide an additional $12,000,000 in coverage. *Id.* The underlying UMIA policy provides $1,000,000 per claim and $5,000,000 aggregate. Exh. O, *UMIA Declarations*. The excess policy provides $12,000,000. *Id.*

holder of mortgage certificates to intervene in an action between a real estate syndication firm and its insurer for purposes of protecting its specific mortgage certificates).  This distinction is significant given that the number of claims pending against PVHC and PVHC's poor financial health lead to the logical inference that PVHC will not have adequate assets to satisfy judgments in all of these cases.  As PVHC's risk of bankruptcy increases, PVHC's incentive to find coverage for each case, individually, will decrease.

C.   Permissive Intervention

Even assuming *arguendo* that this Court determines that Applicants should not be permitted to intervene as a matter of right, the Court should allow Applicants to intervene upon its own discretion.  Rule 24 (b)(1)(B) allows for ***permissive intervention*** when:  1) the applicant "has a claim or defense that shares with the main action a common question of law or fact"; and 2) the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Rule 24(b)(1); (b)(3).  In weighing these interests, the Court may consider: "(1) whether the would-be intervenor's input adds value to the existing litigation; (2) whether the petitioner's interests are adequately represented by the existing parties; and (3) the availability of an adequate remedy in another action" (hereinafter "*Lower Arkansas* Factors").  *Lower Ark. Valley Water Conserv. Dist. v. U.S.*, 252 F.R.D. 687, 690-91 (D. Colo. 2008).  In other words, permissive intervention provides a mechanism for courts to allow un-named parties to intervene when appropriate.

Here, there are common questions of fact and law likely to arise in the underlying malpractice actions and this Action.  These questions include when and how Dr. Hansen provided medical treatment to the Applicants, and when and if the Defendants learned that Dr. Hansen was not fit to practice medicine.  Moreover, Applicants' presence in this action will not result in ***undue*** delay or prejudice.  Applicants can coordinate discovery with the existing

Defendants in order to conserve time and resources.    Further, any discovery produced in this Action is likely to be discoverable in the underlying actions, so there should not be a concern that Applicants' involvement in this Action will somehow prejudice the Defendants (or Homeland, if it is forced to indemnify them) in the underlying actions.  *Minn. Lawyers Mut. Ins., Co.*, No. 10-cv-01008, 2010 WL 3239217, at * 5 ("[The insurer] has not argued (and the Court cannot discern) it would be unable to object to disclosure of the file in this action as opposed to in the underlying action."). Finally, this Motion comes early in the litigation.  *Id.*

For additional guidance, the Court may look to the *Lower Arkansas* Factors.  Under the first *Lower Arkansas* Factor, the Applicants add value to this case because their presence will allow the Court to have access to more complete briefing.  *Lower Ark. Valley Water Conserv. Dist.*, 252 F.R.D. at 691 (discussing the contribution of additional briefing).  Perhaps most importantly, Applicants "have the means and intent to defend this action to its conclusion." *Minn. Lawyers Mut. Ins., Co.*, No. 10-cv-01008, 2010 WL 3239217, at * 5. *Lower Arkansas* Factor two, whether the existing parties adequately represent Applicants' interests, has already been addressed above and weighs in favor of intervention.  Finally, under the third *Lower Arkansas* Factor, if coverage is lost in this Action, the Applicants may not have an alternative remedy.

### III.    CONCLUSION

For these reasons, Applicants respectfully request the Court grant the instant motion and allow Applicants to intervene as a matter of right under Rule 24(a).  In the alternative, Applicants request the Court to allow intervention under Rule 24(b).

Dated this 12th day of June, 2015.

Robert A. Krause
*Attorney for the Applicants*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was served upon the following, as indicated below on this 12th day of June, 2015, and addressed as follows:

Clerk of the Court, US District Court
District of Wyoming

   __x_ US Mail, Postage Prepaid
   ___ Hand Delivery
   ___ Overnight Mail
   ___ Facsimile
   ___ CM/ECF Electronic Filing

Judith A. Studer
SCHWARTZ, BON, WALKER & STUDER, LLC
141 South Center Street, Suite 505
Casper, WY 82601

   __x_ U.S. Mail, Postage Prepaid
   ___ Hand Delivery
   ___ Overnight Mail
   ___ Facsimile
   ___ CM/ECF Electronic Filing

*Attorneys for Plaintiff Homeland*

Tiffany M. Brown
Charles E. Spevacek
MEAGER & GEER
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402

   __x_ U.S. Mail, Postage Prepaid
   ___ Hand Delivery
   ___ Overnight Mail
   ___ Facsimile
   ___CM/ECF Electronic Filing

*Attorneys for Plaintiff Homeland*

Joe A. Ramirez
Joanna R. Vilos
HOLLAND & HART
6380 South Fiddlers Green Circle
Suite 500
Greenwood Village, CO 80111

   _x__ U.S. Mail, Postage Prepaid
   ___ Hand Delivery
   ___ Overnight Mail
   ___ Facsimile
   ___ CM/ECF Electronic Filing

*Attorneys for Defendants HealthTech and William Patten*

Robert A. Krause
*Attorney for the Applicants*