Judith Studer, WSB #5-2174
SCHWARTZ, BON, WALKER & STUDER, LLC
141 South Center Street, Suite 500
Casper, WY 82601
Telephone (307) 235-6681
Fax (307) 234-5099
E-mail jstuder@schwartzbon.com

Charles E. Spevacek, admitted *pro hac vice*
Tiffany A. Brown, admitted *pro hac vice*
MEAGHER & GEER, PLLP
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
Telephone (612) 347-9171/(612) 371-1324
Fax (612) 877-3015
E-mail cspevacek@meagher.com
E-mail tbrown@meagher.com

*Attorneys For Plaintiff*
*Homeland Insurance Company of New York*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | ) | Case No. 15-CV-31-ABJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **BRIEF IN SUPPORT OF** |
| | ) | **HOMELAND INSURANCE** |
| | ) | **COMPANY OF NEW YORK'S** |
| SCOTT J. GOLDSTEIN, as the Personal Injury | ) | **MOTION TO COMPEL** |
| Trustee for the Personal Injury Trust of Powell | ) | |
| Valley Healthcare, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 37(a)(3)(B), Homeland moves to compel the Trustee to: (1) produce documents withheld on Peer Review, Quality Management, Medical Staff Committee, and Board of Medicine privileges; (2) produce documents disclosed to UMIA; (3) supplement discovery responses for which Homeland has limited the scope; and (4) respond to Homeland's discovery without limitation to the specific patients whose claims are the subject of this dispute.

## II.     BACKGROUND

Homeland filed this action seeking declaratory relief regarding the availability of insurance coverage for certain Underlying Claims asserted by or on behalf of former patients of Powell Valley Healthcare, Inc. ("PVHC" or the "Hospital"). The Underlying Claims alleged the Hospital's former orthopedic surgeon Dr. Jeffrey Hansen was negligent in the performance of medical procedures and further asserted direct claims against the Hospital and its management company (HealthTech and CEO William Patten) for their negligence in credentialing, hiring, supervising, monitoring, reviewing, training, and extending privileges to Dr. Hansen.[1]

Among other reasons, Homeland seeks a declaration that there is no coverage for the Underlying Claims by operation of its Policy's Exclusion (D)(1), which provides:

> [T]his Policy does not apply to, and the Underwriter will not pay **Loss** or **Defense Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged … act, error, omission or **Wrongful Act** if any **Insured**, on or before the [Policy's August 1, 2013] Inception Date …, knew or reasonably could have foreseen that such act, error, omission or **Wrongful Act** might result in a **Claim**.[2]

---

[1] This action was stayed from May 16, 2016 to March 1, 2018, during which time PHVC's Chapter 11 Bankruptcy Case No. 16-20326 was pending. PVHC's Chapter 11 Plan, approved January 24, 2018 and effective March 1, 2018, transferred certain claims and causes of action (including claims for insurance coverage under the policies at issue in this action) to a Personal Injury Trust and appointed the Trustee to pursue those claims. The Trustee has since been substituted for the following defendants by Orders of this Court: PVHC [ECF #98]; Patten and HealthTech [ECF #107]; and Dr. Hansen [ECF #108]. The claims between Homeland and Powell were dismissed [ECF # 118].

[2] Terms in **bold** are defined in the Homeland Policies, which are attached as exhibits to the Complaint [ECF #1].

(Complaint, ¶ 39.d). Homeland raised Exclusion (D)(1) as a defense to coverage because it learned, following receipt of several claims involving Dr. Hansen, that two former assistants of Dr. Hansen provided detailed information to the Hospital, prior to the August 1, 2013 inception date of the Homeland Policies, regarding perceived incompetence and/or surgical deficiencies of Dr. Hansen, and consistent with the allegations in the Underlying Claims. (Complaint, ¶ 19).[3]

## III.     SUMMARY OF DISCOVERY ISSUES AND MEET AND CONFER EFFORTS

### A.     Claims to which Discovery is Relevant

Homeland served discovery aimed to uncover the full scope of the Hospital's knowledge and/or investigation (prior to inception of the Homeland Policies) of issues and/or concerns regarding Dr. Hansen. UMIA[4] served similar discovery. During the course of the bankruptcy, the Hospital provided responsive documents to UMIA, but failed to serve those same documents on the other parties to this action.[5] Following the lift of stay, Homeland served as its own the discovery originally served by UMIA. The Trustee now asserts various statutory privileges to shield Homeland from obtaining documents undisputedly relevant to the claims at issue, including documents previously disclosed to UMIA. (*See* Exs. A, B, C, and D filed herewith).

### B.     Statutory and Mediation Privilege Objections

The Trustee appears to withhold any evidence of the Hospital's pre-policy knowledge and/or investigation of issues regarding Dr. Hansen. With little differentiation (and in many cases without a sufficient description to assess the merits of the privilege), the Trustee claims

---

[3] Brad Mangum (a nurse practitioner who worked with Dr. Hansen beginning in December 2012) testified in a previous matter involving Dr. Hansen that he provided detailed information to the Hospital (including Chief of Surgery Dr. Rieb, Director of Risk Management Tim Seeley and CEO Patten) prior to the August 1, 2013 inception date of the Homeland Policies about Dr. Hansen's deficiencies as an orthopedic surgeon. Mangum also wrote to the Hospital's Board detailing his attempts to get Rieb, Seeley, and Patten to take action. Scott Wilson (a physician's assistant who worked with Dr. Hansen from September 2006 to November 2010) testified in another matter that he too repeatedly expressed concerns to the Hospital about Dr. Hansen's case selection and qualifications.

[4] UMIA Insurance issued later policies to the Hospital and was previously a party to this action. As part of PHVC's bankruptcy, the claims asserted by and against UMIA were settled and dismissed with prejudice. [ECF # 100].

[5] The Hospital did not respond Homeland's discovery requests in advance of its bankruptcy filing. Following conclusion of the bankruptcy case and substitution of the Trustee, the Trustee responded to Homeland's discovery.

that hundreds of responsive and relevant documents (including documents disclosed to UMIA) are protected from discovery by one or more of the following four privileges: (1) Peer Review (W.S. § 35-17-105); (2) Medical Staff Committee (W.S. § 35-2-605(x) and W.S. § 35-2-609(d)); (3) Quality Management (W.S. § 35-2-910); and (4) Board of Medicine (W.S. § 33-26-408).

By way of example, the Trustee withheld a May 7, 2013 e-mail from Tim Seeley, the Hospital's Director of Risk Management, to the Hospital's then-CEO Bill Patten, which e-mail was sent by Seeley following a "horrifying conversation with Brad Mangum," to advise Patten that "[i]f half of what [Magnum] says is true, and I believe him, we have a SERIOUS ongoing liability issue with Dr. Hansen." (Ex. E (emphasis in original)).[6] The Trustee now asserts "Quality Management" privilege over this document. (*See* Ex. D.9, PVH -0222529). But, the Hospital disclosed this e-mail to UMIA, which showed it to Homeland. Now, the Trustee claims that all documents disclosed to UMIA are apparently cloaked in mediation privilege.

### C.   Meet and Confer Process

Homeland wrote the Trustee on December 14, 2018 in an effort to meet and confer. (Ex. F). Homeland explained why the asserted privileges do not apply to this action in general nor to specific types of documents outside the scope of the statutes cited. *Id*. Although the Trustee has not responded to Homeland's letter, the parties had previously conferred by telephone on December 11, 2018 about discovery issues (including the Trustee's issues with Homeland's discovery responses), at which time Homeland advised the Trustee of the issues raised herein. During that call, the parties concluded that they were at an impasse with regard to each other's discovery issues and would need to seek the Court's involvement. This motion follows.[7]

---

[6] Exhibit E is being filed herewith as a Non-Public document.
[7] Following their December 11, 2018 phone conference, counsel for Homeland and the Trustee conferred with Magistrate Judge Carmen regarding their impasse, who thereafter granted the parties leave to file motions to compel. Because the Trustee has not responded in substance to Homeland letter (Ex, F), Homeland reserves the right to file a reply brief to address any substantive arguments the Trustee may make in response to Homeland's motion.

## IV.   ARGUMENT

### A.   The Statutory Privileges Do Not Apply to this Action and are Overstated

Homeland recognizes the statutory basis for the privileges asserted by the Trustee, their purpose to encourage "free-flowing constructive criticism" and to prevent a staff committee's activities from providing proof in civil actions against hospitals and physicians. *Greenwood v. Wierdsma*, 741 P.2d 1079, 1089 (Wyo. 1987). But the concerns giving rise to the need for those privileges are not present in this insurance coverage action where: (1) the underlying claims have been resolved; (2) Dr. Hansen has not been employed by the Hospital since 2014; and (3) the Hospital has put its supervision and credentialing of Dr. Hansen at issue having sought insurance coverage from Homeland for cases that specifically allege the Hospital was negligent in failure to properly supervise and credential Dr. Hansen. That is, while confidentiality may be important to the functioning of these committees insofar as they seek candid and conscientious evaluation of clinical practices as a condition of adequate hospital care, the privilege is less critical where the Hospital at issue has sought insurance coverage for several claims against it for negligence in the supervision, continued credentialing and extension of privileges to a single physician. Moreover, even when otherwise applicable, the statutory privileges asserted by the Trustee are not absolute. *See Harston v. Campbell Cty. Mem'l Hosp.*, 913 P.2d 870, 876 (Wyo. 1996) ("the statutes relating to the professional standard review organizations and those relating to hospital records and information do not afford the absolute protection from discovery"). The privileges are to be strictly construed and any documents not within their intended scope must be produced. For these reasons, the statutory privileges do not prevent disclosure to Homeland in this case.[8]

---

[8] Documents for which a statutory privilege is claimed can be designated "confidential" pursuant to the Protective Order [ECF #64] in this action. To the extent patient privacy is a concern, any responsive documents may be redacted as necessary and also designated "confidential" pursuant to that same Protective Order.

       1.    <u>Peer Review Privilege</u>. W.S. § 35-17-105 provides:

> All reports, findings, proceedings and data of the professional standard review organizations is confidential and privileged, and is not subject to discovery or introduction into evidence in any civil action, and no person who is in attendance at a meeting of the organization shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the organization or as to any findings, recommendations, evaluations, opinions or other actions of the organization or any members thereof. <u>However, information, documents or other records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of the organization, nor should any person who testifies before the organization or who is a member of the organization be prevented from testifying as to matters within his knowledge, but that witness cannot be asked about his testimony before the organization or opinions formed by him as a result of proceedings of the organization.</u>

(Emphasis added). The statue protects "information of review organizations." *Wierdsma*, 741 P.2d at 1089. As worded, however, the privilege applies only to documents of the committee, itself, and does not protect communications of committee members outside the function of the committee. Nor would the privilege protect communications with anyone outside of the committee. As observed by the Tenth Circuit Court of Appeals, the statute applies:

> To any committee of a medical staff in a hospital having the responsibility or evaluation and improvement of the quality of care rendered in the hospital, and <u>covers those documents produced by the committee as notes, reports and findings in the review process.</u>

*Nalder v. West Park Hospital*, 254 F.3d 1168, 1180 (10th Cir. 2001) (internal quotations and citations omitted) (emphasis added). While "there is no 'formality' requirement in the statute[,]" the privileges is limited to "peer review committees[.]" *Id*. Accordingly, the privilege does not apply to administrative arms of hospitals, nor to communication to/from Hospital administrators (*e.g*., Chief of Staff or Risk Manager) that do not represent committee <u>actions</u> or <u>opinions</u>.

      The Trustee asserts "Peer Review" privilege over a significant volume of e-mail and other correspondence, and other documents, authored by and/or exchanged between individual hospital staff which documents do not qualify as a <u>product</u> of the committee. Moreover, the

statute makes clear that "information, documents or other records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of the organization[.]" W.S. § 35-17-105. That is, "the privilege at issue is not so broad as to encompass any document reviewed by professional standard review organizations . . . [and does not extend to] where documents are claimed to be privileged merely because they passed before the eyes of a professional standard review organization." *Nalder*, 254 F.3d at 1180. Such documents are not privileged.

2.    Medical Staff Committee Privilege. W.S. § 35-2-609(d) provides:

> All reports, findings, proceedings and data of medical staff committees[9] shall be confidential and privileged. No claim or action shall accrue against any hospital, medical staff member or any employee of either arising out of the denial of staff privileges to any applicant or out of the suspension of, expulsion of or any other restrictive or disciplinary action against any medical staff member or hospital employee unless the action is arbitrary, capricious and without foundation in fact.

As with Peer Review, this privilege applies only to the actual "reports, findings, proceedings and data" of the committee and not to communication between its members.

Addressing this privilege, the Supreme Court in *Wierdsma* held that the statute was not to be so broadly construed as to prohibit a plaintiff from obtaining information necessary to pursue a claim for negligent credentialing, which information the court observed would overlap with information considered by the committee in the performance of its tasks. The court said:

> A careful reading of those statutes indicates that documents which detail the committee's decision-making process, opinion, perspective, or final decisional results are not discoverable. The privilege protects from discovery the records concerning the internal proceedings of the hospital committee but does not exempt from discovery materials which the committee reviews in the course of carrying out its function, nor action which may be taken thereafter by the hospital as may be influenced by the committee decision. In short, privileged data does not

---

[9] W.S. § 35-2-605(x) defines "medical staff committees" as "any committee within a hospital, consisting of medical staff members or hospital personnel, which is engaged in supervision, discipline, admission, privileges or control of members of the hospital's medical staff, evaluation and review of medical care, utilization of the hospital facilities or professional training[.]"

> include the materials reviewed by the committee, only those documents produced
> by the committee as notes, reports and findings in the review process.

*Id.* at 1089 (emphasis added). As made clear in *Wierdsma*, "the statute was not intended to exempt from discovery all relevant information and thereby preclude the possibility of proving negligence." *Id.* For the same reasons, documents otherwise discoverable by an underlying claimant may certainly be discovered in an insurance action to determine coverage for that claim. "[T]he statutes relating to the professional standard review organizations and those relating to hospital records and information do not afford the absolute protection from discovery[.]" *Harston,* 913 P.2d at 876 (construing W.S. § 35-17-105 and § 35-2-609(d)).

Wierdsma and *Harston* make clear that these privilege statutes protect peer review and medical staff committee opinions and/or final decisional results, only. The statutes do not "protect" information made available to the committee for its consideration, including information about complaints made or concerns expressed by other staff, or communications between committee members discussing the same. In many cases, it is clear that the Trustee has overstated the scope of these privileges by: (1) asserting more than one privilege for a document that is assumed to be, if a product of a committee, the product of only one committee; (2) asserting privilege over many e-mails and other correspondence that are not events that transpired during peer review or hospital committee meetings, nor opinions formed as a result of those meetings. Rather, many of the communications identified on the Trustee Privilege Log appear to concern facts known to the Hospital that would qualify as "original source" documents specifically exempted from the reach of the statute.

3.    Quality Management Privilege. W.S. § 35-2-910(a) provides:

Each licensee shall implement a quality management function to evaluate and improve patient and resident care and services in accordance with rules and regulations promulgated by the division. Quality management information relating to the evaluation or improvement of the quality of health care services is confidential.

> Any person who in good faith and within the scope of the functions of a quality management program participates in the reporting, collection, evaluation, or use of quality management information or performs other functions as part of a quality management program with regard to a specific circumstance shall be immune from suit in any civil action based on such functions brought by a health care provider or person to whom the quality information pertains. In no event shall this immunity apply to any negligent or intentional act or omission in the provision of care.

(Emphasis added). Unlike the statutes providing for Peer Review and Medical Committee privileges, W.S. § 35-2-910 does not extend "privilege, nor does it otherwise make "quality management information" immune from discovery. Rather, that information is only deemed to be "confidential." Confidentiality is not "privilege."[10] Any "quality management information" can be designated "confidential" pursuant to the Protective Order already in place. Further, as with the other statutes, this statute applies to only those the internal proceedings related to quality management information, such as documents that detail the decision-making process, opinion, perspective, or final decisional results related to quality management. The statute does not cover information reviewed in the information-gathering phase, nor a communication between the Hospital's Risk Manager and CEO like that documented by Exhibit E.

### 4.  Board of Medicine Privilege.

W.S. § 33-26-408 protects "[i]nvestigative notes, attorney's notes and work product and reports, pleadings, correspondence, witness statements and deposition transcripts and copies of original medical and prescription records in the possession of the board" and other "records of the board" from "disclosure by the board to any person[.] W.S. § 33-26-408(f)(i)-(ii) (emphasis added). That is, the statute extends to the Board of Medicine; it does not make privileged those documents in the possession of the Hospital merely because they involve communications with or other matters before the Board of Medicine.

---

[10] Unlike the Peer Review and Medical Committee statutes, which include the words "confidential and privileged," the Quality Management statute uses the word "confidential," only.

**B.**     **Mediation Privilege does not Apply to Documents Disclosed to UMIA**

The Trustee claims that documents disclosed by the Hospital to UMIA (including documents over which statutory privileges are now asserted) are immune from discovery by Homeland because those documents "were exchanged as part of the mediation of the case before Judge Carman and are protected from discovery." (Ex B, RRPD No. 35). The Trustee is wrong.

First, because the Hospital's prior production was in response to UMIA's discovery in this action, those documents were required to be served on Homeland. *See* F.R.C.P. Rule 5(a)(C) (identifying "a discovery paper required to be served on a party" as a paper that "must be served on every party"). Second, because the documents were voluntarily disclosed to UMIA, any claim of statuary privilege is deemed to have been waived. *See e.g., Ronald G. Connolly, M.D., P.A. v. Russell J. Labowitz, M.D., P.A.*, No. C.A. 83C-AU-1, 1984 WL 14132, at *1 (Del. Super. Ct. Dec. 17, 1984) (finding that peer review statute "extends the privilege only to actual committee members, and publication of the document to nonmembers waives the privilege"). Third, no mediation privilege applies. Wyoming's mediation privilege applies to "confidential communications" made during a mediation. W.S. § 1-43-103. A "confidential communication" is any communication "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the mediation process or those reasonably necessary for the transmission of the communication." W.S. § 1-43-102. The documents disclosed to UMIA were not "confidential communications" within the meaning of W.S. § 1-43-103. The documents disclosed to UMIA were independent evidence of facts relevant to the claims in this case.

The Trustee's belated claims of privilege over documents previously disclosed to UMIA is nothing more than an attempt to foreclose Homeland relying on additional facts (supporting the claims by Homeland in this case) evidenced by the documents disclosed to UMIA. These

documents are relevant to Homeland's claims and the Trustee cannot belatedly attempt to cloak them in a privilege not applicable to the documents at issue, nor otherwise previously asserted.

### C.    Homeland's Discovery Requests are not Overly Broad

In many instances, the Trustee objects that Homeland's requests are over broad as to time or scope. (*See* RRPD 8, 9, 11, 13, 14, 15, 16, 17, 18, 19, 21, 23, 25, 28, 30). Homeland has offered to limit the relevant time period for each of the foregoing Requests except No. 21. (*See* Ex. F). The Trustee has not responded.

Homeland disagrees, however, that scope of relevant information is limited to concerns expressed about the specific patients whose claims are the subject of this dispute. Rather, the scope of relevant information is the Hospital's pre-policy knowledge of any acts, errors, omissions or **Wrongful Acts** upon which the Underlying Claims are based, arise out of, result from, are consequence of, or in any way involve. The Underlying Claims all alleged that the Hospital was negligent in credentialing, hiring, supervision, monitoring, reviewing, and extending privileges to Dr. Hansen. (Complaint, ¶ ¶ 13-14). Accordingly, relevant information is not limited to the Hospital's knowledge of concerns about the specific patients whose claims are at issue in this case. To the extent the Trustee has limited its production to only those patients at issue (or with regard to Request No. 21 risk management files related to claims not related to the Homeland Policies), Homeland seeks to compel the Trustee to supplement its responses.

### D.    Sufficiency of the Trustee's Privilege Log

Should the Court uphold any of the Trustee's statutory objections, Homeland seeks a more detailed Privilege Log to include the information set forth in its motion. *See Wierdsma* 741 P.2d at 1089 ("The burden of establishing entitlement to nondisclosure rests with the party resisting disclosure and not the party seeking it").

V.      **CONCLUSION**

For these reasons, Homeland respectfully requests that this Court grant its motion and

order the Trustee to produce the compelled discovery within 30 days of this Court's order.


Dated: January 11, 2019                    s/Tiffany M. Brown
                                           Charles E. Spevacek (MN #126044)
                                           *Admitted Pro Hac Vice*
                                           cspevacek@meagher.com
                                           Tiffany M. Brown (MN #302272)
                                           *Admitted Pro Hac Vice*
                                           tbrown@meagher.com
                                           MEAGHER & GEER, PLLP
                                           33 South Sixth Street, #4400
                                           Minneapolis, MN 54502
                                           (612) 338-0661 (Office)
                                           (612) 338-8384 (Fax)

                                           Judith Studer (5-2174)
                                           jstuder@schwartzbon.com
                                           SCHWARTZ BON WALKER & STUDER, LLC
                                           141 South Center Street, Suite 500
                                           Casper, WY 82601
                                           (307) 235-6681 (Office)
                                           (307) 234-5099 (Fax)

                                           *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of January 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants.

s/Tiffany M. Brown