

# MEAGHER&GEER PLLP
ATTORNEYS AT LAW

33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
PHONE: 612/338-0661
FAX: 612/338-8384
MEAGHER.COM

December 14, 2018

*Via Electronic Mail*
Jon M. Moyers
Moyers Law P.C.
3936 Avenue B, Suite D
Billings, MT 59102

Re: *Homeland Insurance Company of New York v. PVHC et al.*
Case No: 15-CV-00031
Our File: 55753-218

Dear Jon:

We are writing with regard to the Trustee's answers and responses to Homeland's interrogatories and request for production of documents. Based upon what we have received to date, this letter will serve to address our questions and concerns regarding those answers and responses.

In addressing these concerns herein, Homeland does not intend to waive its right to raise additional concerns in the future with regard to the Trustee's answers and responses. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, this letter will further serve as Homeland's good faith effort to meet and confer regarding the sufficiency of the Trustee's answers and responses to Homeland's discovery requests without need for court action.

**Statutory Privileges as Basis for Withholding Documents Regarding Dr. Hansen**

First, according to the Trustee's privilege log, the Trustee appears to have withheld any documents regarding Powell Valley HealthCare, Inc.'s (the "Hospital") knowledge and/or investigation – prior to the August 1, 2013 inception of the Homeland Policies – of issues and/or concerns regarding Dr. Hansen's surgical competence. This information is relevant to Homeland's claim for declaratory relief that the Underlying Lawsuits involving Dr. Hansen are excluded from coverage under Policy Exclusion D(1). Based upon information available to Homeland, at least two "whistleblowers," Scott Wilson and Brad Mangum, provided detailed information to the Hospital prior to the August 1, 2013 inception of the Homeland Policy regarding the alleged deficiencies of Dr. Hansen as a surgeon and physician. Following what he described as a "horrifying conversation with Brad Mangum" on May 7, 2013, Tim Seeley, the

Hospital's Director of Risk Management, alerted the Hospital's then-CEO Bill Patten of the concerns expressed by Mr. Magnum, stating that "[i]f half of what [Brad Magnum] says is true, and I believe him, we have a SERIOUS ongoing liability issue with Dr. Hansen." (May 7, 2013 email from Tim Seeley to Bill Patten (emphasis in original)). Accordingly to local press, Mr. Patten is thereafter on record as having said that Dr. Hansen's November 2014 suspension by the Hospital was "because of patient safety concerns."

Homeland directed many of its document requests at the Hospital's prior knowledge and/or investigation of concerns regarding Dr. Hansen's surgical competence. UMIA served similar documents requests. In the summer of 2017, the Hospital responded to UMIA's document requests, but not to Homeland's document requests. The Hospital also failed to produce to Homeland those documents it produced to UMIA. More recently, the Trustee took the position that it would not produce those documents to Homeland absent specific request. Despite that later request for any documents previously provided to UMIA, the Trustee now asserts various privileges purportedly protecting the disclosure of responsive documents – many of which were already produced to UMIA – as the basis for denying them to Homeland. As discussed further herein, the Hospital has waived any applicable privilege by having voluntarily produced the requested documents to UMIA.

With little differentiation (and in most cases without a document description sufficient for Homeland to assess the asserted privilege), the Trustee now asserts anything evidencing the Hospital's pre-August 1,2013 knowledge and/or investigation of issues raised with regard to Dr. Hansen (including documents previously produced to UMIA) are protected from discovery by the following three privileges:

- Peer Review;

- Medical Committee or Medical Staff Committee; and

- Quality Management or Quality Assurance.

In many instances, the Trustee asserts more than one of these privileges as the basis for withholding a single document.

While Homeland recognizes the statutory basis for these privileges, their purpose is to encourage "free-flowing constructive criticism" and to prevent a staff committee's activities from providing proof in civil actions against hospitals and physicians. *Greenwood v. Wierdsma*, 741 P.2d 1079, 1089 (Wyo. 1987). But those concerns are not present in this insurance coverage action where: the underlying claims have been resolved, Dr. Hansen has not been employed by the Hospital since 2014, and the Hospital has otherwise put its supervision and credentialing of Dr. Hansen at issue having sought insurance coverage from Homeland for cases which specifically allege that the Hospital was negligent in failure to properly supervise and credential Dr. Hansen. That is, while confidentiality may be important to the functioning of these committees insofar as they

Jon Moyers
December 14, 2018
Page 3

seek candid and conscientious evaluation of clinical practices as a condition of adequate hospital care, the privilege is less critical where the Hospital at issue has sought insurance coverage for several claims against it for negligence in the supervision, continued credentialing and extension of privileges to a single physician. For these reasons, it is Homeland's position that the various statutory privileges asserted by the Trustee do not apply to prevent disclosure to Homeland in this case. Accordingly, Homeland asks that any documents asserting such privileges be promptly produced. To the extent appropriate, any of these documents may be otherwise be appropriately protected as "confidential" under the Protective Order (ECF #64) already in place in this action.

Moreover, even when otherwise applicable, the statutory privileges asserted by the Trustee are not absolute. *See Harston v. Campbell Cty. Mem'l Hosp.*, 913 P.2d 870, 876 (Wyo. 1996) ("the statutes relating to the professional standard review organizations and those relating to hospital records and information do not afford the absolute protection from discovery"). The privileges are to be strictly construed and any documents that do not fall within their intended scope should be produced for review.

As for the "Peer Review" privilege, Homeland understands the Trustee relies upon W.S. § 35-17-105. The statute provides:

> All reports, findings, proceedings and data of the professional standard review organizations is confidential and privileged, and is not subject to discovery or introduction into evidence in any civil action, and no person who is in attendance at a meeting of the organization shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the organization or as to any findings, recommendations, evaluations, opinions or other actions of the organization or any members thereof. <u>However, information, documents or other records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of the organization, nor should any person who testifies before the organization or who is a member of the organization be prevented from testifying as to matters within his knowledge, but that witness cannot be asked about his testimony before the organization or opinions formed by him as a result of proceedings of the organization.</u>

W.S. § 35-17-105 (emphasis added). The statue protects "information of review organizations." *Wierdsma*, 741 P.2d at 1089. Pursuant to W.S. § 35-17-101(B) and (C), "professional standard review organization" includes both "[a] committee of a medical staff in a hospital having the responsibility of evaluation and improvement of the quality of care rendered in the hospital" and "[a] committee functioning to review, pursuant to federal or state laws, the operation of hospital or extensive care facilities." As worded, the privilege applies only to documents of the

committee, itself, and does not protect communications of committee members outside the function of the committee. Nor would the privilege protect communications with anyone outside of the committee. As stated by the Tenth Circuit, the statute applies:

> To any committee of a medical staff in a hospital having the responsibility or evaluation and improvement of the quality of care rendered in the hospital, and <u>covers those documents produced by the committee as notes, reports and findings in the review process</u>.

*Nalder v. West Park Hospital*, 254 F.3d 1168, 1180 (10th Cir. 2001) (internal quotations and citations omitted) (emphasis added). While "there is no 'formality' requirement in the statute[,]" the privileges is limited to "peer review committees[.]" *Id.*

Accordingly, the privilege does not apply to administrative arms of hospitals, nor to correspondence or communication to/from Hospital administrators (such as the Chief of Staff and the Risk Manager) that are not actual committee actions or opinions. In this case, it appears that the Trustee has withheld on the basis of "Peer Review" privilege a significant volume of correspondence and documents authored by and/or exchanged between individual hospital staff which was not actually a <u>product</u> of the committee. The privilege does not apply to such correspondence. Moreover, the statute makes clear that "information, documents or other records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of the organization[.]" W.S. § 35-17-105. That is, "the privilege at issue is not so broad as to encompass any document reviewed by professional standard review organizations . . . [and does not extend to] where documents are claimed to be privileged merely because they passed before the eyes of a professional standard review organization." *Nalder* at 1180. Any such documents are not within the scope of the privilege and Homeland is entitled to them.

In many instances, the Trustee pairs the "Peer Review" privilege with a claimed "Medical Staff Committee" privilege, for which Homeland understands the Trustee to rely upon W.S. § 35-2-605(x) and W.S. § 35-2-609(d). This statute defines "medical staff committees" as "any committee within a hospital, consisting of medical staff members or hospital personnel, which is engaged in supervision, discipline, admission, privileges or control of members of the hospital's medical staff, evaluation and review of medical care, utilization of the hospital facilities or professional training[.]" W.S. § 35-2-605 (x). W.S. § 35-2-609(d) provides:

> All reports, findings, proceedings and data of medical staff committees shall be confidential and privileged. No claim or action shall accrue against any hospital, medical staff member or any employee of either arising out of the denial of staff privileges to any applicant or out of the suspension of, expulsion of or any other

Jon Moyers
December 14, 2018
Page 5

> restrictive or disciplinary action against any medical staff member or hospital employee unless the action is arbitrary, capricious and without foundation in fact.

*Id.* As with the Peer Review privilege, this privilege applies only to the "reports, findings, proceedings and data" of the committee.

Addressing the scope of the Medical Staff Committee privilege, the Wyoming Supreme Court in *Wierdsma* held that the statute was not to be so broadly construed as to prohibit a plaintiff from obtaining information necessary to pursue a claim for negligent credentialing, which information the court observed would overlap with that information considered to the committee in the performance of its tasks. The court said:

> A careful reading of those statutes indicates that documents which detail the committee's decision-making process, opinion, perspective, or final decisional results are not discoverable. The privilege protects from discovery the records concerning the internal proceedings of the hospital committee but does not exempt from discovery materials which the committee reviews in the course of carrying out its function, nor action which may be taken thereafter by the hospital as may be influenced by the committee decision. <u>In short, privileged data does not include the materials reviewed by the committee, only those documents produced by the committee as notes, reports and findings in the review process.</u>

*Id.* at 1089(emphasis added). The *Wierdsma* court went further to make clear that "the statute was not intended to exempt from discovery all relevant information and thereby preclude the possibility of proving negligence." *Id.*

Thereafter in *Harston* (construing both W.S. § 35-17-105 and W.S. § 35-2-609(d)), the Wyoming Supreme Court reaffirmed its previous rulings in *Wierdsma*, holding that "the statutes relating to the professional standard review organizations and those relating to hospital records and information do not afford the absolute protection from discovery[.]" 913 P.2d. at 876.

The language of *Wierdsma* and *Harston* is clear: these privilege statutes protect peer review and medical staff committee opinions and/or final decisional results, only. The statutes do not "protect" information made available to the committee for its consideration, including information about complaints made or concerns expressed by other staff, or communications between committee members discussing the same. In many cases, it is clear that the Trustee has overstated the scope of these privileges, having claimed more than one privilege (and in many cases all three privileges) for a document that is assumed, if a product of a committee, is the product of only one committee. With regard to e-mails and other correspondence, the assertion of these privileges does not appear to have been asserted over events that transpired during peer review or hospital committee meetings, nor opinions formed as a result of those meetings.

Rather, the communications seem to concern facts known to the Hospital that otherwise qualify as "original source" documents that must be produced.

The Trustee also asserts "Quality Management" or "Quality Assurance" privilege, for which Homeland understands the Trustee to rely upon W.S. 35-2-910. The statute provides in part:

> (a) Each licensee shall implement a quality management function to evaluate and improve patient and resident care and services in accordance with rules and regulations promulgated by the division. <u>Quality management information relating to the evaluation or improvement of the quality of health care services is confidential.</u> Any person who in good faith and within the scope of the functions of a quality management program participates in the reporting, collection, evaluation, or use of quality management information or performs other functions as part of a quality management program with regard to a specific circumstance shall be immune from suit in any civil action based on such functions brought by a health care provider or person to whom the quality information pertains. In no event shall this immunity apply to any negligent or intentional act or omission in the provision of care.

W.S. § 35-2-910(a). Unlike the statutes providing for Peer Review and Medical Committee privileges, W.S. § 35-2-910 does not extend "privilege" or otherwise make "quality management information" immune from discovery. Rather, that information is merely deemed "confidential" pursuant to the statute. Any confidentiality attached to any documents the Trustee claims to be "quality management information" can be designated "confidential" and that confidentiality is appropriately protected by the Protective Order already in place. In any event, as with the other privileges, this statute applies to only those the internal proceedings related to quality management information, such as documents that detail the decision-making process, opinion, perspective, or final decisional results related to quality management. W.S. § 35-2-910(a) does not, however, privilege documents reviewed for quality management purposes in the information-gathering phase.

Additionally, many documents are withheld based upon claims of "Board of Medicine" privilege, for which Homeland understand the Hospital to rely upon W.S. 33-26-408. The statute protects "[i]nvestigative notes, attorney's notes and work product and reports, pleadings, correspondence, witness statements and deposition transcripts and copies of original medical and prescription records <u>in the possession of the board</u>" and other "records of the board[.]" W.S. 33-26-408(f)(i)-(ii) (emphasis added). That is, the privilege extends to the Wyoming Board of Medicine; the statute does not make privileged those documents in the possession of the Hospital merely because they involve communications with or other matters before the Board of Medicine.

EXHIBIT F.6

Jon Moyers
December 14, 2018
Page 7

Accordingly, Homeland asks that the Trustee produce those documents on the Trustee's privilege log that assert any of the foregoing privileges. To the extent the Trustee maintains any of the asserted privileges, the Trustee has not provided a sufficient factual basis for the assertion of these privileges. The party seeking to assert the privilege has the burden of establishing its applicability. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995); *see also Wierdsma*, 741 P.2d at 1089 ("The burden of establishing entitle to nondisclosure rests with the party resisting disclosure and not the party seeking it"). Accordingly, Homeland asks that the Trustee's privilege log be amended to provide the following information so that Homeland may further assess the claimed privilege:

1. the author of every document claimed to be privileged;

2. for any document described as "Wyoming Board of Medicine documents" a better description of the document and the matter to which it refers;

3. the sender and all recipients (including all carbon copied recipients) on any e-mail or other written communication; and

4. the identity of all members on the committee for which a privilege is claimed (if other than those identified in the Hospital's Answer to Interrogatory No. 6).

**Specific Discovery Requests**

As to the Trustee's responses to specific discovery requests, Homeland further raises the following concerns:

**Requests Nos. 8, 9, 11, and 13**

Request No. 8 seeks documents related to communication between the Hospital's Director of Risk Management and others regarding Dr. Hansen, and Requests Nos. 9, 11, and 13 seek documents regarding complaints or concerns regarding Dr. Hansen's abilities and/or competence as a surgeon and/or physician that were expressed to PVHC by Brad Magnum (Request No. 9), Scott Wilson (Request No. 11) or others (Request No. 13).

The Trustee has objected to these requests as overbroad, including that they are not limited in time and/or to concerns expressed about the specific patients whose claims are the subject of this dispute.

With regard to Request No. 8, Homeland agrees to limit this request to communications regarding Dr. Hansen's abilities and/or competence as a surgeon and/or physician, including concerns expressed about the same.

Homeland disagrees, however, that the scope of relevant documents should be limited to concerns expressed about the specific patients whose claims are the subject of this dispute. Rather, as Homeland has articulated its claims in this mater, the relevant scope of the Hospital's knowledge and/or investigation of concerns related to Dr. Hansen is not limited to the those patients whose claims are at issue in this case. Rather, former Hospital employees (including Scott Wilson and Brad Mangum) alerted the Hospital to concerns about procedures performed on other patients, as well as more general concerns about Dr. Hansen, including his competence to engage in the surgeries he undertook to perform and their belief that there was a then-ongoing risk to the Hospital's patients so long as Dr. Hansen remained in the Hospital's employ. Accordingly, relevant documents are not limited to those concerning the patients whose claims are the subject of this dispute.

While Homeland disagrees with the Trustee's position that the period of time for relevant communications needs to be limited at this stage of discovery, Homeland is willing to limit the scope of communications requested in Request No. 8 to the period January 2006 to August 1, 2013. With regard to Requests No. 9, 11 and 13, Homeland will limit these requests to documents concerning complaints or concerns made known to the Hospital before the August 1, 2013 inception date of the Homeland Policies.

The Trustee further objected to these requests "to the extent this request seeks ... privileged documents" including quality assurance or peer review privileges. To the extent, those privileges include the "Peer Review," "Quality Management," or "Medical Committee," privileges previously addressed herein, Homeland disagrees with the assertion of those privileges in this case and respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

Finally, with regard to claims that communications within the Hospital's possession are protected as Wyoming Board of Medicine investigation materials, Homeland disagrees with the assertion of this privilege and asks that responsive documents be produced.

**Request No. 14**

Request No. 14 seek documents regarding complaints or concerns regarding Dr. Hansen's abilities and/or competence as a surgeon and/or physician that were expressed specifically to Dr. Rieb.

The Trustee has objected to this request as overbroad, including that it is not limited in time and/or to concerns expressed about the specific patients whose claims are the subject of this dispute.

Regarding the breadth of the request, Homeland will limit this request to documents related to complaints or concerns made known to the Hospital before the August 1, 2013 inception date of the Homeland Policies.

Homeland disagrees, however, that the scope of relevant documents should be limited to concerns expressed about the specific patients whose claims are the subject of this dispute. Rather, as Homeland has articulated its claims in this mater, the relevant scope of the Hospital's knowledge and/or investigation of concerns related to Dr. Hansen is not limited to the those patients whose claims are at issue in this case. Rather, former Hospital employees (including Scott Wilson and Brad Mangum) alerted the Hospital to concerns about procedures performed on other patients, as well as more general concerns about Dr. Hansen, including his competence to engage in the surgeries he undertook to perform and their belief that there was a then-ongoing risk to the Hospital's patients so long as Dr. Hansen remained in the Hospital's employ. Accordingly, relevant documents are not limited to those concerning the patients whose claims are the subject of this dispute.

The Trustee further objected to these requests "to the extent this request seeks ... privileged documents" including quality assurance or peer review privileges. To the extent, those privileges include the "Peer Review," "Quality Management," or "Medical Committee," privileges previously addressed herein, Homeland disagrees with the assertion of those privileges in this case and respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

Finally, with regard to claims that communications within the Hospital's possession are protected as Wyoming Board of Medicine investigation materials, Homeland disagrees with the assertion of this privilege and asks that responsive documents be produced.

### Request Nos. 15 and 16

These requests seek documents related to communication between anyone and PVHC's Board of Directors or Board of Trustees (Request No. 15) or any current or former CEO of PVHC (Request No. 16) regarding Dr. Hansen's abilities and/or competence as a surgeon and/or physician.

The Trustee has objected to these requests on the basis that they are overbroad, including that they are not limited in time and/or to concerns expressed about the specific patients whose claims are the subject of this dispute.

Regarding the breadth of the requests, Homeland disagrees that theses request seek "an unlimited body of information, much of which has nothing to do with the claims at issue." The requests are

narrowly tailored to communications regarding "Dr. Hansen's abilities and/or competence as a surgeon and/or physician." As with other requests, however, Homeland will at this time limit this request to documents related to communications between January 1, 2006 and the August 1, 2013 inception date of the Homeland Policies.

Homeland disagrees, however, that the scope of relevant documents should be limited to concerns expressed about the specific patients whose claims are the subject of this dispute. Rather, as Homeland has articulated its claims in this mater, the relevant scope of the Hospital's knowledge and/or investigation of concerns related to Dr. Hansen is not limited to the those patients whose claims are at issue in this case. Rather, former Hospital employees (including Scott Wilson and Brad Mangum) alerted the Hospital to concerns about procedures performed on other patients, as well as more general concerns about Dr. Hansen, including his competence to engage in the surgeries he undertook to perform and their belief that there was a then-ongoing risk to the Hospital's patients so long as Dr. Hansen remained in the Hospital's employ. Accordingly, relevant documents are not limited to those concerning the patients whose claims are the subject of this dispute.

The Trustee further objected to these requests "to the extent this request seeks ... privileged documents" including quality assurance or peer review privileges. To the extent, those privileges include the "Peer Review," "Quality Management," or "Medical Committee," privileges previously addressed herein, Homeland disagrees with the assertion of those privileges in this case and respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

Finally, with regard to claims that communications within the Hospital's possession are protected as Wyoming Board of Medicine investigation materials, Homeland disagrees with the assertion of this privilege and asks that responsive documents be produced.

**Request Nos. 17, 18 and 19**

These requests seek documents in any files maintained by any current or former PVHC Chief of Surgery (Request No. 17), CEO (Request No. 18) or Director of Risk Management (Request No.) regarding Dr. Hansen.

The Trustee has objected to these requests on the basis that they are overbroad, including that they are not limited in time and/or to any specific patients.

At this time, Homeland agrees to limit these requests to documents regarding Dr. Hansen's abilities and/or competence as a surgeon and/or physician, including concerns expressed about the same.

Homeland disagrees, however, that the scope of relevant documents should be limited to concerns expressed about any specific patients or the specific patients whose claims are the subject of this dispute. Rather, as Homeland has articulated its claims in this mater, the relevant scope of the Hospital's knowledge and/or investigation of concerns related to Dr. Hansen is not limited to the those patients whose claims are at issue in this case. Rather, former Hospital employees (including Scott Wilson and Brad Mangum) alerted the Hospital to concerns about procedures performed on other patients, as well as more general concerns about Dr. Hansen, including his competence to engage in the surgeries he undertook to perform and their belief that there was a then-ongoing risk to the Hospital's patients so long as Dr. Hansen remained in the Hospital's employ. Accordingly, relevant documents are not limited to those concerning any specific patients.

The Trustee further objected to these requests "to the extent this request seeks ... privileged documents" including quality assurance or peer review privileges. To the extent, those privileges include the "Peer Review," "Quality Management," or "Medical Committee," privileges previously addressed herein, Homeland disagrees with the assertion of those privileges in this case and respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

Finally, with regard to claims that communications within the Hospital's possession are protected as Wyoming Board of Medicine investigation materials, Homeland disagrees with the assertion of this privilege and asks that responsive documents be produced.

**Request No. 21**

This request seeks risk management files that mention or discuss the care or treatment of the patients whose claims are the subject of this dispute (including possible and/or threatened claims/suits by them), other care and treatment provided by Dr. Hansen, or Brad Mangum's claims regarding Dr. Hansen.

The trustee objected to this request as duplicative of Request No. 19 and "to the extent it is not limited to the Homeland Policies." As to the Trustee's claim that the request is duplicative of No. 19, Homeland incorporates its foregoing response to the same.

It is unclear what is intended by the Trustee's objection to the request "to the extent it is not limited to the Homeland Policies." As set forth herein, Homeland's claims concern the Hospital's knowledge of issues and/or concerns raised by Hospital employees or others about alleged deficiencies of Dr. Hansen and/or his competence to engage in the surgeries he undertook to perform. Accordingly, relevant documents are not limited to those concerning "the Homeland Policies."

**Request No. 22**

This request seeks minutes from Executive Committee meetings that mention or discuss the care or treatment of the patients whose claims are at the subject of this dispute (including possible and/or threatened claims/suits by them), other care and treatment provided by Dr. Hansen, or Brad Mangum's claims regarding Dr. Hansen.

The Trustee has not asserted any claim that the requested information is not relevant, objecting only to the extent responsive documents are subject to the "Peer Review," "Quality Management," "Quality Assurance," "Medical Committee," and/or "Medical Staff Committee" privileges. As previously addressed herein, Homeland disagrees with the assertion of those privileges in this case and respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

Finally, with regard to claims that communications within the Hospital's possession are protected as Wyoming Board of Medicine investigation materials, Homeland disagrees with the assertion of this privilege and asks that responsive documents be produced.

**Request Nos. 23 and 25**

These requests seeks Board of Director (Request No. 23) and Board of Trustee (Request No. 25) meeting minutes that mention or discuss the care or treatment of the plaintiffs' whose claims are at the subject of this dispute (including possible and/or threatened claims/suits by them), other care and treatment provided by Dr. Hansen, or Brad Mangum's claims regarding Dr. Hansen.

The Trustee has objected to these requests for the same reasons as set forth in response to Request No. 15. Homeland similarly incorporates its foregoing response to the same.

Given the detail in these requests, Homeland does not believe that requests need to limited to a specific time frame or specific patient; nor that responsive documents are immune from discovery by the "Peer Review," "Quality Management," or "Medical Staff Committee" privileges asserted. Homeland respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

Finally, with regard to claims that communications within the Hospital's possession are protected as Wyoming Board of Medicine investigation materials, Homeland disagrees with the assertion of this privilege and asks that responsive documents be produced.

**Request No. 24**

This request seeks Peer Review Committee meeting minutes that mention or discuss the care or treatment of the plaintiffs' whose claims are at the subject of this dispute (including possible and/or threatened claims/suits by them), other care and treatment provided by Dr. Hansen, or Brad Mangum's claims regarding Dr. Hansen.

The Trustee has not asserted any claim that the requested information is not relevant, objecting only to the extent responsive documents are subject to the "Peer Review," "Quality Management," and/or "Medical Staff Committee" privileges. As previously addressed herein, Homeland disagrees with the assertion of those privileges in this case and respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

Finally, with regard to claims that communications within the Hospital's possession are protected as Wyoming Board of Medicine investigation materials, Homeland disagrees with the assertion of this privilege and asks that responsive documents be produced.

**Request No. 28**

This request seeks documents concerning any claim or potential claim by Brad Mangum, including any whistleblower claim or potential whistleblower claim.

The Trustee's response incorporates its response to Requests No. 9 and 10, which, along with other objections asserted in response to this request is not actually responsive to the specific category of documents at issue therein.

For avoidance of doubt, Homeland disagrees that the scope of relevant documents in this case is limited to concerns expressed about the specific plaintiffs whose claims are the subject of this dispute. This request seeks documents related to claims by Brad Mangum against PVHC, which according to Mr. Mangum's testimony in other matters is undoubtedly relevant to establishing the Hospital's knowledge and/or investigation of (and in advance of the inception of the Homeland Policies) issues and/or concerns raised about Dr. Hansen. Moreover, to the extent those documents were created after the August 1, 2013 inception date of the Homeland Policies but otherwise reflects events that occurred prior to August 1, 2013, said documents would otherwise be relevant to the issues in this case.

Moreover, as set forth herein, responsive documents are not immune from discovery by the "Peer Review," "Quality Management," or "Medical Staff Committee" privileges asserted. Homeland respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

**Request No. 30**

This request seeks communications between Bill Patten and Stim Seeley concerning the plaintiffs whose claims are the subject of this dispute and/or related to Dr. Hansen or Brad Mangum.

The Trustee's response incorporates its response to Requests No. 8 and 16. Homeland similarly incorporates its foregoing response to the same. For avoidance of doubt, Homeland disagrees that the scope of relevant documents needs to be limited in time and to concerns expressed about the specific plaintiffs whose claims are the subject of this dispute.

Given the detail in these requests, Homeland does not believe that requests need to be limited to a specific time frame (the request seeks only communications related to Dr. Hansen and/or Brad Magnum) or specific patient; nor that responsive documents are immune from discovery by the "Peer Review," "Quality Management," or "Medical Staff Committee" privileges asserted. Homeland respectfully requests that those documents be produced.

Homeland agrees however to limit the request to those communications regarding Dr. Hansen's abilities and/or competence as a surgeon and/or physician, including concerns expressed about the same. Homeland disagrees, however, that communications after the August 1, 2013 inception date of the Homeland Policies would not be relevant to this matter. To the extent communications that occurred after August 1, 2013 discuss or reflect events that occurred prior to August 1, 2013, said documents would otherwise be relevant to the issues in this case and should be produced.

With regard to the claim that any responsive documents are subject to peer review or other similar statutory privileges, Homeland disagrees with the assertion of those privileges in this case and respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

**Request No. 35**

This request seeks all documents provided to UMIA Insurance. This includes documents produced in response to the discovery requests UMIA served in this action. Because PVHC's prior production was made in response to UMIA's discovery in this action, those documents should have also been provided to Homeland and Lexington. *See* F.R.C.P. Rule 5(a)(C)

(identifying "a discovery paper required to be served on a party" as a paper that "must be served on every party").

The Trustee has not asserted any claim that the requested information is not relevant the claims or defenses in this matter, objecting only on the basis of "mediation privilege" or that the documents are otherwise subject to the "Peer Review," "Quality Management," and/or "Medical Staff Committee" privileges and further claiming "mediation privilege."

As previously addressed herein, Homeland disagrees with the assertion of the statutory privileges in this case and respectfully requests that those documents be produced. Importantly, because the documents were voluntarily produced to UMIA, any claim of privilege is deemed to have been waived. The Trustee has no legitimate basis to withhold from Homeland documents already produced to UMIA.

Moreover, these documents are not protected from discovery by the "mediation privilege." Wyoming's mediation privilege applies to "confidential communications" made during a mediation. W.S. § 1-43-103. A "confidential communication" is any communication "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the mediation process or those reasonably necessary for the transmission of the communication." W.S. § 1-43-102. The documents produced to UMIA were evidence of underlying facts relevant to the claims asserted by Homeland in this case. The documents were not "confidential communications" within Wyoming's mediation privilege.

The Trustee's belated claims of privilege over documents previously given to UMIA is nothing more than an attempt to foreclose Homeland from making the arguments it advanced at the mediation after learning of the facts (further supporting the claims made by Homeland in this case) evidenced by the documents given to UMIA. These documents directly support Homeland's claims in this case and the Trustee cannot belatedly attempt to cloak them in a privilege not applicable to or otherwise previously asserted. The Trustee has no good faith basis from withholding documents previously produced to UMIA from Homeland. Please promptly forward these documents.

Finally, to the extent patient privacy is a concern, documents may be appropriately redacted on marked confidential pursuant to the Protective Order (ECF #64) already in place.

**Interrogatory No. 8**

This interrogatory seeks the date on which the Hospital first had knowledge of, or became aware of, any event arising out of the rendering, or failure to render, medical professional services which may give rise to a Claim by each of the patients whose claims are at issue.

The Trustee has objected to the request to the "extent PVHC learned about an 'event' through the quality assurance or peer review process" and has otherwise withheld responsive information from its answer. As set forth above, this information is not protected by the Peer Review or Quality Assurance privileges. This is a fact relevant to Homeland's claims in this matter. Please supplement this Answer to the extent information was withheld based upon the Peer Review or Quality Assurance privileges.

**Interrogatory No. 12**

This interrogatory seeks the names of the individuals that Brad Mangum referred to by their initials in the journal kept by him which was marked as Exhibit 4 to the deposition he gave on June 5, 2014 in the suit filed on behalf of Austin W. Durose.

The Trustee has objected to the request on the basis that it seeks protected health information of patients whose claims are not at issue in this case and on the basis of the statutory privileges previously discussed herein. It is Homeland's position that the statutory privileges do not apply to the information requested. However, in an effort to compromise, Homeland is willing to accept an answer that provides the names corresponding to the initials of any patients whose claims are at issue in this case.

**Interrogatory No. 14**

This interrogatory asked for information about conversations with those whom Brad Magnum spoke about his concerns related to Dr. Hansen.

The Trustee has objected on the basis it mistakenly incorporated Interrogatory No. 6, when it should have incorporate the people identified in response to Interrogatory No. 13. With that clarification, Homeland asks that the Trustee's answer be supplemented.

To the extent the Trustee maintains that its answer should be limited to concerns expressed about the specific plaintiffs whose claims are the subject of this dispute, Homeland disagrees. Homeland's claims concern the scope of the Hospital's knowledge and/or investigation of concerns made known to it about Dr. Hansen's competence as a surgeon. Relevant information is not limited to the Hospital's knowledge of concerns regarding the specific patients whose claims are at issue in this case.

The Trustee further objected to these requests "to the extent this request seeks privileged information" including peer review information and other purported privileged information. Homeland disagrees with the assertion of those privileges in this case and respectfully requests that those documents be produced.

To the extent patient privacy is a concern, documents may be appropriately redacted and marked confidential pursuant to the Protective Order (ECF #64) already in place.

Finally, with regard to claims that communications within the Hospital's possession are protected as Wyoming Board of Medicine investigation materials, Homeland disagrees with the assertion of this privilege and asks that responsive documents be produced.

**Interrogatory No. 15**

This interrogatory seeks the specific surgical procedures for which Brad Mangum advised the Hospital that Dr. Hansen was not competent to perform and/or that he had concerns about Dr. Hansen performing. The Trustee has again objected based upon various statutory privileges. As set forth above, these privileges do not apply to factual information supplied to any committee or its individual members. Please supplement this answer.

**Interrogatory No. 15 (sic)**

This interrogatory seeks the names of each individual who had any discussions with Dr. Hansen relating to Brad Mangum's concerns. The Trustee has again objected based upon various statutory privileges. As set forth above, these privileges do not apply to factual information supplied to any committee or its individual members. Please supplement this answer.

**Interrogatory No. 17**

This interrogatory seeks the date of the conversations related to people identified in Answer to Interrogatory No. 9 (and identification of any documents related to those conversations). The Trustee has again objected based upon various statutory privileges. As set forth above, these privileges do not apply to factual information supplied to any committee or its individual members. Please supplement this answer.

We look forward to receiving the Trustee's supplemental responses. We are available to further meet and confer regarding the Trustee's discovery responses in hopes of avoiding the need for court action.

Very truly yours,

Charles E. Spevacek
Tiffany M. Brown

TMB:dm:enc:12530888.2

cc: Judy Studer
    Kathryn Kohn Troldahl