Jon M. Moyers WSB # 6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900
jon@jmoyerslaw.com

Robert A. Krause, WSB # 5-2824
Mel C. Orchard, III, WSB # 5-2894
Elizabeth A. Richards, WSB # 6-4249
Sarah A. Kellogg, WSB # 7-5355
THE SPENCE LAW FIRM, LLC
15 S Jackson Street, P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (fax)
krause@spencelawyers.com
orchard@spencelawyers.com
richards@spencelaywers.com
kellogg@spencelaywers.com

Kathryn Kohn Troldahl, *pro hac vice*
KOHN LAW, P.A.
P.O. Box 390074
Minneapolis, MN 55439
(612) 597-3899; (888) 519-3472 (fax)
kohnkathryn1@gmail.com

*Attorneys for Scott J. Goldstein, Trustee for the Personal Injury Trust of Powell Valley Health Care, Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, et. al., ) ) ) Plaintiff, ) ) vs. ) SCOTT GOLDSTEIN, TRUSTEE, ) ) Defendant, ) | Case No. 15-CV-31-J |

**MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION TO COMPEL**

1

COMES NOW Scott Goldstein, Trustee for the Personal Injury Trust for Powell Valley Health Care, Inc. ("Trustee"), and files his Motion to Compel, pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rules 26.1 and 37.1:

## I. BACKGROUND

This litigation arises from Homeland's denial of insurance coverage under a "claims made" insurance policy for injuries sustained by patients, the underlying claimants herein, of Powell Valley Health Care, Inc. ("PVHC") in the course of their treatment with Dr. Jeffrey Hansen while he was an employee of PVHC. After PVHC's discharge from bankruptcy, the Trustee was substituted for PVHC to seek coverage for the underlying claimants in this declaratory judgment action. The underlying claims have been evaluated and approved by the Bankruptcy Court after an independent binding mediation process conducted by retired United States District Court Judge William Downes. *See* Affidavit of Jon Moyers ("Moyers Aff." ¶ 2, Exhibit ("Ex.") A). The claims were valued at $36,978,982.[1] Whether the Homeland or Lexington insurance policies provide coverage for the underlying claims, which values far exceed the limits of both policies, will be determined in this litigation.

## II. DISCOVERY TIMELINE

In Phase I discovery, PVHC and now the Trustee have sought discovery from Homeland of matters specifically directed towards the insurance policy provisions in dispute, the inception of the policy, interpretation of the policy provisions, and the underwriting of the policy. That discovery is necessary to defend against Homeland's denial of coverage and to support coverage.

---

[1] The case management plan identifies the following as the Underlying Claims at issue: Susan Stambaugh et al., Michelle Oliver, Lynn Snell et al., Veronica Sommerville et al., Shane Wilson et al., Joetta Johnston et al., Jan Brinkerhoff et al., Anthony DiPilla et al., Martha McMillen et al., Shannon Eller, Keela Meier et al., Jody Sessions et al., Nathanial Bates et al., Darcy Ronne, Kalan Nicholson, Nancy Crawford et al., Nancy Heiser et al., Werbelow, Sheryl Henderson et al, and Mark Bonamarte. The total for all the bankruptcy claims was valued at $42,814,482.

On March 1, 2016, PVHC served its first set of discovery requests on Homeland. On April 29, 2016, Homeland answered with objections; failed to produce a privilege log identifying withheld documents; and refused to produce anything more than what was identified in its Rule 26 Disclosures. The case was then stayed pending PVHC's bankruptcy. After the stay was lifted, the Trustee was substituted for PVHC.

On October 10, 2018, Homeland supplemented its discovery responses, but continued to assert global and specific objections. *Id.,* ¶ 3, Ex. B. <u>For the first time</u>, it produced a "Privilege and Redaction Log." *Id.* That log does not identify any documents ostensibly related to the discovery at issue, such as withheld documents from its underwriting files; or pre-policy inception communications or discussions with anyone, such as communications between its employees, PVHC, brokers or others regarding pre-policy considerations, policy provisions, or underwriting.

On October 22, 2018, the Trustee served Homeland with its second set of discovery. On December 5, 2018, Homeland answered that discovery, again riddled with objections. *Id.,* ¶ 4, Ex. C. Homeland did not identify withheld documents, and no privilege log was produced.

### III. COMPLIANCE WITH LOCAL RULE 37.1(b)

On July 20, 2018, the Trustee sent Homeland a "meet and confer" letter identifying the deficiencies in Homeland's first set of discovery responses, including its improper global and specific objections, failure to identify withheld documents, and failure to produce relevant and discoverable materials including the underwriting files. *Id.,* ¶ 5, Ex. D. On October 10, 2018, Homeland responded. *Id.,* ¶ 6, Ex. E. On December 11, 2018, the parties orally conferred regarding Homeland's responses to the Trustee's first and second set of discovery. *Id.,* ¶ 7. Thereafter, the Court approved the parties' request to submit the discovery issues by motion for

resolution.

### IV. DISCOVERY DEFICIENCIES

Homeland has refused to produce the following information and documents:

**Request for Production No. 3.** This request seeks all documents between Homeland's employees/officers concerning the "Underlying Claims" and the underwriting or coverage issues in this case. Homeland has refused to produce any correspondence regarding the "Underlying Claims" related to underwriting or coverage issues between its employees, claiming the documents are not relevant to Phase I, are only potentially relevant to Phase II and if they are deemed relevant, then Homeland states they are privileged and only once relevancy is determined will it produce a privilege log identifying the withheld documents. *Id.,* Ex. B.

**Interrogatory Nos. 4 and 11 and Request for Production No. 9:** These requests seek the identification of persons involved in underwriting and documents reviewed for underwriting and issuance of the subject policies, as well as the persons responsible for pricing and accepting the risks of the subject policies. In response, Homeland refused to identify the persons involved with underwriting, and refused to produce any documents claiming the requests were not relevant to the litigation, not relevant to Phase I, or were proprietary. Further, Homeland has not identified what specific documents it has withheld, stating only that "[t]o the extent responsive materials exist, they are being withheld on the basis of the stated objections." *Id.*

**Request for Production No. 14:** This request seeks documents explaining the positions that Homeland has taken regarding the Disputed Policy Provisions, including any judicial rulings on those positions, in the context of claims submitted by other policyholders. This information is relevant to the interpretation and construction of the policy provisions, questions of ambiguity, and estoppel arguments, especially if Homeland's construction is inconsistent with other judicial rulings or its position in other cases. *Id.,* Ex. C.

**Request for Production No. 16:** This request seeks all documents related to any phone calls between Homeland and representatives of PVHC, HealthTech, Wyoming Financial Insurance, Risk Placement Services, Inc. ("RPS") or any other person regarding the procurement, pricing, or sale of the Subject Policies, including all documents relating to the July 24, 2013 "pre quote risk management" call that occurred between Homeland's underwriter and PVHC. This is the only known direct communication between Homeland and PVHC before coverage was quoted and bound. What was being offered or communicated between these entities may be relevant to the coverage analysis and interpretation of the policy provision. It is critical to the coverage questions whether PVHC obtained what it bargained for, whether there was a mutual

mistake, whether the contract should be reformed to reflect the parties' intent, or whether equitable relief is appropriate. *Id.*

**Request for Production No. 22:** This request seeks the underwriting guidelines, policies, and procedures in effect when Homeland was drafting and underwriting the Subject Policies and Disputed Policy Provisions. Homeland's underwriting policies and guidelines, etc. are relevant to assist in interpreting the contract, and may support equitable relief Homeland. *Id.*

## V. LEGAL ARGUMENT

Federal Rules of Civil Procedure 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In applying the scope of discovery, the court considers three steps:

(1)  Is the information privileged;
(2)  Is it relevant to a claim or defense; and
(3)  Is it proportional to the needs of the case.

*See Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 402, 97 Fed.R.Serv.3d 1056 (D. Wyo. 2017).

> The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.

*Id.* (*citing Advisory Committee Notes 1983 Amendment to F.R.C.P. 26*; *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

## A. Homeland Should Identify All Withheld Documents and Persons

Homeland has only identified a limited number of withheld documents on its privilege and redaction log related to the first set of discovery; has not produced a privilege log to support its objections to the second discovery requests; has refused to identify specifically what documents have been withheld in response to Requests for Production Nos. 3, 9, 14, 16, and 22; and has failed to identify the persons responsible for drafting and underwriting the policy.

Federal Rule of Civil Procedure 34(b)(2)(C) requires that when a party objects to a discovery request, the party "must state whether any responsive materials are being withheld on the basis of that objection."

Where a party claims the requested information is privileged, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5)(A)(ii). The law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege. *See* e.g., *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984) (failure to identify withheld documents renders privilege objections waived); *Anaya v. CBS Broadcasting, Inc.,* 251 F.R.D. 645, 651 (D.N.M. 2007) (burden is on party asserting privilege to establish that it applies and has not been waived); *Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 648-49 (D. Col. 2004) (failure to produce privilege log or inadequate log is a waiver of privilege asserted). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." F.R.C.P. 37(a)(4).

It is improper for Homeland to unilaterally determine what is relevant in this phase of the

litigation without any description or identification of the withheld underwriting documents. In the words of one United Magistrate Judge assessing the discoverability of files in an insurance coverage dispute:

> Perhaps Western Surety's approach to Alliance's discovery demand would be acceptable in a Panglossian world, but in modern American civil litigation, one tenet of pretrial discovery is "trust your mother but cut the cards." Western Surety, as the party who filed this lawsuit and who is seeking about a quarter million dollars from Alliance, does not occupy the ideal perch from which objectively to determine which of its own records Alliance is entitled to review to prepare its defense and its counterclaims. There are enough indicia of relevance from enough separate sources for this court to deem Western Surety's underwriting file in play. Perhaps Western Surety already has disclosed every document from its underwriting file that Alliance possibly could consider relevant. But Alliance is entitled to verify this for itself, subject to the confidentiality stipulation between the parties.

*See Western Sur. Co. v. Alliance Steel Const. Inc.,* 2007 WL 5514730 (W.D. Wisc., May 23, 2007).[2] Homeland similarly should not be able to sit from its biased perch and dictate what is discoverable and relevant without any identification or meaningful description of the withheld documents.

Homeland has waived its privilege and evaded discovery in violation of the federal rules. It should be ordered to produce all withheld documents and identify the persons requested without further delay.

    **B.    Pre-Policy Communications, Employee Communications, and Homeland's Underwriting Files, Documents, Notes, and Procedures are Discoverable and Proportional to the Needs of the Case**

PVHC and the Trustee have requested discovery regarding all underwriting files, documents, communications, correspondence, notes, memoranda, etc. that relate to the inception and interpretation of Homeland's insurance policies at issue in this litigation. Homeland has refused to produce a single responsive document.

---

[2] This case is not reported and is therefore attached to the Moyers Aff. ¶ 8, Ex. F.

The drafting, investigation, communications, evaluations and guidelines associated with Homeland's quote for coverage and underwriting is critical to the coverage determinations and policy provisions at issue, and thus relevant to Phase I. The Trustee has asked to depose Homeland's underwriters. Without production of the requested documents, the Trustee is at a distinct disadvantage, and undoubtedly the underwriters will not answer any questions about the construction of the policy language until the Court resolves this issue.

Before issuing the policies, the underwriters were tasked with drafting and proposing coverage consistent with the coverage that PVHC was seeking; thus, the underwriting files, including notes, memoranda and manuals, are likely to contain discoverable information related to the issues critical to the coverage analysis, such as construction of the policy, intent of the policy provisions, and ambiguity of the policy provisions. They may also be relevant to equitable considerations, such as estoppel, if the files show that Homeland's underwriters did not follow their own policies and guidelines in evaluating risk, or may support reformation of the policy to reflect the parties' intent pre-inception.

Requests were also served for the notes or documents related to a risk mitigation phone call that took place on July 24, 2013 between employee(s) of PVHC and Homeland's underwriter. That is the only conversation directly between PVHC and Homeland; the following day Homeland quoted coverage and PVHC accepted that quote and bound coverage with Homeland. What occurred in that call likely bears directly on the coverage analysis.

Homeland was also asked to identify the persons involved in the underwriting decisions who may have relevant information or knowledge regarding the interpretation of the policy provisions that they were tasked with drafting, authorizing, issuing and brokering. They may have knowledge regarding what risks they were insuring and what each party understood to be

the terms of the insurance contract. Their knowledge and documents they relied on are critical to interpreting the terms of the contract and may assist in determining whether there is an ambiguity.

Homeland was also asked to produce all communications between its employees, PVHC, the insurance brokers or other persons regarding the policy provisions and underwriting. Those communications may also contain information regarding the interpretation and constructions of the policy, may bear on ambiguity of the policy, the parties' intent for coverage, and may support equitable relief.

Under Wyoming law, extrinsic evidence can be introduced in insurance disputes to resolve an ambiguity. *See Sinclair Oil Corp. v. Republic Ins. Co.,* 967 F.Supp. 462, 470 (D.Wy. 1997); *Doctors' Company v. Ins. Corp. of America,* 864 P.2d 1018, 1024 (Wyo. 1993). Here, the question of whether the policy provisions are ambiguous has not been determined, and is a critical issue to the coverage analysis. Thus, Homeland's relevancy objection to the requested information and documents on its face is improper.

In addition to assessing ambiguity, the requested documents and materials are commonly produced in insurance coverage disputes to assist with interpretation of the contract terms. In *Sonic Automotive, Inc. v. Chrysler Insu. Co.,* No. 1:10-CV-717, 2012 WL 12925811 (S.D. Ohio Sept, 27, 2010)[3], the United States District Court rejected the same relevancy objections made by Homeland and ordered production of the underwriting files.[4]

Other courts have similarly ordered production of the requested documents. *See e.g., United States Fire Ins. Co. v. Bunge North Amer. Inc.,* 244 F.R.D. 638, 646 (D.Kan. 2007)

---

[3] This case is not reported and is therefore attached to the Moyers Aff. ¶ 9, Ex. G.
[4] Counsel for Homeland is aware that Homeland's same objections were previously rejected in *Sonic Automotive* because he was counsel for one of the insurance companies in that case as well.

(affirming a magistrate judge's order to produce claims manuals, which found manuals could be probative of insurer's policy interpretation guidelines and coverage positions); Moyers Aff. ¶ 8, Ex. F, *Western Sur. Co,* *2 (ordering production of the entire underwriting file); *U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 WL 1454008, at *9 (E.D. Mich. Apr. 26, 2012)[5] ("information in the underwriting manuals and guidelines may lead to the discovery of admissible extrinsic evidence relating to the proper construction of the policy terms, including the companies' course of dealing and industry usage"); *Silgan Containers v. National Union Fire Ins.,* No. C 09-05971, 2010 WL5387748 *8 (N.D.Cal. 2010) ("underwriting file is relevant to determining the risks insurer expected to cover in the policy, how it interpreted the various policy terms, and whether the terms of the policy are ambiguous")[6]; *Cummins, Inc. v. Ace Am. Ins. Co.,* No. 1:09-CV-00738, 2011 WL 130158, at *5-6 (S.D. Ind. Jan. 14, 2011) (underwriting and claims manuals are relevant and discoverable in insurance coverage litigation).[7]

Finally, the Trustee has sought documents regarding Homeland's interpretation of the same policy provisions in other cases and any judicial interpretations of those provisions. Such discovery has also been ordered in other similar cases. *See also Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 106–07 (D.N.J. 1990) (allowing other insureds discovery on a coverage claim on the basis that such evidence might be relevant to policy interpretation); *Sonic Automotive,* Moyers Aff. ¶ 9, Ex. G, at *3 (permitting discovery regarding the position that the insurer had taken on the identical disputed contract provisions). The same result should follow here.

---

[5] This case is not reported and is therefore attached to the Moyers Aff. ¶ 10, Ex. H.
[6] This case is not reported and is therefore attached to the Moyers Aff. ¶ 11, Ex. I.
[7] This case is not reported and is therefore attached to the Moyers Aff. ¶ 12, Ex. J.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Homeland should be ordered to produce the requested information and documents responsive to Interrogatories 4 and 11, and Requests for Production 3, 9, 14, 16, and 22 without further delay.

Dated the 11th day of January 2019.

<u>/s/ *Jon M. Moyers*</u>
Jon M. Moyers, WSB # 6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900
jon@jmoyerslaw.com
*Attorney for the Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing, upon the individuals listed below by the following means:

| | |
|---|---|
| Charles Spevacek<br>cspevacek@meagher.com<br>Tiffany Brown<br>tbrown@meagher.com<br>MEAGHER & GEER, PLLP<br>33 South Sixth Street<br>Suite 4400<br>Minneapolis, MN  55402 | CM/ECF |
| Judith Studer<br>jstuder@schwartzbon.com<br>SCHWARTZ BON WALKER & STUDER, LLC<br>141 South Center Street, Suite 500<br>Casper, WY  82601 | CM/ECF |
| R. Jeff Carlisle<br>jcarlisle@lynberg.com<br>Catherine A. Naltsas<br>cnaltsas@lynberg.com<br>Jerome P Doctors<br>jdoctors@lyndberg.com<br>LYNBERG & WATKINS, APC<br>888 South Figueroa Street, 16th Floor<br>Los Angeles, California 90012 | CM/ECF |
| Deborah M. Kellam<br>kellamd@hallevans.com<br>HALL & EVANS, LLC<br>2015 Central Avenue, Suite C<br>Cheyenne, WY 82001 | CM/ECF |

Dated this 11th day of January, 2019.

                                                        ____/s/ Jon M. Moyers_____
                                                             *Attorney for the Trustee*