Judith Studer, WSB #5-2174
SCHWARTZ, BON, WALKER & STUDER, LLC
141 South Center Street, Suite 500
Casper, WY 82601
Telephone (307) 235-6681
Fax (307) 234-5099
E-mail jstuder@schwartzbon.com

Charles E. Spevacek, admitted *pro hac vice*
Tiffany A. Brown, admitted *pro hac vice*
MEAGHER & GEER, PLLP
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
Telephone (612) 347-9171/(612) 371-1324
Fax (612) 877-3015
E-mail cspevacek@meagher.com
E-mail tbrown@meagher.com

*Attorneys For Plaintiff*
*Homeland Insurance Company of New York*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | ) | Case No. 15-CV-31-ABJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **HOMELAND'S BRIEF IN** |
| vs. | ) | **OPPOSITION TO TRUSTEE'S** |
| | ) | **MOTION TO COMPEL** |
| SCOTT J. GOLDSTEIN, as the Personal Injury Trustee for the Personal Injury Trust of Powell Valley Healthcare, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION AND BACKGROUND

Plaintiff Homeland Insurance Company of New York ("Homeland") commenced this action seeking a declaration that it had no duty to defend or indemnify Powell Valley Healthcare, Inc. ("PVHC" or the "Hospital") and others for certain "Underlying Claims" resulting from medical procedures performed by the Hospital's former surgeon Dr. Jeffrey Hansen.[1] As pleaded, the case is a typical insurance coverage case concerning the availability of insurance coverage for the Underlying Claims under the Homeland Policies. While bad faith claims are also pleaded, pursuant to the Court's January 15, 2016 Order Bifurcating Discovery and Scheduling Phase I ("Bifurcation Order") [ECF #57], discovery was bifurcated. Phase I is limited to the issue of insurance coverage, *i.e.*, whether the Homeland Policies provide coverage for the Underlying Claims. Phase II (if necessary) will address any claims of bad faith.

The discovery at issue in the Trustee's motion[2] is not relevant to any party's claim or defense on the issue of coverage. Accordingly, Homeland ask that the motion be denied.

## II.    SUMMARY OF DISCOVERY ISSUES AND "MEET AND CONFER" EFFORTS

By his motion, the Trustee seeks to compel production of documents and/or information falling into three categories: (1) correspondence between Homeland employees about the Underlying Claims (Request No. 3); (2) underwriting information;[3] and (3) information about

---

[1] The Underlying Claims alleged the Dr. Hansen was negligent in the performance of medical procedures and further asserted direct claims against the Hospital and its management company (HealthTech and CEO William Patten) for their negligence in credentialing, hiring, supervising, monitoring, reviewing, training, and extending privileges to Dr. Hansen. (Complaint, ¶ 13). Homeland agreed to defend the Hospital and Dr. Hansen in connection with certain of the Underlying Claims, subject to a complete reservation of rights. (Complaint, ¶¶ 33-36). The Underlying Claims were later resolved in connection the Hospital's Chapter 11 bankruptcy. Indemnity for the Underlying Claims remains at issue.

[2] For the Court's ease of reference, the specific discovery requests at issue (and Homeland's responses thereto) are set forth in Exhibit 1 attached hereto.

[3] The requests at issue do not seek the complete underwriting file for the Policies, nor was a request for "all underwriting files" served. The "underwriting information" at issue is limited to: (1) correspondence between Homeland employees related to underwriting or coverage issues (Request No. 3); (2) documents reviewed about the underwriting or issuance of the Policies (Request No. 9); (3) the names of people who participated in the underwriting or issuance of the Policies (Interrogatory No. 4); and (4) identification of who did what due diligence

other insureds.[4] Homeland objected to this discovery on the grounds it is not relevant to any party's claim or defense and thus not discoverable under Fed. R. Civ. P. 26(b)(1).

However, not all of the discovery requests set forth in the Trustee's motion are properly before the Court. Specifically, the Parties have <u>not</u> engaged in a "meet and confer" as required by FRCP 37(a)(1), and Local Rules 7.1(b)(1)(A) and 37.1(b), regarding Homeland's Responses to the Trustee's Second Request for Production of Documents ("RRPD Set II") (Trustee's Exhibit C), which were served on December 5, 2018.[5] Accordingly, the scope of discovery properly before this Court is limited to Requests Nos. 3 and 9, and Interrogatories Nos. 4 and 11.

## III.   ARGUMENT

### A.   <u>A Privilege Log is not Required when Relevancy is Disputed</u>

Rule 26(b)(1) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"[6] Homeland's written responses to each document request at issue included a specific objections that the information sought was not "relevant to any party's claim or defense" and a statement of the basis upon which relevancy was disputed.[7] Where appropriate, Homeland also asserted potentially applicable privilege objections. *Id*. The Trustee suggests that any potentially applicable

---

related to underwriting of the Policies (Interrogatory No. 11). The Trustee also seeks to compel documents related to any phone calls about underwriting (Request No. 16), and underwriting guidelines (Request No. 22). However, as set forth herein, Requests Nos. 16 and 22 are <u>not</u> properly before the Court.

[4] Request No. 14 seeks documents explaining the positions Homeland has taken regarding the "Disputed Policy Provisions" concerning claims by other policyholders. Request No. 14 is also <u>not</u> properly before the Court.

[5] The Trustee's motion seeks to compel documents responsive to Requests Nos. 14, 16 and 22, which are within his Set II Requests and were not subject to a "meet and confer." While counsel for the parties did engage in a phone call on December 11, 2018 to discuss discovery issues, the Trustee's counsel did not at that time, nor at any time before or after that phone call, raise any issue regarding the sufficiency of Homeland's RRPD Set II. Rather, the scope of the "meet and confer" as to Homeland's discovery responses concerned only Homeland's responses to the initial discovery (served by PHVC). *See* Trustee's July 20, 2018 letter (Trustee's Exhibit D) and Homeland's October 10, 2018 response (Trustee's Exhibit E). The Trustee served his Set II Requests after the exchange of those letters.

[6] The Bifurcation Order further limits the scope of discovery in Phase I to the issue of coverage.

[7] *See* Responses to Request Nos. 3 and 9 (Trustee's Exhibit B; Exhibit 1). While not properly before the Court, Homeland's responses to Requests Nos. 14, 16, and 22 (RRPD Set II), included similar objections. (*See* Trustee's Exhibit C; Exhibit 1).

privileges were waived because Homeland: (1) failed to comply with Rule 34(b)(2)(c); or (2) failed to properly assert privilege; or (3) failed to properly log documents withheld on the basis of privilege. There was no waiver.

First, Homeland's written responses to Requests Nos. 3 and 9 (the only requests properly before the Court) complied with Rule 34(b)(2)(c) by specifically stating: "To the extent responsive materials exist, they are being withheld on the basis of the stated objections."[8]

Second, the obligation to assert privilege is set forth in Rule 26(b)(5), which states:

> When a party <u>withholds information otherwise discoverable</u> by claiming that information is privilege or subject to protection as trial preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(Emphasis added). The Trustee contends that Homeland is required to identify every piece of correspondence responsive to Request No. 3 (from its 29 separate claims files) that is withheld on the basis of privilege, despite that Homeland has otherwise asserted that any additional claim file documents are not relevant to any party's claim or defense.[9] But, while Homeland has asserted other objections (including that certain documents in its claim files may also be subject to privilege), the Rules do not require a Privilege Log where information is withheld on the grounds that it is not relevant to any party's claim or defense. That is, Rule 26(b)(5) applies only "[w]hen a party withholds information otherwise discoverable[.]"

---

[8] Responses to Requests Nos. 14, 16 and 22 made the same statement. (*See* Trustee Exhibit C; Exhibit 1).

[9] The Trustee also argues that Homeland needs to identify "withheld underwriting documents." However, Homeland has not asserted any privilege with regard to underwing information, *except* in response to Request No. 16 which broadly seeks "any documents related to phone calls" between Homeland any other person, which request, as worded, could be construed to include communications between Homeland and its counsel. Given the breadth of Request No. 16, Homeland objected "<u>to the extent</u> it seeks information and/or documents that are protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege or immunity." (*See* Trustee's Exhibit C; Exhibit 1). Homeland has not asserted any privilege with regard to the identity of "the persons responsible for drafting and underwriting the policy." (Br. at 6). There is no Interrogatory that asks Homeland to identify the person responsible for "drafting" the policy; Homeland's Answers to Interrogatory Nos. 4 and 11 asserts relevancy objections, not claim of privileges. (*See* Trustee's Exhibit B; Exhibit 1).

Despite its relevancy objection, however, where a privilege was deemed to potentially apply to the documents requested, Homeland expressly asserted that privilege.[10] Should this Court deem documents responsive to Request No. 3 to be relevant, any responsive documents thereafter withheld on a claim privilege will be identified in a Privilege Log. *See e.g., Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 107 (D.N.J. 1990) (recognizing right to assert privilege and provide log for documents withheld from production following motion to compel documents initially withheld on relevancy grounds).[11]

Third, where Homeland did not dispute the relevance of a document or information requested, it complied with Rule 26(b)(5)(A)(ii) by describing the document and information it withheld in its Privilege Log. (*See* Trustee's Exhibit B 35-38).[12]

Finally, Homeland has not "unilaterally determine[d] what is relevant in this phase of the litigation[,]" as argued by the Trustee. Rather, relevancy is determined by the claims and defenses asserted in the pleadings; and as further limited by the Bifurcation Order. The Parties dispute the relevance of the documents and information requested and thus dispute whether it is otherwise discoverable. That dispute is now before this Court for consideration. Should the Court find additional information relevant, Homeland will further respond as appropriate.

---

[10] With regard to the discovery requests properly at issue, Homeland asserted potentially applicable privileges with regard to Request No. 3, only. As related to RRPD Set II, Homeland asserted potentially applicable privileges with regard to Request Nos. 14 and 16.

[11] The Trustee further complains that Homeland has not provided a Privilege Log to support the objections stated in its RRPD Set II. However, Homeland similarly objected to those requests as seeking documents not "relevant to any party's claim or defense." (*See* Trustee Exhibit C; Exhibit 1).

[12] Pursuant to agreement of the Parties and the Amended Scheduling Order entered on June 18, 2018 [ECF #114], responses to any outstanding discovery that predated the Hospital's bankruptcy filing were due on by July 16, 2018. Homeland provided its written discovery responses before the Hospital filed for bankruptcy, but the Stay went into effect before Homeland was able to produce its documents. Homeland produced its documents on July 16, 2018, at which time it advised that a Privilege and Redaction Log would be forthcoming (*see* Exhibit 2 hereto), and which was thereafter served. (*See* Trustee's Ex. B). The statement that Homeland has "refused to produce a single responsive document" is false.

**B.**   **The Discovery at Issue is Not Relevant to any Party's Claim or Defense**

The claims and the defenses at issue in Phase I (*i.e.,* claims for declaratory relief and breach of contract) turn on the meaning of the following policy provisions:

1.  Insuring Agreements, Paragraph (A) – Claims Made Professional Liability Insurance;
2.  General Conditions, Paragraph (B) Related Claims Deemed Single Claim;
3.  Exclusions (D)(1) and (D)(2); and
4.  Certain policy definitions incorporated into the foregoing Policy provisions including the Policy's "Related Claims" definition;

as applied to: (1) the facts and allegations of the underlying claims; and (2) in the case of exclusion (D)(1), knowledge possessed by Insureds before the policies incepted regarding the acts, errors, omissions or Wrongful Acts at issue in the Underlying Claims.[13] Neither the underwriting of the Policies, nor the handling of the Underlying Claims, is relevant to the determination of whether the Underlying Claims are covered by the Homeland Policies.[14]

The Trustee is on a fishing expedition. Without any explanation as to the consequences of the information he seeks on the issue of coverage, the Trustee broadly claims that the "drafting, investigation, communication, evaluation and guidelines associated with Homeland's quote for coverage and underwriting is critical to the coverage determinations[.]" (Br. at 8). The Trustee further contends that this information is "likely to contain discoverable information related to the issues critical to the coverage analysis, such as construction of the policy, intent of the policy provisions, and ambiguity of the policy provisions" and that details of the July 24, 2013 phone

---

[13] The latter issue forms the basis of Homeland's Motion to Compel. [ECF #119 and #120].

[14] "Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401; *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 268 F.R.D. 692, 693 (S.D. Fla. 2010). Since discovery is limited to relevant matters, it is the burden of the party seeking discovery to make a threshold showing of relevance before being allowed to pursue it. *See Hamilton v. Ford Motor Co.*, No. 09-CV-082-D, 2010 WL 11598083, at *2 (D. Wyo. Feb. 1, 2010) ("It follows that '[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'") *quoting Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). To be relevant here, the information the Trustee seeks must, in a basic, common-sense manner, potentially make a difference in the outcome of the issues presented – whether the Policies provide coverage for the Underlying Claims. Material that *simply will not affect* the outcome of the case is, by definition, not relevant.

call before coverage was bound "likely bears directly on the coverage analysis." *Id.* The Trustee does not, however, describe the purported "issues critical to the coverage analysis" with any specificity (he does not identify any specific policy terms or any underlying facts), nor does he describe any underwriting or claims handling facts sought to be discovered which would bear on the same. Importantly, such extrinsic evidence will not aid this Court's interpretation of the Policies as a matter of law.[15]

Under Wyoming law, the interpretation of an insurance policy is a question of law. *State ex rel. Farmers Ins. Exch. v. District Court of the Ninth Judicial Dist.*, 844 P.2d 1099, 1102 (Wyo. 1993). As with other contracts, the written terms of the policy control. *See id.* Moreover, "if the court is satisfied that the terms of the policy are clear and not ambiguous, the policy must be interpreted by applying the ordinary and usual meaning of its terms without looking beyond the four corners of the policy." *Shoshone First Bank v. Pacific Emplrs. Ins. Co.*, 2 P.3d 510, 513 (Wyo. 2000) (citations omitted). That is, absent an ambiguity, there is no room for construction and an insurance policy will be enforced according to its terms. *State ex rel. Farmers* at 1102. *See also Martin v. Farmers Ins. Exch.*, 894 P.2d 618, 620 (Wyo. 1995) ("Whether there is ambiguity within the four corners of the contract is a question of law."). While the court may consider extraneous materials to interpret an ambiguous contract provision, *see St. Paul Fire & Marine Ins. Co. v. Albany County School Dist. No.* 1, 763 P.2d 1255 at 1258 (Wyp. 1988), there is no room for construction in the absence of a finding of ambiguity. Moreover, a mere disagreement between the parties as to the meaning of a contract does not create an ambiguity. *Id.*

---

[15] The Trustee further suggests that the information sought "may also be relevant to equitable considerations, such as estoppel, … or may support reformation of the policy[.]" (Br. at 8). However, there is no claims for estoppel or reformation. Nor did Homeland plead rescission, or any other claim to which its underwriting of the Policies is relevant. Moreover, the Trustee already has the files of the Hospital's insurance agents who were involved in procurement of the Policies. As the substituted party for the Hospital, the Trustee certainly has access to the Hospital's representatives involved in placing coverage with Homeland.

The Trustee is correct that extrinsic evidence may be used "to resolve ambiguity." But, the Trustee has not alleged an ambiguity, nor has this Court found one. The cases cited by the Trustee make clear that extrinsic evidence is not relevant to this Court's interpretation of the Policies unless there is a finding of ambiguity. *See Doctors' Co. v. Ins. Corp. of Am.*, 864 P.2d 1018, 1024 (Wyo. 1993) (under Wyoming law "[i]f the language is unambiguous, [the court's] examination is confined to the 'four corners of an integrated contract and extrinsic evidence is not admitted to contradict the plain meaning"); *Sinclair Oil Corp. v. Republic Ins. Co.*, 967 F. Supp. 462, 470 (D. Wyo. 1997) ("Under Wyoming law, where the insurance contract is unambiguous, if policy language is clear and unambiguous, the words of the policy are given their plain, ordinary, and customary meaning [and a court] must ascertain the intent of the parties according to the plain language of the policy and cannot consider any extrinsic evidence.").

Accordingly, because this Court's interpretation of the Policies under Wyoming law is limited to the four corners of the contract, internal Homeland correspondence about the Underlying Claims and anything related to the underwriting of the Policies is simply not relevant to the coverage issues presented. This includes any facts concerning what Homeland knew at the time the Policies were issued, how Homeland underwrote the Policies and how it rated the risk. Nor do relevant facts include what Homeland's claims representatives did or did not do in response to the requests for coverage for the underlying claims. This case, like any typical insurance coverage declaratory judgment or breach-of-contract action concerns *whether* the policy provides coverage and *whether* the insurer breached its policy, not *why* it may have done so or what internal thoughts it had on the way to its coverage decision. Nor does what claim personnel subjectively thought about the claim have any relevance: "What [an insurance company] believes its own policy means is not important[,] because the court must interpret the policy language as written." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Doscher's Dorchester Rd.,*

*Inc.*, No. 2:11–656, 2012 WL 652638, at \*2 (D.S.C.) (quoting *Westfield, LLC v. Zurich Am. Ins. Co.,* No. 07–1224, 2009 WL 5908006, at \*3 (D. Md.) (declining to order identification of claim personnel participating in the coverage decision in order to allow the insured to inquire why they thought coverage did not exist).

In *Salzbach v. Hartford Ins. Co. of the Midwest*, No. 8:12-cv-01645-T-MAP, 2013 WL 12098763 (M.D. Fla. April 19, 2013), for example, the insured requested the insurer's complete claim file, including all internal logs reflecting claim-handling activity. *Id.* at \*4. Like Homeland, the insurer objected on the grounds that the claim-file documents were not relevant. The court agreed. The insured had asserted only a breach-of-contract claim, it noted, and claim-file activity is not relevant to contract actions. *Id*. The court similarly found that the insured was not entitled to obtain deposition testimony regarding the meaning of the policy provisions, as the interpretation of an insurance policy presents a question of law for the court, not for the insurer's corporate representative. *See id*. at \*1. *See also Kennedy v. Provident Life & Acc. Ins. Co., No.* 0781218CIV, 2009 WL 3048683, at \*2 (S.D. Fla. Sept. 18, 2009) ("Under both Florida and Kentucky law, documents and testimony regarding the insurer's claims handling or general business practices are irrelevant to the issue of whether the insured is entitled to the coverage claimed and may only be relevant to a claim of bad faith.").

The Trustee's repeated argument that the documents and information sought to be compelled are "likely to contain discoverable information" and his reliance on a handful of cases from other jurisdictions concluding that underwriting information was relevant to the claims and defenses therein, does not advance his position. Those decisions were all decided under the "reasonably calculated to lead to the discovery of admissible evidence" standard that has since

been superseded by more recent amendments to the Federal Rules of Civil Procedure.[16] *See Sonic Auto., Inc. v. Chrysler Ins. Co*., 1:10-CV-717, 2012 WL 12925811, at *3 (S.D. Ohio Sept. 27, 2012) (requested discovery found "relevant in that it could lead to admissible evidence concerning interpretation of" policy terms); *U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 WL 1454008, at *9 (E.D. Mich. Apr. 26, 2012) ("discovery requests seeking claims manuals and similar documents are reasonably calculated to lead to the discovery of admissible evidence, and thus proper"); *Cummins, Inc. v. Ace Am. Ins. Co.*, No. 1:09-CV-00738-JMS, 2011 WL 130158, at *5 (S.D. Ind. Jan. 14, 2011) (court "will not refuse discovery that may tend to lead to admissible evidence");[17] *Silgan Containers v. Nat'l Union Fire Ins*., No. C 09-05971 RS LB, 2010 WL 5387748, at *9 (N.D. Cal. Dec. 21, 2010) ("information sought is relevant to coverage and/or reasonably calculated to lead to the discovery of admissible evidence");[18] *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (applying "reasonably calculated to lead to the discovery of admissible evidence" standard). This change throws a great deal of existing discovery caselaw into question. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) (the phrase "relevant to the *subject matter* … has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear

---

[16] The December 1, 2015 Amendments to the Federal Rules of Civil Procedure narrowed the scope of relevant, and therefore discoverable, information. In its current form, the rule provides that a party may obtain discovery regarding information that is "relevant to [either] party's *claim[s] or defense[s]."* Fed. R. Civ. P. 26(b)(1). It no longer provides, as earlier versions did, that parties may obtain discovery of information relevant to the "subject matter" of the litigation. *See id.; Cole's Wexford Hotel, Inc. v. Highmark Inc*., 209 F. Supp. 3d 810 (W.D. Pa. 2016). Nor does it include the phrase "reasonably calculated to lead to the discovery of admissible evidence." *See* Advisory Committee Comment, 2015 Amendment. That phrase, in particular, has been incorrectly used by courts to define the scope of discovery (*i.e*., cases holding that information was "relevant" if it was reasonably calculated to lead to the discovery of admissible evidence). *Id*.

[17] *Cummins* is further distinguishable because the policies at issue therein were manuscript policies. 2011 WL 130158, at *8. Manuscript policies are individually-drafted policies with terms negotiated between the insurer and insured. Typically, such policies are only available to large commercial insureds. *See e.g., Gabarick v. Laurin Mar. (Am.), Inc.*, 650 F.3d 545, 554 (5th Cir. 2011) (explaining that manuscript policies are tailored to the unique coverage needs of the insured).The Homeland Policies issued to PVHC were not "manuscript" policies.

[18] *Silgan* is further distinguishable because the insured therein alleged that the Policy was ambiguous. 2010 WL 5387748, at *94. There is no such allegation here. *See RLI Ins. Co. v. Fifth Third Bankcorp*, No. 1:14-CV-802, 2017 WL 815543, at *7 (S.D. Ohio Mar. 1, 2017) (distinguishing *Silgan* on the basis that the plaintiff therein alleged that policy terms were ambiguous).

on, any issue that is or may be in the case")(emphasis added); *Coles*, 209 F. Supp. 3d at 823 (W.D. Pa. 2016) (in light of the 2015 revision, it would be inappropriate to continue to cite to *Oppenheimer* for the purpose of determining the scope of discovery under Rule 26(b)(1) as amended). These cases are further inconsistent with Wyoming law, which limits interpretation of an insurance policy (absent a finding of ambiguity) to the four corners of the contract.[19]

The Trustee's reliance on *Western Sur. Co. v. All. Steel Const., Inc.*, No. 06-C-326-C, 2007 WL 5514730, at \*1 (W.D. Wis. May 23, 2007) is also misplaced. The conclusion therein that there were "enough indicia of relevance from enough separate sources for this court to deem [the insurer's] underwriting file in play" was related to claims that the insurer failed adequately to investigate complaints about insured's performance and failed to stay apprised of insured's performance of its subcontract. No such claims are at issue in this case.[20]

### C. Other Objections Asserted by Homeland

Homeland has asserted additional objections not addressed by the Trustee. For the sake of brevity, Homeland refers the Court to Exhibit 1. As to Request No. 3, Homeland maintains that the term "Underlying Claim" as used therein is overly broad because it seeks information in connection with claims beyond those at issue in the Hospital's counterclaim.[21]

---

[19] For the same reasons, any coverage positions taken by Homeland in connection with claims against other insureds (undoubtedly involving other and/or different facts and likely additional policy terms) has no impact on this Court's interpretation of the Homeland Polies. Request No. 14, however, is not properly before the Court. To the extent the Court is inclined to rule on Request No. 14, despite it not having been the subject of "meet and confer," Homeland respectfully requests further leave of this Court to address the additional objections cited in response thereto. Homeland cannot herein adequately address additional considerations upon which any responses to Request No. 14 should be limited. Among Homeland's primary concerns are that the request is not proportional to the needs of the case considering the time, burden, and expense to Homeland to manually review the entirety of its available claim files to identify documents potentially responsive to the Request, and the privacy of its other insureds.

[20] Nor is *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638 (D. Kan. 2007) helpful. The court found claims handling manuals relevant to the insured's bad faith claim. Bad faith isn't at issue until Phase II; and there is no request for "claims manuals." *Bunge* is also a pre-December 1, 2015 Federal Rules amendment case.

[21] The Hospital's counterclaim is limited to the claims of the following six plaintiffs: Stambaugh, Oliver, Johnson, Sommerville, Snell, and Wilson. [*See* ECF # 15]. To the extent the Court should overrule Homeland's relevancy objection as to Request No. 3, any compelled documents should be limited to these six Underlying Claims.

## V.      CONCLUSION

For these reasons, Homeland respectfully requests that this Court deny the Trustee's

motion to compel and grant Homeland such other relief it deems appropriate.


Dated: January 25, 2019          s/Tiffany M. Brown
                               Charles E. Spevacek (MN #126044)
                               *Admitted Pro Hac Vice*
                               cspevacek@meagher.com
                               Tiffany M. Brown (MN #302272)
                               *Admitted Pro Hac Vice*
                               tbrown@meagher.com
                               MEAGHER & GEER, PLLP
                               33 South Sixth Street, #4400
                               Minneapolis, MN 54502
                               (612) 338-0661 (Office)
                               (612) 338-8384 (Fax)

                               Judith Studer (5-2174)
                               jstuder@schwartzbon.com
                               SCHWARTZ BON WALKER & STUDER, LLC
                               141 South Center Street, Suite 500
                               Casper, WY 82601
                               (307) 235-6681 (Office)
                               (307) 234-5099 (Fax)

                               *Attorneys for Plaintiff*
                               *Homeland Insurance Company of New York*

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants.

s/Tiffany M. Brown