Jon M. Moyers, jon@jmoyerslaw.com, WSB # 6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900

Robert A. Krause, krause@spencelawyers.com, WSB # 5-2824
Mel C. Orchard, III, orchard@spencelawyers.com, WSB # 5-2894
Elizabeth A. Richards, richards@spencelaywers.com, WSB # 6-4249
Sarah A. Kellogg, kellogg@spencelaywers.com, WSB # 7-5355
THE SPENCE LAW FIRM, LLC
15 S Jackson Street, P.O. Box 548
Jackson, WY 83001
(307) 733-7290; (307) 733-5248 (fax)

Kathryn Kohn Troldahl, kohnkathryn1@gmail.com, *pro hac vice*
KOHN LAW, P.A.
P.O. Box 390074
Minneapolis, MN 55439
(612) 597-3899; (888) 519-3472 (fax)

*Attorneys for Scott J. Goldstein, Trustee*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, et. al., <br>           Plaintiff, <br> vs. <br><br> SCOTT J. GOLDSTEIN, Trustee for the Personal Injury Trust of Powell Valley Health Care, Inc. <br><br>           Defendants, | Case No.  15-CV-31-J <br><br> **TRUSTEE'S RESPONSE IN OPPOSITION TO HOMELAND INSURANCE COMPANY OF NEW YORK'S MOTION TO COMPEL** |

COMES NOW, Scott Goldstein, Trustee for the Personal Injury Trust for Powell Valley Health Care, Inc. ("Trustee"), and files his Response in Opposition to Homeland Insurance Company of New York's ("Homeland") Motion to Compel, and states as follows:

Homeland has denied coverage to its insureds, Powell Valley Health Care, Inc. ("PVHC"), Dr. Jeffrey Hansen, HealthTech Management Services, Inc. ("HealthTech"), and

1

William Patten on the basis of its "prior knowledge" exclusion, taking the position that certain medical malpractice claims against Dr. Jeffrey Hansen, and related negligent hiring, supervision, and credentialing claims against PVHC, HealthTech, and Mr. Patten ("underlying claims") are excluded from coverage because PVHC knew of concerns about Dr. Hansen's practice before the inception of the Homeland policies.  Recognizing that PVHC did not know of any credible concerns specific to the underlying claims, Homeland now seeks to compel discovery of PVHC's privileged peer review and quality management records so that it can engage in a fishing expedition for any evidence that PVHC had sufficient knowledge of Dr. Hansen's deficient care to the underlying plaintiffs as to make their claims foreseeable prior to August 31, 2013, when Homeland bound coverage.

Wyoming law requires hospitals to perform quality management functions and protects related documents from discovery.  In 2013-2014, PVHC had several committees that worked together to oversee PVHC's quality management program.  The Medical Executive Committee ("MEC") was charged with overseeing quality management by: credentialing physicians, granting privileges, initiating disciplinary proceedings, and reporting on quality improvement programs.  Exh. A, PVHC Medical Staff Bylaws, ¶ 9.11.2.  Other committees, such as the Professional Practice Evaluation Committee ("PPEC") and Credentialing Committee, reported to MEC.  *Id* at ¶¶ 9.12, 9.13.  Any investigation of a physician was overseen by MEC, possibly with the help of other Medical Staff Committees, such as PPEC.  *Id* at ¶10.4.  At the conclusion of an investigation, MEC was required to inform the Board of Directors of its recommendations and it was up to the Board to act on any recommendations.  *Id.* at ¶¶ 10.5, 10.6.

To that end, the Trustee provided an eighteen-page privilege log to Homeland, which includes documents withheld on the basis of the peer review and quality assurance privileges.

Homeland now seeks to compel these documents, arguing, in part, that the statutory privileges do not apply to insurance companies. Homeland is not entitled to bypass the privileges afforded by Wyoming statutes to discover the work of PVHC's committees leading up to the termination of Dr. Hansen's privileges in the fall of 2014. Accordingly, PVHC objects to Homeland's motion.

## LEGAL STANDARDS

As quoted by Homeland, Wyoming's **peer review privilege** is embodied in two different statutes. Section 35-2-609 extends the privilege to "medical staff committees," and Section 35-17-105 applies to a "professional standard review organization." In effect, the protections afforded by these two statutes often overlap because the definition of "professional standard review organization" is "[a] committee of a medical staff in a hospital having the responsibility of evaluation and improvement of the quality of care rendered in the hospital." W.S. § 35-17-101(i)(B); *see* W.S. 35-2-605 (x) ("'Hospital medical staff committee' means any committee within a hospital . . . which is engaged in supervision, discipline, admission, privileges or control of members of the hospital's medical staff, evaluation and review of medical care, utilization of the hospital facilities or professional training."). Similarly, Wyoming's **quality management privilege** is set forth in Section 35-2-910, which states "[q]uality management information relating to the evaluation or improvement of the quality of health services is confidential."

Hospital records that do not fall within the confines of these privileges may still be protected from discovery due to privacy concerns. For example, the **Wyoming Public Records Act** prohibits the custodian of records of a public hospital from disclosing "[h]ospital records relating to medical administration, medical staff, personnel, medical care and other medical information." *See* W.S. § 16-4-203(d)(i)-(viii); *but see Harston v. Campbell,* 913 P.2d 870, 877 (Wyo. 1996) (allowing production of hospital records if, after *in camera* review, the interest in the party seeking the records outweighs any privacy interest asserted by the hospital.). Similarly,

3

a hospital may only disclose health care information pursuant to compulsory legal process if a court first determines that "the party seeking the information has demonstrated that the interest in access outweighs the patient's privacy interest." W.S. §§ 35-2-609 - 610.

## ANALYSIS

1. **PEER REVIEW & QUALITY MANAGEMENT PRIVILEGES**

Homeland's motion to compel asks this Court to hold that the statutory peer review and quality assurance privileges do not apply because: (1) the quality management statute does not create a privilege; (2) the peer review privilege is inapplicable in an insurance coverage dispute; (3) the peer review privilege does not apply to communications with hospital staff or personnel; and (4) PVHC waived the statutory privilege by disclosing certain documents to UMIA during a confidential mediation. The Trustee will respond to each argument in turn.

**FIRST,** Homeland misunderstands the quality management privilege, arguing that the statute's "confidentiality" concerns can be addressed with a protective order. Even though the quality management statute uses the word "confidential" rather than "privilege," Wyoming courts interpret the quality management statute as protecting relevant materials from discovery. For example, in *Dorsett v. Roussalis,* Judge Waldrip explained that the quality management privilege should be read similarly to the peer review privilege and "protects from discovery the internal proceeding related to quality management information, such as documents that detail the final decision-making process, opinion, perspective, or final decisional results related to quality management." No. 83815, 2005 WL 4890805 (Wyo.Dist. Apr. 14, 2005).

**SECOND,** Homeland argues that the peer review privilege is inapplicable because the purpose behind the privilege is not served by applying it in the context of a coverage dispute. This argument is inconsistent with the plain language of the statutory privilege, which specifically states that the privilege applies "in **any** civil action." W.S. § 35-17-105 (emphasis

4

added); *see* W.S. § 35-2-609 (not limiting the privilege to a specific context).  Further, in *Greenwood v. Wierdsma,* the Wyoming Supreme Court explained that purpose behind the peer review privilege was, to promote "free-flowing constructive criticism." 741 P.2d 1079. Allowing insurance companies to scour a hospital's peer review and quality management files to retroactively justify coverage positions, would have a chilling effect on free-flowing criticism.

**THIRD**, Homeland argues that the peer review privilege does not apply to communications or documents exchanged by "individual hospital staff."  As used in section 35-2-609, the privileged "data" specifically includes "reports, notes, findings opinions of any hospital medical staff committee, **including its consultants, advisors, and assistants**." W.S. § 35-2-605(a)(ii) (emphasis added).  Likewise, the definition of "Hospital medical staff committee" clearly includes "hospital personnel." W.S. § 35-2-605(a)(x). Although it is unclear which documents Homeland is seeking to compel on this basis, the individuals identified on the Trustee's privilege log fall fairly squarely in this category.

For example, Homeland is critical of the Trustee for withholding a communication between Timothy Seeley and William Patten, which Homeland provided as Exhibit E.  William Patten was the CEO of PVHC at the time of this correspondence.  In that capacity, Mr. Patten also served as an *ex officio* member of MEC, the medical staff committee charged with overseeing quality management functions at PVHC.  *See* Exh. A, Bylaws at ¶ 9.11.1.  Mr. Seeley was the Director of Quality Improvement and Risk Management at PVHC.  Mr. Seeley was in charge of "[d]evelop[ing] and maintain[ing] an interdisciplinary continuous **quality improvement program**" and providing direct support to the medical staff committees, such as MEC and PPEC.  Exh. B, Risk Manager Job Description (emphasis added).

In *Nalder v. West Park Hospital,* the Tenth Circuit considered whether notes taken by the

5

OB nurse manager during a meeting held immediately after the delivery of a severely brain injured baby were protected from discovery under Section § 35-17-105. 254 F.3d 1168, 1179 (10th Cir. 2001). The court held that the notes were privileged because the nurse was a member of the hospital's OB/Peds Committee, which reported to the hospital's Quality Assurance Committee. *Id.* at 1180. As part of that committee, the nurse was responsible for gathering information about how the hospital's policies worked and recommending changes. *Id.* The court concluded that, although not made in the context of a formal committee meeting, her notes were privileged because they were "made to assist in preparing a formal report to the OB/Peds committee to help improve patient care." *Id.* Applying the same logic, Homeland's Exhibit E falls squarely within the confines of the peer review and quality management privileges because it is a communication from the staff member in charge of quality management at PVHC to a member of PVHC's MEC committee about a serious quality management concern.

Most of the remaining individuals listed on the Trustee's privilege log fall even more squarely within the confines of the privilege because they were members of the MEC or PPEC committees or the Board of Directors, communicating about committee business.[1] To the extent that Homeland has concerns about communications shared with other individuals,[2] the Trustee would have been happy clarify the role of those individuals in quality assurance process, but Homeland failed to confer about any such concerns.

---

[1] As has been disclosed to Homeland, Members of MEC during 2013 and 2014 were: Dr. Robert L. Chandler, Dr. Valerie Lengfelder, Dr. Michael Tracy, Dr. Kelly Christensen, Cathy Blanchard, and William Patten (CEO). Exh. C, Answer to ROG 6. Members of the PPEC committee involved in evaluating Dr. Hansen in 2013-2014 were: Dr. Valerie Lengfelder, Chief of Staff, Dr. Michael Bohlman, Chairman, Dr. Nathan Rieb, Dr. James EcElvoy, Dr. Sarah Durney, and Janna Keeler, PA-C. *Id.* Chairs of the PPEC committee during Dr. Hansen's employment included: Betsy Spomer, M.D. (2008, 2009), Robert L. Chandler, M.D. (2010); Lynn Horton, M.D. (2011);
[2] The other individuals listed on the privilege log include: C. Benander, a compliance professional from HealthTech Management Service, Inc. that PVHC consulted about its peer review process, and attorneys J. Fitzgerald, J. Oven, and T. Copenhaver.

**FINALLY**, Homeland argues that PVHC somehow waived its statutory privilege by disclosing some of the withheld documents to UMIA as a part of a confidential mediation. As this Court knows, in August 2017, PVHC attended a mediation with Homeland, UMIA, Lexington, and the underlying plaintiffs. Prior to that mediation, PVHC's bankruptcy counsel agreed to provide certain documents to UMIA. The motion requesting the mediation specifically represented to the Court the parties' agreement that all document exchanged in the context of the mediation were for purpose of the mediation **only** and were not to be used in this case:

> Absent further order of a court or written waiver by the disclosing party, **no** communication of any type, whether oral or written, **or documents or information** related in any way to the mediation, **may be used by any party for any purpose, including impeachment, in any arbitration, judicial, administrative or other proceeding**, and may not be disclosed to any non-party to the mediation. **All such communications, documents, and information are subject to Fed. R. Evid. 408**, Wyoming United States District Court Local Rule 16.3, and **all other applicable settlement privileges** arising under applicable law.

Exh. D, *In re: Powell Valley Health Care, Inc.,* No. 16-20326 (Wyo. Bankr., June 27, 2017), ECF # 580, at ¶ 17 (emphasis added) & ¶ 10 ( "the Debtor retains its right to object to the request for production of documents, in good faith, on any grounds which would have been available to the Debtor had this bankruptcy case not been commenced."). The great majority of the documents provided to UMIA have now been produced to Homeland in response to its discovery requests. However, among the documents withheld and listed as privileged, is Homeland's Exhibit E, a communication between Mr. Seeley and Mr. Patten, which, as discussed above, falls under the quality management and peer review privileges.

The Wyoming mediation statute does not allow the sharing of documents in a mediation to operate as a waiver of applicable privileges. To the contrary, the statute states that communications "otherwise discoverable **prior to** the mediation," remain discoverable. W.S. §

1-43-103 (emphasis added).[3] There would be no need to carve out this exception if the sharing documents during mediation waived any claims of privilege. But even if the mediation privilege did not shield these documetns (which it does), the peer review or quality management privilege statutes do not allow for waiver. In fact, section 35-17-105 is clear, "no person . . . **shall be permitted** or required to testify" about the subject of professional standard review organizations. By contrast, other Wyoming statutes describe how and when privileges may be waived. For example, an attorney may testify about confidential communications, only when given "express consent" by the client. W.S. § 1-12-101; *see* Wyo. R. Prof. Conduct 1.6. (allowing waiver when the "client gives informed consent."); *Cooper v. State*, 2002 WY 78, ¶ 13, 46 P.3d 884, 889 (Wyo. 2002) (holding the language of section 33-38-113 required "express waiver" of the therapist privilege, and a patient's implied waiver did not waive the privilege). The peer review and quality management statutes have no analogous language allowing for waiver. This is likely because the privilege is intended to protect hospitals, patients, committee members and physicians. Allowing one group to unilaterally waive the privilege would compromise the interests of the others and could have a chilling effect on the process.

2. **WYOMING BOARD OF MEDICINE PRIVELEGE**

Homeland next seeks to compel Wyoming Board of Medicine documents, arguing that privilege is limited to documents in the Board's possession. To support this argument, Homeland creatively cites the statutory language, emphasizing the phrase "not subject to disclosure by the board." In fact, the statute makes clear that Wyoming Board of Medicine documents are also not "subject to discovery in any civil action." W.S. § 33-26-408 (f) ("The following documents are . . . not subject to disclosure by the board to any person or entity **nor**

---

[3] The statute defines communication broadly to include "any item of information disclosed during the mediation process through files . . . whether oral or written." W.S. § 1-43-101(a)(i).

**are they subject to discovery in any civil . . . action or admissible in any nonboard proceeding** . . . .") (emphasis added). Likewise, nothing in the statute states that relevant materials must be *only* in the Board's possession. Otherwise, the privilege would be toothless because some of the listed categories of materials, such as pleadings and correspondence, are by their very nature shared outside of the Board. *See* Exh. E, *Farnham v. Joubran,* No. 96509 (Wyo. 7th J. Dist., Jan. 18, 2016) ("There shall be no discovery of the information provided to the Wyoming Board of Medicine as it is confidential and privileged . . . .").

### 3. PROPOTIONALITY

Homeland is also critical of the Trustee's proportionality objections. Many of Homeland's document requests seek information about concerns raised to PVHC about care rendered to *any* of Dr. Hansen's patients, not just the underlying plaintiffs.[4] The Trustee objected to these requests as not proportional to the needs of the case because information about care rendered to *other* patients is completely irrelevant to the insurance exclusions at issue in this Action and involves the protected health information of individuals not involved in this litigation.

Homeland's prior knowledge exclusion only applies when an insured: (1) knows of an "act, error, omission or Wrongful Act" before the policy's inception date; (2) the insured can reasonably foresee that the "act, error, omission or Wrongful Act" will result in a claim; and (3) the denied claim is in fact "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving" the known "act, error, omission, or Wrongful Act." ECF # 1-1, Policy Part II, at ECF p.1. Information about care to *other* patients is irrelevant

---

[4] *See e.g.* Request No.8 (seeking "All document related to communications between any current or former Director of Risk Management . . . and any other person regarding Dr. Hansen); Request No. 13 (seeking "All documents related to any complaints or concerns made known to you regarding Dr. Hansen's abilities and/or competence as a surgeon and/or physician."); Request No. 34 ("Produce a copy of Dr. Hansen's personnel file and any other file pertaining to Dr. Hansen, including but not limited to, files which include any documentation of peer review, disciplinary action, and/or termination of his employment.").

because the underlying claims are not "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving" the potentially negligent care rendered to other individuals.  If the prior knowledge exclusion applied to claims brought by *any* patient based solely on the insured's pre-policy knowledge of deficient care rendered to a *different* patient, Homeland would have the ability to deny coverage to any doctor with a prior claims history, rending the policy illusory.  *See Century Surety Co. v. Jim Hipner, LLC,* 2016 WY 81, ¶ 20, 377 P.3d 784, 792 (Wyo. 2016) (holding that illusory coverage is against public policy).

In this case, the proportionality analysis also needs to factor in the burden of requiring the Trustee to produce the protected health information of individuals having nothing to do with this coverage dispute.  Under section 35-2-610, the Court would need to find that Homeland's interest in these materials outweighs the privacy interest of the disinterested patients.  Its unclear how the Court could reach that conclusion when PVHC's knowledge of a possible deficiency in the care to *other* patients has no bearing on the relevant insurance exclusions.

4. **SUFFICIENCY OF THE PRIVILEGE LOG**

Finally, Homeland objects to the sufficiency of the Trustee's privilege log.  Homeland did not confer about this objection, so it is unclear where Homeland would like more detail.  The Court should refuse to consider this issue until the parties have had an opportunity to confer in good faith.  U.S.D.C.L.R. 37.1 (b) ("[T]he Court will not entertain any motions relating to discovery disputes unless counsel for the moving party has first conferred orally. . . .").

### CONCLUSION

For all of these reasons, the Trustee respectfully requests that this Court deny Homeland's Motion to Compel.

DATED this 25th day of January, 2019.

                                                      _/s/ Robert A. Krause_

Robert A. Krause, WSB # 5-2824
Mel C. Orchard, III, WSB # 5-2894
Elizabeth A. Richards,WSB # 6-4249
Sarah A. Kellogg, WSB # 7-5355
THE SPENCE LAW FIRM, LLC
15 S Jackson Street, P.O. Box 548
Jackson, WY 83001
krause@spencelawyers.com,
orchard@spencelawyers.com
richards@spencelaywers.com
kellogg@spencelaywers.com
(307) 733-7290
(307) 733-5248 (fax)

Jon M. Moyers, WSB # 6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900
jon@jmoyerslaw.com
*Attorney for the Trustee*

Kathryn Kohn Troldahl, *pro hac vice*
KOHN LAW, P.A.
P.O. Box 390074
Minneapolis, MN 55439
kohnkathryn1@gmail.com
(612) 597-3899; (888) 519-3472 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing, Trustee's Response in Opposition to Homeland's Motion to Compel, upon the individual(s) listed below by the following means:

| | |
|---|---|
| Charles Spevacek<br>Tiffany Brown<br>cspevacek@meagher.com<br>tbrown@meagher.com<br>MEAGHER & GEER, PLLP<br>33 South Sixth Street<br>Suite 4400<br>Minneapolis, MN  55402 | [x] ECF |
| Judith Studer<br>jstuder@schwartzbon.com<br>SCHWARTZ BON WALKER & STUDER, LLC<br>141 South Center Street, Suite 500<br>Casper, WY  82601 | [x] ECF |
| R. Jeff Carlisle<br>jcarlisle@lynberg.com<br>Catherine A. Naltsas<br>cnaltsas@lynberg.com<br>Jerome P Doctors<br>jdoctors@lyndberg.com<br>LYNBERG & WATKINS, APC<br>888 South Figueroa Street, 16th Floor<br>Los Angeles, California 90012 | [x] ECF |
| Deborah M. Kellam<br>kellamd@hallevans.com<br>HALL & EVANS, LLC<br>2015 Central Avenue, Suite C<br>Cheyenne, WY 82001 | [x] ECF |

Dated this 25th day of January, 2019.

                                                             /s/ Robert A. Krause
                                                           *Attorney for the Trustee*