# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

FILED
DISTRICT OF WYOMING
U.S. DISTRICT COURT
APR 05 2019
U.S. MAGISTRATE JUDGE

HOMELAND INSURANCE COMPANY OF NEW YORK,

    Plaintiff,

v.

SCOTT J. GOLDSTEIN, *on behalf of* Powell Valley Healthcare Inc,

    Defendant,

AND

SCOTT J. GOLDSTEIN, *on behalf of* Powell Valley Healthcare Inc,

    Counter-Claimant,

v.

, HOMELAND INSURANCE COMPANY OF NEW YORK and LEXINGTON INSURANCE COMPANY,

    Counter-Defendants.

Case Number: 1:15-cv-00031-ABJ

## ORDER ON DEFENDANT'S MOTION TO COMPEL

This matter comes before this Court upon *Defendant's Motion to Compel* [Doc. 121]. Plaintiff Homeland Insurance Company of New York ("Homeland") brought the underlying case seeking a declaratory judgment as to its obligations under the insurance policy it issued to Defendant Powell Valley Healthcare ("Powell")[1] [Doc. 1 p. 2]. During the period in which Homeland insured Powell, Powell was sued multiple times for negligent care provided by its Dr.

---

[1] Following Powell's bankruptcy, Scott J. Goldstein became Powell's Personal Injury Trustee, and subsequently supplanted Powell as the party in this matter [Doc. 98].

1

Jeffrey Hansen ("Dr. Hansen"). *Id.* In January 2016, the case was bifurcated, with the first phase addressing the insurance coverage's scope and the second phase, if necessary, addressing bad faith [Doc. 57]. The facts of this case are complex and extensive and will not be set out herein. For purposes of this motion it is only significant that a dispute exists as to the applicability of the Homeland policy to certain malpractice claims related to Dr. Hansen which arose during the period of coverage for the Homeland policy.

Powell now moves to compel all underwriting files related to Homeland's Powell policy and the identify of those who drafted and underwrote it [Doc. 122]. In addition, Powell seeks the production of a privilege log identifying what specific underwriting documents Homeland is withholding. *Id.* The disputed requests are contained in Interrogatories 4 and 11, and Requests for Production 3, 9, 14, 16, and 22 [Doc. 123-1]. Homeland has refused to produce these documents and information, arguing Powell's requests are irrelevant to the first phase claims and that some of Powell's requests are not properly before the Court [Doc. 123].

### A. Standard of Review

The Federal Rules of Civil Procedure allow parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1).

Whether to permit discovery is "entrusted to the sound discretion of the trial courts." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) (internal quotation marks omitted). If a discovery request appears facially relevant, the burden is on the "resisting party to establish the

request is not relevant by showing the request (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery." *Sinclair Wyoming Ref. Co. v. A&B Builders, Ltd.*, 2017 WL 10309306, at *5 (D. Wyo. Oct. 31, 2017) (internal quotation marks omitted). Because this Court has diversity jurisdiction, Wyoming law applies to the underlying substantive issues. *Sanchez v. Home Depot, Inc.*, 2014 WL 2986672, at *2 (D. Wyo. July 2, 2014).

### B. Meet & Confer Requirements

Homeland claims Powell never conferred with them on their objections regarding Requests for Production ("RFPs") 14, 16 and 22 [Doc. 123 pp. 2-3]. According to Homeland, those RFPs were contained in Powell's second set of requests and were not discussed before filing this motion. *Id.* Powell has not challenged Homeland's characterization that the parties never conferred on Powell's objections to RFPs 14, 16, and 22.

This Court "will not entertain any motions relating to discovery disputes unless counsel for the moving party has first conferred." U.S.D.C.L.R. 37.1(b). Thus, the issue is not yet properly before this Court, and the Court will only consider Interrogatories 4 and 11, and Requests for Production 3 and 9. Should a dispute remain as to RFPs 14, 16 and 22, the parties are welcome to raise the issue at a telephonic status conference to the degree the objections are not resolved by this order.

### C. Discovery

In determining the appropriate scope of discovery under the current Rule 26(b)(1) the court must determine: (1) is the information privileged; (2) is it relevant to a claim or defense; and (3) is it proportional to the needs of the case. *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 402

3

(D. Wyo. 2017). Powell seeks the underwriting files related to Homeland's Powell policy and the identify of those who drafted and underwrote it [Doc. 122]. This information, which would elucidate the process by which Homeland prepared its Powell policy, is characterized by Powell as "critical to the coverage determinations and policy provisions at issue." *Id.* at 8. Homeland further claims these requests "may also be relevant to equitable considerations, such as estoppel" and "may support reformation of the policy to reflect the parties' intent pre-inception." *Id.* Finally, Powell believes that identifying the employees directly involved in formulating the Homeland policy, and identifying their notes and communications "may assist in determining whether there is an ambiguity ... may also contain information regarding the interpretation and constructions of the policy ... may bear on ambiguity of the policy, the parties' intent for coverage, and may support equitable relief." *Id.* at 8-10.

Powell cites numerous cases in which courts ordered the production of underwriting files in similar circumstances [Doc. 122 pp. 9-10]. However, every case cited relies on a previous version of Rule 26 that allowed for an arguably broader definition of relevancy – that requested discovery was "reasonably calculated to lead to the discovery of admissible evidence." In 2015, Rule 26.1 was amended, dropping the "reasonably calculated" language in favor of "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26, Adv. Comm. Notes, 2015 Amendments. The amendment to Rule 26 requires some reconsideration as to the guidance of the prior cases but does not render them irrelevant.

Powell correctly cites to Wyoming case law allowing for the introduction of extrinsic evidence to resolve such ambiguities [Doc. 122 p. 9]. But as Powell admits, "the question of whether the policy provisions are ambiguous has not been determined" in this case. *Id.* Under Wyoming law, when a contract's "provisions are clear and unambiguous, the examination is

4

confined to the 'four corners' of the document to construe the intent of the parties." *Prudential Preferred Properties v. J & J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993). When an insurance policy's language is unambiguous, "extrinsic evidence is not admitted to contradict the plain meaning." *Doctors' Co. v. Ins. Corp. of Am.*, 864 P.2d 1018, 1024 (Wyo. 1993).

Homeland objects to the discovery requests regarding underwriting on the grounds that such information is irrelevant to the determination of coverage. This position is supported by Homeland's citations to Wyoming law regarding contract interpretation, specifically that extrinsic evidence is not admissible when the contract is unambiguous. Since there has been no finding that the contract is ambiguous, any extrinsic evidence is not discoverable. In other words, no discovery of extrinsic information should be allowed until an ambiguity is identified.

### D. Law and Discussion

In Wyoming, insurance policies are treated under the same general rules as non-insurance contracts. *Albany County School Dist. No. 1*, 763 P.2d 1255, 1258 (Wyo.1988). Nevertheless, the unique nature of insurance contracts requires some modification of the interpretation process.

> This Court has historically applied certain parameters to interpret insurance policies. In *Doctors' Co. v. Ins. Corp. of America*, 864 P.2d 1018, 1023–24 (Wyo.1993), we explained that courts interpret insurance policies like other contracts but give the language the plain meaning a reasonable insured would understand it to mean.
>
>> Our established rules of contract interpretation apply to insurance policies. *[St. Paul Fire and Marine Ins. Co. v.]Albany County School Dist. No. 1*, 763 P.2d [1255] at 1258 [ (1988) ]; *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 31 (Wyo.1983). Interpretation is the process of ascertaining the meaning of the words used to express the intent of the parties. *Commercial Union Ins. Co. v. Stamper*, 732 P.2d 534, 539 (Wyo.1987); 4 Walter H.E. Jaeger, *Williston on Contracts* § 600A at 286 (3d. ed.1961). The intent of the parties is determined by considering the instrument which memorializes the agreement of the parties as a whole. *Klutznick v. Thulin*, 814 P.2d 1267, 1270 (Wyo.1991). **This court utilizes a standard of interpretation for insurance policies which**

5

> declares that the words used are given the plain meaning that a reasonable person, in the position of the insured, understands them to mean. *Worthington v. State*, 598 P.2d 796, 806 (Wyo.1979); *Wilson v. Hawkeye Casualty Co.*, 67 Wyo. 141, 215 P.2d 867, 873–74 (1950). *See also Abifadel v. Cigna Ins. Co.*, 8 Cal.App.4th 145, 9 Cal.Rptr.2d 910, 919 (1992).
>
> If the language is unambiguous, our examination is confined to the "four corners" of an integrated contract and [parol] evidence is not admitted to contradict the plain meaning. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo.1993). The language of an insurance policy is ambiguous if it is capable of more than one reasonable interpretation. *Helfand v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295, 299 (1992). Because insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer. *Albany County School Dist. No. 1*, 763 P.2d at 1258; 7 Walter H.E. Jaeger, *Williston on Contracts* § 900 at 19, 29 (3d ed.1963). However, the language will not be " 'tortured' " to create an ambiguity. *Stamper*, 732 P.2d at 539 (*quoting McKay v. Equitable Life Assur. Soc. of United States*, 421 P.2d 166, 168 (Wyo.1966)).
>
> *Id.* (emphasis added). *See also Kirkwood v. CUNA Mut. Ins. Soc'y*, 937 P.2d 206, 208 (Wyo.1997) (interpreting an unambiguous insurance policy in the context of a summary judgment by giving the words used the plain meaning that a reasonable person, in the position of the insured, would understand them to mean); *Gainsco Ins. Co. v. Amoco Prod. Co.*, 2002 WY 122, ¶ 47, 53 P.3d 1051, 1066 (Wyo.2002) (stating "[w]e interpret insurance policies just as we interpret other contracts, except that words used in an insurance policy are given the plain meaning that a person in the position of the insured would understand them to mean"). (emphasis in original)

*North Fork Land & Cattle, LLLP, v. First American Title Insurance* Company, 362 P.3d 341, 346-47 (Wyo. 2015).

Homeland insists that the underwriting process is irrelevant to the interpretation of the contract as all such information would be extrinsic evidence which is inadmissible since there is no ambiguity identified in the insurance contract. This argument fails in a number of respects. First of all, the Court is not addressing the issue of admissibility at this time, but rather discovery.

6

Homeland seems to equate admissibility with discoverability. In addition, Homeland fails to account for the fact that extrinsic evidence may be used by the court in reviewing a contract for ambiguities. This confusion is understandable as the Wyoming Supreme Court has often repeated the rule that extrinsic evidence is not admissible when the contract is unambiguous without addressing the role of such evidence in the determination of the existence of an ambiguity. *Doctor's Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1024 (Wyo. 1993); *Hatch v. State Farm Fire and Cas. Co.*, 930 P.2d 382, 389 (Wyo. 1997); *Wolter v. Equitable Resources Energy Co.*, 979 P.2d 948, 951 (Wyo. 1999); and *Martin v. Farmer Ins. Exchange*, 894 P.2d 618, 620 (Wyo. 1995). In other cases, the Wyoming Supreme Court has endorsed and even required a consideration of extrinsic evidence in circumstances where the contract appeared to be unambiguous on its face. In *Mullinnix LLC v. HKB Royalty Trust*, 126 P.3d 909 (Wyo. 2006) the court was reviewing a deed which used the term "oil rights". The court found that it was proper to consider extrinsic evidence in the process of interpreting a contract, even in the absence of an ambiguity.

> Thus, we continue to recognize the importance of allowing the use of extrinsic evidence to interpret a contract, including custom and usage in a particular place or trade at the time of execution of the contract, in order to arrive at the plain meaning of the agreement, with the goal of more closely effectuating the parties' true intent.

*Mullinnix* at 921.

In *Mathisen v. Thunder Basin Coal Co. LLC*, 169 P.3d 61, 65 (Wyo. 2007) the Wyoming Court stated the rule as:

> Whether a ambiguity exist, as a matter of law, is for the court to determine. In making this determination, the court may consider extrinsic evidence bearing upon the meaning of the written terms, such as evidence of local usage and of the circumstances surrounding the making of the contract. However, the court may not consider the parties own extrinsic expressions of intent.

7

This rule is not limited to Wyoming. For example see *National Union Fire Insurance Co. of Pittsburgh, PA v. Federal Insurance Co.*, 213 F.Supp.3d 1333, 1340 (D. Colo. 2016), "[c]ourts 'may consider extrinsic evidence regarding the meaning of the written terms, including evidence of local usage and of the circumstances surrounding the making of the contract" in order to determine whether a contract term is ambiguous. *Pub. Serv. Co. of Colo. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo. 2006).

This discussion is not to determine if this is a proper case for the application of the rule, but rather to point out that the circumstances and events surrounding the formation of the Homeland insurance policy is relevant to the issues presented in this Court. Powell is entitled to conduct discovery of those events so that it may prepare and present its position to the Court as to what if any extrinsic evidence should be considered by the Court. Its ultimate admissibility or consideration by the Court is unknown and cannot be known until the facts are discovered. The underwriting files are relevant to the issues presented in this case and as such are discoverable under Rule 26.

In addition, Powell seeks to conduct discovery as to a potential estoppel and reformation claims. Homeland responds that such claims have not been plead, and in doing so attempt to create a Catch 22[2] situation for Powell. Under the rules a party is subject to sanctions if it pleads claims based upon factual contentions without existing or likely evidentiary support. Fed. R. Civ. P. 11(b)(3). It is not uncommon, and in fact is anticipated, that as more information is obtained during discovery claims and defenses will be redefined. For that reasons liberal amendments of pleadings are allowed. Fed. R. Civ. P. 15(a)(2).

---

[2] This saying arises from Joseph Heller's classic WWII novel of the same name. "A problematic situation for which the only solution is denied by a circumstance inherent in the problem or by a rule." Merriam-Webster on-line dictionary 2019.

Homeland's own pleadings in this matter further demonstrate the relevance of the underwriting information. In its complaint Homeland asserts that the claims which arose during its policy period are "Related Claims" to claims arising prior to the Homeland policy and as such are excluded from coverage [Doc. 1 ¶ 39]. Homeland did not assert this defense initially and accepted a claim made by Susan Stambaugh [Doc. 1 ¶ 30]. Homeland asserts that only upon learning of prior claims did it deny coverage in September 2014 [Doc 1. ¶ 31]. This factual assertion addresses the knowledge of Homeland and potentially implicates the underwriting process and the very information Powell seeks in discovery.

Homeland does not assert that the information sought is privileged or that the scope of the request is not proportional to the needs of the case, but rather relies upon irrelevancy. The information Powell seeks has a sufficient probability of relevance as to fall with the proper scope of discovery pursuant to Rule 26. The sought materials encompass a relatively limited universe of documents and Homeland has made no argument that the act of producing it would be burdensome. Considering its Complaint, Homeland has no doubt already gathered and reviewed the documents. Given these factors and the courts predisposition to err on the side of more discovery, the Court orders Homeland to supplement their responses to RFPs 3 and 9 and Interrogatories 4 and 11. In addition, in so far as Homeland's objections are addressed by this order, Homeland should respond to RFPs 14, 16 and 22. If any disputes still remain unresolved in regard to RFDs 14, 16 and 22 the parties shall schedule a conference with Judge Carman as soon as practicable.

### D. Privilege Log

Powell seeks from Homeland a privilege log listing the specific documents withheld in response to RFPs 3 and 9 [Doc. 122 pp. 6-8]. RFP 3 seeks "complete correspondence, including

electronic documents, regarding any of the 'Underlying Claims' between officers or employees of Homeland which relate to any of the Underlying Claims or underwriting or coverage issues in this case" [Doc. 123-1]. RFP 9 seeks "all documents reviewed about the underwriting or issuance of the Primary Policy or Excess Policy by the persons" who participated in underwriting the Powell policy. *Id.*

Homeland "identified a limited number of withheld documents," but has declined to provide a full privilege log because it considers the requested documents to be irrelevant [Doc. 122 p. 6-8]. Homeland claims it will provide a full privilege log only if the Court deems the requested information relevant. *Id.* Because the Court has now found the requested information to be relevant and discoverable, Homeland is ordered to produce a full privilege log as to any documents which it contends are still not discoverable in light of this order.

Powell requests that the Court find that Homeland, by not producing a privilege log earlier, has waived their ability to object to any future production on privilege grounds [Doc. 122 pp 6-7]. From their briefing, Homeland genuinely seemed to believe a privilege log was not required if the withheld documents were irrelevant [Doc. 122 pp. 6-8]. With limited caselaw and briefing on the question of whether a privilege log is required under these circumstances, the Court will decline to take the extreme step of denying Homeland the right to claim further privilege.

### E. Conclusion

IT IS HEREBY ORDERED THAT:

1. Powell's Motion to compel is GRANTED
    A. Homeland is ordered to supplement their responses to RFPs 3 and 9 and Interrogatories 4 and 11 by April 19, 2019.
    B. Homeland is ordered to provide a privilege log by April 19, 2019.
    C. Should Homeland determine that this order does not resolve its objections to RFPs 14, 16 and 22, the parties are ordered to meet and confer, and if not resolved to contact Judge Carman to schedule a telephonic discovery conference.

Dated this 4th day of April 2019

_____
Mark L. Carman
United States Magistrate Judge