Jon M. Moyers, jon@jmoyerslaw.com, WSB # 6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900

Robert A. Krause, krause@spencelawyers.com, WSB # 5-2824
Mel C. Orchard, III, orchard@spencelawyers.com, WSB # 5-2894
Elizabeth A. Richards, richards@spencelaywers.com, WSB # 6-4249
Sarah A. Kellogg, kellogg@spencelaywers.com, WSB # 7-5355
THE SPENCE LAW FIRM, LLC
15 S Jackson Street, P.O. Box 548
Jackson, WY 83001
(307) 733-7290; (307) 733-5248 (fax)

Kathryn Kohn Troldahl, kohnkathryn1@gmail.com, *pro hac vice*
KOHN LAW, P.A.
P.O. Box 390074
Minneapolis, MN 55439
(612) 597-3899; (888) 519-3472 (fax)

*Attorneys for Scott J. Goldstein, Trustee*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, et al., <br><br> Defendants <br> v. <br><br> POWELL HOSPITAL DISTRICT, et al., <br><br> Plaintiffs. | Case No. 15-CV-31-J <br><br> **REPLY IN SUPPORT OF COUNTERCLAIMANT SCOTT J. GOLDSTEIN, THE PERSONAL INJURY TRUSTEE OF THE PERSONAL INJURY TRUST FOR POWELL VALLEY HEALTH CARE, INC.'S MOTION FOR LEAVE TO SUPPLEMENT OR, ALTERNATIVELY, AMEND COUNTERCLAIM AGAINST COUNTERCLAIM- DEFENDANT LEXINGTON INSURANCE COMPANY** |

Lexington Insurance Company ("Lexington") seeks to persuade the Court that allowing the Trustee to supplement the additional claims is untimely and futile, and that the Trustee

1

brought this motion in bad faith. As for timeliness, Lexington fails to appreciate that the Trustee is moving to supplement (not amend) the pleadings with after-acquired counterclaims because HealthTech Management Service, Inc.'s and William Patten's (collectively "HealthTech") damages did not accrue until HealthTech settled the Underlying Lawsuits in excess of $1,000,000. As to futility and bad faith, the plain language of PVHC's Modified Amended Chapter 11 Plan of Reorganization ("Plan") (ECF # 135-2) anticipates the entry of judgments against HealthTech and allows the Trustee to use the judgments "as allowed by law." Under well-established Wyoming law, the question of whether Lexington is "bound" by the judgments is irrelevant — HealthTech **is bound** by the judgments. Further, the self insured retention ("SIR") requirement of the HealthTech-Lexington policy does not render HealthTech's claims futile. Another federal court, interpreting a nearly identical Lexington policy, has held that only one SIR applies to multiple lawsuits against a hospital management company for mismanagement. The supplemental claims do not enlarge the issues to be litigated because the Court will be tasked with interpreting the exact same language that triggers coverage under the two Lexington policies issued to Powell Valley Health Care, Inc. ("PVHC"), which are already at issue in this case ("PVHC-Lexington policies").

## Facts

HealthTech contracted to provide management services to PVHC. William Patten was a HealthTech employee who served as the CEO of PVHC from February 2012 until April 2015. In sixteen of the Underlying Lawsuits, the plaintiffs alleged that HealthTech was liable for credentialing, hiring, supervising, monitoring, reviewing, and extending privileges to Dr. Hansen.

As Lexington has pointed out, in the Underlying Lawsuits and in this action, HealthTech has argued that it should not be liable for the injuries to the Underlying Plaintiffs because HealthTech was not charged with making medical decisions or credentialing medical staff at

PVHC. In practice, however, Mr. Patten served as an *ex officio* member of the Medical Executive Committee ("MEC"), the medical staff committee charged with overseeing quality management at PVHC. ECF # 124-1, Bylaws at ¶ 9.11.1. Nevertheless, HealthTech filed Rule 12(b)(6) motions for judgment on the pleadings in the Underlying Lawsuits, asking the state court to hold that HealthTech owed no duty to PVHC patients. When HealthTech's motions to dismiss were denied, HealthTech sought review by the Wyoming Supreme Court, which held that HealthTech could owe a duty of care to PVHC patients. Ex. A, HealthTech Petition for Writ of Review; Ex. B, Order Denying Petition for Review. Thus, HealthTech could be subject to liability for severe injuries to at least sixteen different individuals, requiring it to defend sixteen different lawsuits.

Although HealthTech was named as an additional insured on PVHC's insurance policies, HealthTech also had its own insurance policies issued by Lexington ("HealthTech-Lexington policy"). The Health Care Professional Liability portion of the HealthTech-Lexington policy is subject to an SIR of $1,000,000 for "each medical incident," which is "inclusive of defense cost." Ex. C, 2014 HealthTech Lexington Policy. Because HealthTech did not provide medical services directly to patients, the definitions of "medical incident" that apply to HealthTech is: "[s]ervices by any person as a member of a formal accreditation, standards review or similar professional board or committee of any insured" or "[s]upervising, teaching, proctoring others at your request." *Id.* at § I(o)(2)-(3).[1] Under this language, HealthTech's alleged mismanagement

---

[1] The policy defines "Medical Incident" as "any act, error or omission in the providing of or failure to provide professional services." Ex. C, HealthTech-Lexington Policy at I (j). "Professional Services" is defined as: "1. Medical, surgical, dental, nursing or other health care services including but not limited to the furnishing of food or beverages in connection with such services . . . . 2. Services by any person as a member of a formal accreditation, standards review or similar professional board or committee of any Insured; or 3. Supervising, teaching, proctoring others at your request." *Id.* at I(o).

3

of PVHC and Dr. Hansen was a single medical incident, meaning only one $1,000,000 SIR applies to all of the Underlying Lawsuits.

Fortunately, at the time Lexington was making its coverage decision, Lexington had clear legal guidance on this issue. Less than a year before the first Underlying Lawsuit was filed against HealthTech, in *CHC/Community Health Systems, Inc.*, *v. Lexington Ins. Co.*, Judge John T. Nixon from the Middle District of Tennessee interpreted a nearly identical Lexington policy issued to Quorum, a hospital management company. No. 3:11-CV-00449, 2013 WL 6500477 (Dec. 9, 2013 M.D. Tenn. 2013) (vacated for lack of diversity jurisdiction). In that case, Quorum was sued in seventy-one different lawsuits, alleging that it mismanaged a hospital. *Id.* at *1. Like the HealthTech-Lexington policy, Quorum's Lexington policy was subject to an SIR for each "medical incident." *Id.* at *2. Based on the same definition of "medical incident," Judge Nixon held that all seventy-one lawsuits alleged a **single medical incident** — i.e. the mismanagement of the hospital — **and only one SIR applied**. *Id.* at *11.

Armed with this legal guidance interpreting the meaning of the term "medical incident," Lexington denied coverage to HealthTech, instead taking the position that each Underlying Lawsuit was a separate "medical incident" and therefore HealthTech would have to satisfy a separate SIR in each case. *See* Ex. D, May 12, 2017 letter to Ramirez; Ex. E, Mar. 6, 2017 letter to Powers. Although Lexington was on notice of the claims against HealthTech, Lexington did not formally assert this coverage position until March 6, 2017 — nearly a year after the date to amend the pleadings in this case had expired. Ex. E, Mar. 6, 2017 letter to Powers.

After learning that Lexington would not fulfill its obligations under the HealthTech-Lexington policy, and that the Wyoming Supreme Court believed HealthTech could owe a duty of care to the Underlying Plaintiffs, HealthTech was forced to mitigate its risk. In August 2017,

HealthTech attended a global mediation. As a result of the mediation, HealthTech agreed to pay the Underlying Plaintiffs $127,500, to assign its claims against Lexington to the Trustee, and to have judgments entered against it, subject to a covenant not to execute. To avoid subsequent arguments that the judgments were collusive, HealthTech and the Underlying Plaintiffs agreed that the judgment amounts would be established through a binding mediation process with retired Judge William Downes. This agreement was incorporated in PVHC's Modified Amended Chapter 11 Plan of Reorganization ("Plan"). *See* ECF # 135-2 (Plan) at § 7.14. The Plan was clear that the entries of judgment against HealthTech could be enforced against the insurance companies. *Id.* ("Any judgment shall be enforceable only against available insurance coverage . . . .").

As discussed in Lexington's response, the Plan also incorporated Trust Distribution Procedures ("TDPs"), which outline the process for valuing the claims against PVHC. ECF # 135-3 (TDPs). Although the TDPs do not govern the HealthTech settlements, both the Plan and the TDPs included insurance "neutrality" language, which was negotiated to ensure that the bankruptcy court's approval of the Plan would not impact the parties' abilities to assert the same claims and defenses that would have been available, had the settlement been obtained outside of the bankruptcy court. ECF # 135-2 (Plan) at § 14.10; ECF # 135-3 (TDPs) at § 2.4. In other words, the neutrality provisions are clear that the insurance companies may continue to argue that their coverage position was reasonable or that the settlement values are unreasonable.[2]

---

[2] This is the understanding of the neutrality provision that was also articulated by Homeland's counsel Charles Spevacek, in an email that included Lexington's counsel, in the process of negotiating the neutrality language:

> What I envision . . . is each of the claims being assigned a value as a result of the TDPs, with the claimants. . . contending that because the insurers reserved rights, they cannot contend that these values were set in violation of policy

5

Following the Plan's confirmation, the Trustee and HealthTech set out to settle the Underlying Lawsuits and to reduce the settlements to judgments. The Trustee hired Judge Downes to serve as a mediator and invited the insurance companies, including Lexington, to submit materials to Judge Downes and participate in the mediation. Ex. F, Downes Decision Letter (noting that the insurance companies "were given copies of the claimant's submissions and invited to submit statements and other information . . . . no substantive responses were received from these carriers."). The insurance companies chose not to participate in the mediation process. Nevertheless, the Trustee hired independent counsel to defend the claims and Judge Downes had the opportunity to question the claimants and review pertinent materials, such as medical records and expert reports. ECF # 135-5 (Downes Letter).

After Judge Downes valued the claims, the Trustee moved the bankruptcy court under Federal Rule of Bankruptcy Procedure 9019, to approve the settlement of the Underlying Lawsuits for the amount of Judge Downes' valuations. Ex. G, Barnkr. ECF # 916. Lexington participated in the drafting of the proposed 9019 order. Ex. I, Bankr. ECF # 918. Following the entry of the 9019 order, HealthTech, Dr. Hansen, the Trustee (on behalf of the PVHC), and the Underlying Plaintiffs agreed to stipulated motions to enter judgments in the Underlying Lawsuits. ECF # 135-12 (Stip. Motions). The Trustee served stipulated motions on the parties to the Underlying Lawsuits on January 8, 2019. On January 16, 2019, the Trustee notified Lexington

---

conditions . . . . The insurers, then, would be allowed to respond, in accordance with the same Wyoming law, that there is no coverage for these claims; and . . . the values presented are not reasonable. <u>With the one addition being that these values will not be given deference as to their reasonableness in the District Court just because they were determined in a procedure approved by the Bankruptcy Court. Reasonableness would be determined in the same manner as if the values were set by a settlement agreement between the insureds . . . had there been no bankruptcy proceedings.</u>

Ex. H, Nov. 16, 2017 Email (emphasis added).

of the pending motions.  *Id.*  Lexington did not intervene in the state court to challenge the reasonableness of the judgments in the Underlying Lawsuits.  Without holding any proceedings, the state court entered judgments in the Underlying Lawsuits in the amount of Judge Downes' valuation.  ECF # 135-13 (Judgments).

After the state court entered the judgments, the Trustee sought coverage under the HealthTech-Lexington policy.  On February 25, 2019, Lexington once again denied coverage and again asserted its position that the Underlying Lawsuits were each subject to a separate SIR.  Ex. J, Feb. 25, 2019 Letter.

## Legal Analysis

Set in this context, Lexington's legal arguments are unpersuasive.  **First**, Lexington's argument that the Trustee and/or HealthTech acted in bad faith by obtaining judgments in the Underlying Lawsuits ignores clear language stating that HealthTech "**shall agree to entry of a judgment** with a covenant not to execute."  ECF # 135-2 (Plan), at § 7.14.  **Second,** Lexington's argument that the claims are rendered futile by the cooperation and SIR provisions in the HealthTech-Lexington policy and because the values are unreasonable, twists the policy language and seeks to have the Court improperly decide the disputed factual issues.  **Third,** the Trustee's request is timely because damages did not accrue on HealthTech's breach of contract or bad faith claims until the judgments in excess of the $1,000,000 SIR were entered against HealthTech in January 2019.  **Finally**, the practical effect of denying the Trustee leave to supplement will be a second action, and given that the Court will have to interpret the same definition of "medical incident" under the PVHC-Lexington policies, it will be more efficient and economical for the Court to address these claims in one action where it is already interpreting identical language.

1. **Bad Faith: The neutrality provisions do not alter the rights otherwise available to**

**the parties under Wyoming law, such as HealthTech's right to settle the Underlying Lawsuits and seek coverage for the judgments entered against it.**

Lexington argues that this Motion is brought in bad faith because the Plan does not allow for the entry of judgments against HealthTech based on Judge Downes' valuation, and because it violates the Plan's neutrality and notice provisions. ECF # 134 (Lex Resp.) at 10 (citing *Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1383 (10th Cir. 1988) and describing "bad faith" as "more than . . . a weak or legally inadequate case, and more than a finding of negligence, frivolity, or improvidence."). These arguments ignore the plain language of the Plan.

As to Lexington's argument that the Plan does not anticipate judgments against HealthTech based on Judge Downes' valuations, the Plan explicitly states:

> [T]he HTMS Settling Parties [i.e. HealthTech and Patten] **shall agree to entry of a judgment** with a covenant not to execute or enforce against the HTMS Settling Parties. Any judgment shall be enforceable only against available insurance coverage.

ECF # 135-2 (Plan), at § 7.14. Under well-established Wyoming law, when an insurer reserves its rights or denies coverage, the insured is entitled to protect its interest by settling the claims against it. *Gainsco Ins. Co. v. Amoco Production Co.*, 2002 WY 122, 53 P.3d 1051 (Wyo. 2002). A judgment reached through a settlement (or to use the words of Lexington, an "unlitigated mediation process") is sufficient to establish damages and there is no requirement for due process or cross-examination to reach the settlement value. *Id.* at ¶ 26 ("Public policy favors this result in that it allows an insured to reach a reasonable settlement of a case being defended under a reservation of rights . . . ."). Just as anticipated by the Plan, this is the process that HealthTech followed.

After asserting, "HealthTech and Patten were not subject to the Bankruptcy TDPs" (ECF # 134, at 16), Lexington next relies on language in the TDPs for its position that Judge Downes' valuations were explicitly not intended to bind the insurance companies. The relevant language

is clear that the intent is not to alter the rights otherwise available to the parties under Wyoming law:

> (1) . . . the Claim values determined through the TDPs shall not be binding on the Insurance Companies; (2) the Insurance Companies remain free to challenge the reasonableness of any claim values determined through the TDPs; and (3) no deference shall be given in the Declaratory Judgment Action to the Claim values determined through the TDPs because the claim values were determined and the TDPs were approved by the Bankruptcy Court — **said Claim values may be used and disputed in the Declaratory Judgment Action by any party as allowed by law**.

ECF # 135-3 (TDPs) at § 2.4 (emphasis added). Nor does anything in the Plan's neutrality provision prohibit the Trustee from relying on the judgments entered against HealthTech. *See* ECF #135-2 (Plan) at § 14.19 (stating that nothing in the neutrality clause should "be deemed to alter or impair the legal, equitable or contractual rights, duties or obligations under the Insurance policies, or otherwise affect in any way, the claims or defenses that may be asserted by an insured . . . ."). Contrary to Lexington's position, the Trustee is not asking this Court to give "deference" to the bankruptcy court's approval of the mediation process or approval of the settlements under Bankruptcy Rule of Procedure 9019. Nor is the Trustee asking the Court to "bind" Lexington to a finding of reasonableness. But because HealthTech **is bound** by the judgments against it, under Wyoming law, Lexington will have to show that the judgments are unreasonable.

Finally, after asserting that HealthTech was not subject to the TDPs, Lexington argues that the judgments violate the TDP's notice provision, which requires the Trustee to "give all Insurers reasonable prior notice of any hearings relating to any motions to compromise and settle under Rule 9019, and to **any proceedings** in which judgments in state court shall be obtained." ECF # 135-3 (TDPs) at § 2.3 (emphasis added). Notably, Lexington cannot point to any language in the Plan requiring HealthTech to give notice before agreeing to an entry of judgment

— the notice provision in the TDPs only relates to the settlement of the claims against PVHC. Nevertheless, the Trustee gave notice of the 9019 motions in the bankruptcy court, which sought the court's approval of the claims against PVHC, and in fact, Lexington participated in the drafting of the proposed 9019 order.  Ex. I, Bankr. ECF # 918.

As for notice relating to the entries of judgment in the state court, the TDPS only require the Trustee to give Lexington notice of "proceedings" in the state court.  The state court did not schedule any proceedings on the stipulated motions for judgment. Notwithstanding this fact, the Trustee promptly sent Lexington copies of the stipulated motions and judgments, explicitly stating "[T]he Trustee is not aware of any proceedings scheduled on the Filings as of the date of this letter . . . . Please note, the State Court can enter judgments on the Initial Actions at any time. The Trustee will be filing stipulations for judgment and proposed judgments for the Additional Actions shortly."  ECF # 135-12 (Jan. 16, 2019 Letter).  Despite Lexington's purported due process concerns, Lexington has taken no action in the state court challenging the judgments in the Underlying Lawsuits as of the date of this pleading.

Lexington's allegation that the Trustee acted covertly to obtain judgments in the Underlying Lawsuits without notice and in violation of the Plan is fiction, and rings particularly hollow considering Lexington's notice that HealthTech and Patten agreed to the entry of judgments in the Underlying Lawsuits as early January 24, 2018 — almost an entire year before the state court entered the judgments in the Underlying Lawsuits — when the bankruptcy court confirmed the Plan.  *See* ECF # 135-2 (Plan), at § 7.14 ("With respect to [among other actions, the Underlying Lawsuits], the HTMS Settling Parties shall agree to entry of a judgment with a covenant not to execute or enforce against the HTMS Settling Parties. Any judgment shall be enforceable only against available insurance coverage relating to the Insurance Policies.").  For

all of the reasons addressed herein, nothing about the Trustee's reliance on stipulated judgments supports Lexington's position that the Trustee brings this Motion in bad faith.

2. **Futility**:  **The cooperation clause and SIR provisions do not render the supplemental claims futile, and the issue of reasonableness is a disputed factual question that the Court should not reach on this Motion.**

Lexington also argues that supplementing the pleadings would be futile because: (1) the claims are barred by the policy's SIR and cooperation clause; and (2) the settlement amount is unreasonable.  Like a motion to amend, a motion to supplement may be denied if a claim is futile. *See Sanchez v. United States Dep't of Energy*, 870 F.3d 1185, 1194 (10th Cir. 2017).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Full Life Hospice, LLC v. Sebeluis,* 709 F.3d 1012, 1018 (10th Cir. 2013).  "[I]n general, factual disputes cannot be decided on the pleadings in the context of a motion to amend." *Kaiser-Francis Oil CO. v. Noble Casing, Inc.,* No. 16-CV-309-S, 2017 WL 3480260, *2 (D. Wyo. Apr. 25, 2017); *Black Card, LLC v. VISA U.S.A., Inc.*, No. 15-CV-027-S, 2016 WL 7325664, at *3 (D. Wyo. Nov. 3, 2016) ("[W]hen viewing a motion to amend in light of the liberal rules regarding amendments of complaints, factual disputes cannot typically be decided on the pleadings, and are improper to address in the context of a motion to amend."); *Wolf v. Indian Motorcycle Co.*, No. 12-CV-229-J, 2014 WL 12634349, at *3 (D. Wyo. May 16, 2014) (holding that arguments based on factual disputes "would be more efficiently raised in a separate dispositive motion rather than indirectly under Rule 15(a) . . . .")

Without citing any case law, Lexington argues that supplementation would be futile under the cooperation clause and the SIR provision of the HealthTech-Lexington Policy.  As to Lexington's position that the judgments violate the cooperation clause, the Wyoming Supreme Court has been clear the "insured does not violate the cooperation clause of an insurance policy" by settling a claim when the insurer denies coverage or reserves its rights. *Gainsco Ins. Co.*,

11

2002 WY at ¶ 53, 53 P.3d at 1067; *see Insurance Co. of N. Amer. v. Spangler,* 881 F.Supp. 539, 545 (D. Wyo. 1995). With respect to the SIR requirement, per *CHC/Community Health Systems, Inc.* all sixteen cases against HealthTech are a single "medical incident," subject to a single SIR of $1,000,000. No. 3:11-CV-00449, 2013 WL 6500477, * 11. Further, the fact that HealthTech did not actually pay all of the judgments (but did pay $127,500) does not violate the SIR provision. The *Gainsco* Court held:

> The damage element of the tort of third-party bad faith against an insurer for failing to settle a claim may be satisfied despite the inclusion in a settlement between the insured and the claimant of the claimant's covenant not to execute against the insured. **This is true even with language in the policy that limits coverage to sums that the insured becomes legally obligated to pay**.

2002 WY at ¶ 89, 53 P.3d at 1078 (emphasis added).

Lexington also argues that supplementing the pleadings would be futile because the judgments are unreasonable in their amount and because they were unapportioned. Lexington has not cited, and the Trustee cannot find, a case that requires a stipulated judgment to be apportioned or that holds that a settlement found unreasonable, could not be retroactively adjusted to an amount that the fact finder believes is reasonable. Lexington makes this assertion without even considering the scope of the injuries alleged by the Underlying Plaintiffs or the conduct allegedly giving rise to HealthTech's liability. *See Gainsco,* 2002 WY at ¶ 70, 53 P.3d at 1071 (holding that a settlement is reasonable if "a reasonably prudent person in the position of the insured, under all of the relevant circumstances, would have settled on those terms."). Instead, Lexington urges the Court to find that HealthTech's "admission" that it did not "take on responsibilities for matters requiring professional medical judgment," and the fact that the judgments are unapportioned, renders the judgment amounts unreasonable. Lexington overlooks the holding of the Wyoming Supreme Court that HealthTech could owe a duty to PVHC patients — a holding that created significant risk to HealthTech.

But most importantly, for purposes of this Motion, to determine if the amendment is futile, the Court should not decide the merits of the reasonableness argument, which relies on disputed issues of fact. The Trustee satisfied the pleading standard by alleging that the settlement amounts were reached through a mediation, with a neutral mediator determining the settlement amount, which Lexington was invited to attend. ECF # 127-1 (Supp. Pleading), at ¶¶ 19-24.

3. **Timeliness:** **The request to supplement is timely because HealthTech did not incur damages until the judgments were entered.**

Lexington also argues that the Trustee's motion is untimely. Lexington fails to appreciate the difference between a motion to amend (Rule 15(a)) and a motion to supplement (Rule 15(d)) with after acquired counter-claims. HealthTech did not have claims against Lexington until it learned Lexington's position that HealthTech satisfy sixteen different $1,000,000 SIR payments. Ex. E, Mar. 6, 2017 letter to Powers. At that time, HealthTech had no damages because it had not yet incurred defense costs or judgments in excess of $1,000,000. In fact, Judge Downes could have held that the Underlying Lawsuits were valued at less than $1,000,000, in which case, the Trustee would not have had a claim under the HealthTech-Lexington policy. HealthTech's damage claim was completed on January 16, 2019, when judgments totaling more than $1,000,000 were entered against HealthTech. *See Gainsco Ins. Co.,* 2002 WY 122, ¶ 16, 53 P.3d at 1059 ("Wyoming has recognized as a basic premise that no third-party bad faith cause of action for failure to settle will accrue against an insurer until entry of a judgment against the insured in excess of policy limits."). HealthTech then gave Lexington an opportunity to pay the judgments (ECF # 135-12, Jan. 15, 2019 Letter), and upon learning on February 25, 2019 that Lexington would not satisfy the judgments, the Trustee promptly moved

to supplement the claims. The Scheduling Order provides no deadline for supplementing claims and even if it did, there is no undue delay under these facts.

4. **Prejudice: The supplemental claims do not enlarge the issues to be litigated because PVHC-Lexington policies require the Court to interpret the same policy language.**

Finally, Lexington argues that it will be prejudiced if the Trustee is allowed to supplement the pleadings because it will have to undertake additional discovery and defend the claims. Lexington fails to acknowledge that the central legal question presented by HealthTech's claims against Lexington (i.e. whether multiple claims against HealthTech constitute on "medical incident") is nearly identical to the question that will be raised under the PVHC-Lexington policies already at issue in this case.

The PVHC-Lexington policies are claims-made healthcare professional liability policies that expired on August 1, 2013. Ex. K, PVHC-Lexington Underlying Policy; Ex. L, PVHC-Lexington Excess Policy. Although the Trustee does not dispute that Underlying Lawsuits are claims made outside of the PVHC-Lexington policy period, the PVHC-Lexington policies consider "any" claims arising from one "medical incident" to be made at the time when notice of that medical incident was first given to Lexington by the insured, even if the claims are eventually made after the Lexington policy period.[3] *Id.* at V(C). To that end, notice of the "medical incident" giving rise to the Underlying Lawsuits was given to Lexington during the PVHC-Lexington policy period, when the Durose family made claims to the Wyoming Medical

---

[3]     The policy states: "If during the policy period, the First Named Insured shall become aware of any medical incident which may reasonably be expected to give rise to a claim . . . the First Named Insured must notify us in writing as soon as practicable . . . . Any claim arising out of such medical incident which is subsequently made against any Insured . . . shall be considered first made at the time such notice was given to us." Ex. K, PVHC-Lexington Underlying Policy*,* at V(C).

Review Panel, that PVHC negligently hired, credentialed, and supervised Dr. Hansen during the PVHC-Lexington policy period.

Given the similarities between the PVHC-Lexington and HealthTech-Lexington policies, it is not clear what additional discovery Lexington believes would be necessary or how it would be prejudiced by inclusion of the HealthTech-Lexington policy.  Furthermore, no depositions have been taken in this case and discovery is stayed pending rulings on the motions to compel. The bottom line is that the denial of this Motion will result in a second action against Lexington, which would risk inconsistent rulings on the meaning of "medical incident" and create the need for the Court and the parties to duplicate time, money and effort.

## Conclusion

For all of these reasons, the Trustee respectfully requests that this Court grant leave for the Trustee to supplement his claims against Lexington.

DATED this 9th day of April, 2019.

  /s/ Robert A. Krause           
Robert A. Krause, WSB # 5-2824
Mel C. Orchard, III, WSB # 5-2894
Elizabeth A. Richards, WSB # 6-4249
Sarah A. Kellogg, WSB # 7-5355
THE SPENCE LAW FIRM, LLC
15 S Jackson Street, P.O. Box 548
Jackson, WY 83001
krause@spencelawyers.com,
orchard@spencelawyers.com
richards@spencelaywers.com
kellogg@spencelaywers.com
(307) 733-7290
(307) 733-5248 (fax)

Jon M. Moyers, WSB # 6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
jon@jmoyerslaw.com
(406) 655-4900

                Kathryn Kohn Troldahl, *pro hac vice*
                KOHN LAW, P.A.
                P.O. Box 390074
                Minneapolis, MN 55439
                kohnkathryn1@gmail.com
                (612) 597-3899
                (888) 519-3472 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing, Trustee's Reply in Support of Motion for Leave to Supplement or Amend Counterclaim against Lexington Insurance Company, upon the individual(s) listed below by the following means:

| | |
|---|---|
| Charles Spevacek<br>Tiffany Brown<br>cspevacek@meagher.com<br>tbrown@meagher.com<br>MEAGHER & GEER, PLLP<br>33 South Sixth Street<br>Suite 4400<br>Minneapolis, MN 55402 | [x] ECF |
| Judith Studer<br>jstuder@schwartzbon.com<br>SCHWARTZ BON WALKER & STUDER, LLC<br>141 South Center Street, Suite 500<br>Casper, WY 82601 | [x] ECF |
| R. Jeff Carlisle<br>jcarlisle@lynberg.com<br>Catherine A. Naltsas<br>cnaltsas@lynberg.com<br>Jerome P Doctors<br>jdoctors@lyndberg.com<br>LYNBERG & WATKINS, APC<br>888 South Figueroa Street, 16th Floor<br>Los Angeles, California 90012 | [x] ECF |
| Deborah M. Kellam<br>kellamd@hallevans.com<br>HALL & EVANS, LLC<br>2015 Central Avenue, Suite C<br>Cheyenne, WY 82001 | [x] ECF |

Dated this 9th day of April, 2019.

                                            /s/ Robert A. Krause
                                            *Attorney for the Trustee*