Robert A. Krause (WSB # 5-2824)
krause@spencelawyers.com
Mel C. Orchard, III (WSB # 5-2894)
orchard@spencelawyers.com
Elizabeth A. Richards (WSB # 6-4249)
richards@spencelawyers.com
Sarah A. Kellogg (WSB # 7-5355)
kellogg@spencelawyers.com
THE SPENCE LAW FIRM, LLC
15 S Jackson Street, P.O. Box 548
Jackson, WY 83001
(307) 733-7290; (307) 733-5248 (fax)


Jon M. Moyers (WSB # 6-3661)
jon@jmoyerslaw.com
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900


Kathryn Kohn Troldahl (*pro hac vice*)
kohnkathryn1@gmail.com
KOHN LAW, P.A.
P.O. Box 390074
Minneapolis, MN 55439
(612) 597-3899; (888) 519-3472 (fax)

*Attorneys for Scott J. Goldstein, Personal Injury Trustee for the Personal Injury Trust of Powell Valley Health Care, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, et. al., | ) ) ) | Case No.  15-CV-31-J |
| Plaintiff, | ) ) ) | **TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE APPLICATION OF HOMELAND INSURANCE COMPANY OF NEW YORK'S PRIOR KNOWLEDGE EXCLUSION TO THE SNELL, OLIVER, JOHNSON, SOMMERVILLE, AND STAMBAUGH CLAIMS** |
| vs. | ) ) ) | |
| SCOTT J. GOLDSTEIN, PERSONAL INJURY TRUSTEE FOR THE PERSONAL INJURY TRUST OF POWELL VALLEY HEALTH CARE, INC. et al., | ) ) ) ) ) | |
| Defendants, | ) ) | |

TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................... 1

II.  UNDISPUTED MATERIAL FACTS ................................................................................. 3

   A.  Snell, Oliver, Johnson, Sommerville, and Stambaugh Underwent Different Surgical
   Procedures Occurring Primarily Between December 2008 and September 2012. ..................... 4

   B.  Citing Concerns Raised Prior to August 1, 2013, by Mr. Mangum and Mr. Wilson about
   Dr. Hansen's Competence, Homeland Reserved its Rights Under the Prior Knowledge
   Exclusion................................................................................................................................. 5

   C.  Mr. Mangum's and Mr. Wilson's Testimony Do not Support the Application of the Prior
   Knowledge Exclusion to the Underlying Claims...................................................................... 6

      1.  Mr. Mangum's Testimony ............................................................................................ 7

      2.  Mr. Wilson's Testimony ............................................................................................... 8

III.  LEGAL STANDARDS ..................................................................................................... 10

   A.  Summary Judgment Standards ......................................................................................... 10

   B.  Standards Governing Insurance Policies .......................................................................... 11

IV.  ARGUMENT .................................................................................................................... 12

   A.  The Wilson and Mangum Testimony Does not Demonstrate that PVHC had Knowledge
   of any Act, Error, Omission, or Wrongful Act Giving Rise to the Underlying Claims ........... 13

   B.  The Underlying Claims Were not Reasonably Foreseeable to PVHC Prior to August 1,
   2013 Because PVHC Did not Know the Facts of the Underlying Malpractice....................... 15

V.  CONCLUSION ................................................................................................................. 17

TABLE OF AUTHORITIES

*Beavis v. Campbell County Memorial Hosp.*,
  2001 WY 32, 20 P.3d 508 (Wyo. 2001) ........................................................................ 15

*Carolina Casualty Insurance Company v. Burlington Insurance Company*,
  No. 17-CV-20-F, 2018 WL 8131680 (D. Wyo. May 11, 2018), *amended*, No. 17-CV-20-
  F, 2018 WL 8131679 (D. Wyo. Aug. 31, 2018), *judgment corrected*, No. 17-CV-20-F,
  2018 WL 8131678 (D. Wyo. Oct. 31, 2018) ................................................................... 11

*Century Surety Company v. Jim Hipner, LLC*,
  2016 WY 81, 377 P.3d 784 (Wyo. 2016) ........................................................................ 12

*Cohen-Esrey Real Estate Services, Inc. v. Twin City Fire Insurance Company*,
  636 F.3d 1300 (10th Cir. 2011) ................................................................................... 15-16

*Cooperman v. David*,
  214 F.3d 1162 (10th Cir. 2000) ...................................................................................... 11

*Daniels v. Kerr McGee Coal Corporation*,
  841 F. Supp. 1133 (D. Wyo. 1993) ................................................................................. 11

*Doctors' Company v. Insurance Corporation of America*,
  864 P.2d 1018 (Wyo. 1993) ......................................................................................... 11-12

*Elworthy v. First Tennessee Bank*,
  2017 WY 33, 391 P.3d 1113 (Wyo. 2017) ...................................................................... 11

*Hursh Agency, Inc. v. Wigwam Homes, Inc.*,
  664 P.2d 27 (Wyo. 1983) ............................................................................................. 11-12

*Hurst v. Metropolitan Property & Casualty Insurance Company*,
  2017 WY 104, 401 P.3d 891 (Wyo. 2017) ...................................................................... 11

*National Union Fire Company of Pittsburgh, PA. v. Toland*,
  164 F.Supp.3d 1330 (D. Wyo. 2016) .............................................................................. 10

*OneBeacon Insurance Company v. T. Wade Welch & Associates*,
  841 F.3d 669 (5th Cir. 2016) ..................................................................................... 16-17

*Reichert v. Daugherty*,
  2018 WY 103, 425 P.3d 990 (Wyo. 2018) ...................................................................... 12

*Sinclair Oil Corporation v. Republic Insurance Company*,
  929 P.2d 535 (Wyo. 1996) .............................................................................................. 11

*T.M. ex rel. Cox v. Executive Risk Indemnity Inc.,*
    2002 WY 179, 59 P.3d 721 (Wyo. 2002) ....................................................................... 12

Fed. R. Civ. P. 56 ............................................................................................................. 10

APPENDIX TABLE OF CONTENTS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Complaint, *Oliver v. HealthTech Management Services, Inc., et al.,* Civ. No. 28035 (Wyo. Dist. Ct. 5th Jud. Dist. filed May 4, 2015) |
| B | First Amended Complaint, *Snell v. HealthTech Management Services, Inc., et al.,* Civ. No. 27805 (Wyo. Dist. Ct. 5th Jud. Dist. filed Sept. 12, 2014) |
| C | First Amended Complaint, *Sommerville v. HealthTech Management Services, Inc., et al.,* Civ. No. 27813 (Wyo. Dist. Ct. 5th Jud. Dist. filed Sept. 22, 2014) |
| D | Complaints, *Stambaugh v. Hansen, et al.,* Civ. No. 27818 (Wyo. Dist. Ct. 5th J. Dist. filed Sept. 26, 2014) and *Stambaugh v. HealthTech Management Services, Inc., et al.,* Civ. No. 27758 (Wyo. Dist. Ct. 5th J. Dist. filed Aug. 5, 2014) |
| E | First amended Complaint, *Johnson v. HealthTech Management Services, Inc., et al.,* Civ. No. 27821 (Wyo. Dist. Ct. 5th Jud. Dist. filed Sept. 29, 2014) |
| F | Sept. 26, 2014 Coverage Letter |
| G | Homeland Answer to Powell Hospital District, Powell Valley Health Care, Inc. and Jeffrey Hansen, M.D.'s First Interrogatories |
| H | Excerpts from the deposition testimony of Brad Mangum, taken in *Durose v. Powell Valley Healthcare, Inc.,* Civ. No. 13-Cv-216-S (D. Wyo.) - page: 28, 51-53, 79, 87-90, 135-140, 165, 167 [Filed under seal as set forth in the Protective Order, ECF # 64] |
| I | Exhibit 4 to Mangum Deposition [Filed under seal as set forth in the Protective Order, ECF # 64] |
| J | Exhibit 5 to Mangum Deposition [Filed under seal as set forth in the Protective Order, ECF # 64] |
| K | Exhibit 8 to Mangum Deposition [Filed under seal as set forth in the Protective Order, ECF # 64] |
| L | Exhibit 9 to Mangum Deposition [Filed under seal as set forth in the Protective Order, ECF # 64] |
| M | Excerpts from the deposition testimony of Scott Wilson, taken in *Harris v. Hansen,* Civil No. 27038 (Wyo. 5th Jud. Dist.) - pages: 61-82 |
|   | *Carolina Casualty Insurance Company v. Burlington Insurance Company,* No. 17-CV-20-F, 2018 WL 8131680 (D. Wyo. May 11, 2018) |

COMES NOW, Scott Goldstein, Personal Injury Trustee for the Personal Injury Trust for Powell Valley Health Care, Inc. ("Trust" and "Trustee"), and hereby moves for Partial Summary Judgment on the Application of Homeland Insurance Company of New York's Prior Knowledge Exclusion to the Snell, Oliver, Johnson, Sommerville, and Stambaugh claims.

## I. Introduction

Powell Valley Health Care, Inc. ("PVHC") is a rural hospital located in Powell, Wyoming. For the policy year of August 1, 2013 to August 1, 2014, PVHC purchased professional liability coverage from Homeland Insurance Company of New York ("Homeland"). At the time Homeland bound coverage for PVHC, it knew that Dr. Jeffrey Hansen, an orthopedic surgeon employed by PVHC, had a claims history.[1]  Nevertheless, Homeland sold PVHC primary and excess claims made professional liability policies with limits of $3,000,000 and $12,000,000 respectively, and included Dr. Hansen as a named insured under both policies. In other words, PVHC and Homeland both anticipated the possibility of $15,000,000 of risk — and PVHC dutifully paid the policy premiums to cover that risk. But when the risk came to pass, Homeland did not hold up its end of the bargain.

During the Homeland policy year, PVHC notified Homeland of the Snell, Oliver, Johnson, Sommerville, and Stambaugh claims ("Underlying Claims"). Then, in the fall of 2014, relying in part on its prior knowledge exclusion,[2] Homeland reserved its rights and refused to indemnify PVHC for these claims. The sole basis asserted by Homeland for its application of

---

[1]    PVHC provided its loss runs to Homeland as part of the insurance application process, which identified at least two current claims that involved Dr. Hansen.

[2]    Homeland also argued that the Underlying Claims are "related" to two cases filed against Dr. Hansen and PVHC prior to the inception of the Homeland policy, and are therefore deemed made at the time those claims were made. This Motion does not address Homeland's "related claims" argument.

the prior knowledge exclusion is the testimony of two witnesses who were deposed in *Harris v. Hansen,* Civil No. 27038 (Wyo. 5th Jud. Dist.) and *Durose v. Powell Valley Healthcare, Inc.*, Civ. No. 13-Cv-216-S (D. Wyo.), two medical malpractice cases covered by PVHC's prior insurer.  The witnesses, Brad Mangum, a nurse practitioner, and Scott Wilson, a physician assistant, testified that prior to August 1, 2013, they told PVHC of certain deficiencies in Dr. Hansen's practice.  Citing to this testimony — the contents of which is undisputed — Homeland asserts that PVHC's prior knowledge of its own negligent retention of Dr. Hansen, excludes coverage for all future negligent hiring, credentialing, supervision claims involving Dr. Hansen. This argument ignores the plain language of Homeland's prior knowledge exclusion and glosses over the facts of the Underlying Claims.

To succeed on it prior knowledge defense, it is Homeland's burden to show that prior to inception of its policy: (1) PVHC knew of an "act, error, omission or **Wrongful Act**"; (2) PVHC "reasonably could have foreseen that *such* act, error, omission, or **Wrongful Act** might result in a **Claim**"; and (3) that the Underlying Claims arise from the very same "act, error, omission or **Wrongful Act**".  Homeland cannot meet that burden by relying on the Wilson and Mangum testimony.  First, the Underlying Claims do not arise from the concerns voiced by Mr. Wilson or Mr. Mangum.  Mr. Mangum raised concerns about PVHC's retention of Dr. Hansen long after the Snell, Oliver, Johnson, Sommerville and Stambaugh negligent surgeries occurred, and thus Mr. Mangum's concerns are not the basis for the underlying negligent hiring, supervision, credentialing claims.  Similarly, Mr. Wilson raised concerns about Dr. Hansen's competence to perform surgical procedures that were not at issue in the Underlying Claims.  Second, because it is undisputed that Mr. Mangum and Mr. Wilson did not raise concerns relating to the care provided to Snell, Oliver, Johnson, Sommerville, or Stambaugh, the Underlying Claims were not

"reasonably foresee[able]" to PVHC prior to the inception of the Homeland policy.

Therefore, the Trustee is entitled to partial summary judgment that Homeland's prior knowledge exclusion is inapplicable to the Snell, Oliver, Johnson, Sommerville, and Stambaugh claims.

## II.  UNDISPUTED MATERIAL FACTS

PVHC applied for professional and general liability coverage and Homeland issued a hospital professional liability policy and excess policy for the period of August 1, 2013 to August 1, 2014.  ECF # 1, Complaint, ¶¶ 20, 27.[3]  It is undisputed that during the Homeland Policy, PVHC timely reported to Homeland the Snell, Oliver, Johnson, Sommerville, and Stambaugh claims.[4]  This Motion only seeks partial summary judgment for five of the six claims that were made during the Homeland policy year: Snell, Oliver, Johnson, Sommerville, and Stambaugh (hereinafter "Underlying Claims" or "Underlying Plaintiffs").[5]

---

[3]     Prior to August 1, 2013, PVHC had been insured by AIG/Lexington, another party to this litigation.  Lexington had insured PVHC under a "claims made" professional liability policy for several years prior to the Homeland policies.

[4]     PVHC also reported the Wilson claim to Homeland during the Homeland policy period, but that claim is not included in this motion.

[5]     The underlying cases were filed as follows:

- *Oliver v. HealthTech Management Services, Inc., et al.,* Civ. No. 28035 (Wyo. Dist. Ct. 5th Jud. Dist. filed May 4, 2015) [Complaint attached hereto as Exhibit A];

- *Snell v. HealthTech Management Services, Inc., et al.,* Civ. No. 27805 (Wyo. Dist. Ct. 5th Jud. Dist. filed Sept. 12, 2014) [First Amended Complaint attached hereto as Exhibit B];

- *Sommerville v. HealthTech Management Services, Inc., et al.,* Civ. No. 27813 (Wyo. Dist. Ct. 5th Jud. Dist. filed Sept. 22, 2014) [First Amended Complaint attached hereto as Exhibit C];

3

**A.  Snell, Oliver, Johnson, Sommerville, and Stambaugh Underwent Different Surgical Procedures Occurring Primarily Between December 2008 and September 2012.**

The allegations of medical negligence set forth in the Snell, Oliver, Johnson, Sommerville, and Stambaugh cases are unique to each case as to the affected body part, type of procedure, adverse outcome, and acts of negligence:

**Veronica Sommerville:** Veronica Sommerville alleged that Dr. Hansen performed an unconsented mid-foot fusion and traumatized her gastrocnemius nerve, leaving her with chronic regional pain syndrome.  Ex. C, Sommerville First Amended Complaint at ¶¶ 29, 31, 42.  Ms. Sommerville's surgery took place on October 22, 2011, with revision surgeries occurring on December 28, 2011 and November 6, 2012.  *Id.* at ¶¶ 25, 31, 38.

**Michelle Oliver:** Michelle Oliver alleged a botched ACL repair surgery on August 21, 2012, with continuing treatment on March 5, 2013, and April 30, 2013.  Ex. A, Oliver First Amended Complaint at ¶¶ 27, 29, 34.

**Joetta Johnson:** Joetta Johnson alleged that Dr. Hansen performed an unnecessary ulnar shortening procedure on her wrist on September 1, 2011, with continuing treatment on October 2, 2012.  Ex. E, Johnson First Amended Complaint at ¶¶ 30, 34, 63.

**Lynn Snell:** Lynn Snell alleged nerve damage caused by poor surgical technique during the repair of his broken humerus on September 18, 2012, with a follow-up procedure on October

---

- *Stambaugh v. Hansen, et al.,* Civ. No. 27818 (Wyo. Dist. Ct. 5th J. Dist. filed Sept. 26, 2014) and *Stambaugh v. HealthTech Management Services, Inc., et al.,* Civ. No. 27758 (Wyo. Dist. Ct. 5th J. Dist. filed Aug. 5, 2014) [Complaints attached hereto as Exhibit D]; and

- *Johnson v. HealthTech Management Services, Inc., et al.*, Civ. No. 27821 (Wyo. Dist. Ct. 5th Jud. Dist. filed Sept. 29, 2014) [First Amended Complaint attached hereto as Exhibit E].

4, 2012.  Ex. B, Snell First Amended Complaint at ¶¶ 28, 31.

**Susan Stambaugh:** Susan Stambaugh alleged nerve injuries and chronic pain resulting from a series of wrist surgeries performed by Dr. Hansen between December 2008 and August 2012.  Ex. D, Stambaugh Complaint (Civ. No. 27818) at ¶¶ 16-18.

### B. Citing Concerns Raised Prior to August 1, 2013, by Mr. Mangum and Mr. Wilson about Dr. Hansen's Competence, Homeland Reserved its Rights Under the Prior Knowledge Exclusion.

In September 2014, Homeland began issuing reservation of rights letters on the first of the Underlying Claims, asserting the prior knowledge exclusion as a defense to coverage.  ECF # 1, Complaint, ¶ 31.  The exclusion provides as follows:

### (D) Exclusions Applicable to ALL INSURING AGREEMENTS:

[T]his Policy does not apply to, and the Underwriter will not pay **Loss**[6] or **Defense Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

> (1) act, error, omission or **Wrongful Act** if any **Insured**, on or before the Inception Dates set forth in ITEM 2 of the Declarations, knew or reasonably could have foreseen that such act, error, omission or **Wrongful Act** might result in a **Claim.**

****

ECF # 1-1, Policy Part II, at ECF p.1.  By its terms, the Policy excludes coverage for a particular **Wrongful Act** if the insured knew or should have known that *that* ("such") particular **Wrongful Act** might result in a claim.  Homeland's coverage position was <u>not</u> based on PVHC's pre-policy knowledge of negligent treatment of any of the particular Underlying Plaintiffs, however.

Instead, the sole basis for Homeland's reliance on the prior knowledge exclusion was Mr. Wilson's and Mr. Mangum's testimony in *Harris* and *DuRose*.  Homeland explained its coverage

---

[6]    Throughout this memorandum, terms applying in bold represent defined terms in the Homeland Policy, which also appear in bold in the policy.

5

position as follows:

> Both the *Harris* and the *Durose* actions were tendered by the **Insured** to the
> Insurer providing coverage prior to the inception date of the Homeland Policy.  In
> addition, testimony solicited during the course of those two actions discloses that
> at least two "whistleblowers", Scott Wilson and Brad Mangum, provided detailed
> information to the Insured prior to the inception of the Homeland policy regarding
> the alleged deficiencies of Dr. Hansen, and consistent with the allegations of his
> competence contained in [the Underlying Claims].  Coverage for [the Underlying
> Claim] is thus excluded under the Homeland Policy as [the Underlying Claim] is
> based upon, arising out of, is directly or indirectly resulting from, is in
> consequence of, or is in any way involving any actual or alleged act, error,
> omission or wrongful act any **Insured**, on or before the inception date, knew or
> reasonably could have foreseen might result in a **Claim** . . . .

Ex. F, Sept. 26, 2014 Coverage Letter (Johnson). [7]

Shortly thereafter, in February 2015, Homeland filed this declaratory judgment action,

asking the Court to find that the prior knowledge exclusion bars coverage for the Underlying

Claims.  Consistent with its denial of coverage letters, Homeland's complaint identified Mr.

Mangum's and Mr. Wilson's testimony as the sole basis for its invocation of the prior knowledge

exclusion.  ECF # 1, ¶ 19.

### C. Mr. Mangum's and Mr. Wilson's Testimony Do not Support the Application of the Prior Knowledge Exclusion to the Underlying Claims.

In discovery, PVHC asked Homeland to identify the basis for its denials of coverage.  In

response, Homeland once again identified only Mr. Mangum's and Mr. Wilson's testimony from

*Durose* and *Harris* as the factual basis for its denial of coverage based on its prior knowledge

exclusion:

> . . . . According to the testimony of Mr. Mangum and Mr. Wilson, Insureds under
> the Homeland Policies (including, but not limited to Powell, PVHC, Dr. Rieb (the
> Hospital's Chief of Surgery), Tim Seeley (the Hospital's Director of Risk
> Management) and members of the Board), had knowledge, before the August 1,
> 2013 inception date of the Homeland Policies, of an alleged act, error, omission or
> Wrongful Act that it knew or reasonably could have foreseen might result in a

---

[7]     The identical letters were sent to deny coverage for the Snell, Sommerville, Oliver and
Stambaugh claims.

Claim. Specifically, the concerns expressed to Powell/PHVC regarding Dr. Hansen's surgical incompetence and Powell/PHVC's failure to timely address those concerns are consistent with the allegations asserted by each of the Underlying Claims. Therefore, Powell/PHVC was aware, from the information it had from Mr. Mangum and Mr. Wilson (and potentially other information and/or information from unknown persons) long before the Homeland Policies incepted on August 1, 2013, of the alleged surgical incompetencies of Dr. Hansen and was further aware of its own alleged acts, errors and omissions in continuing to allow Dr. Hansen to perform surgeries on, and provide related care to, the Hospital's patients. Because the claims of the Underlying Claimants are based upon these same alleged acts, errors and omissions, and Powell/PHVC knew or reasonably could have foreseen that these acts, errors and omissions might result in a Claim prior to the inception of the Homeland Policies, coverage for these claims is excluded under the Policy.

*See* Ex. G, Homeland Ans. to ROG 1.

Homeland's interrogatory answer further identified the following specific testimony and deposition exhibits as the bases for its prior knowledge defense:

### 1. Mr. Mangum's Testimony

First, Homeland relies on the deposition testimony of Brad Mangum, a nurse practitioner, who worked with Dr. Hansen from December 2012 to November 2014, and was deposed in the *DuRose* case. Ex. H, Mangum Dep. 28:19-20, 79:13. Homeland's interrogatory answer cites to the following testimony from and exhibits to Mr. Mangum's deposition to support its application of the prior knowledge exclusion:

- Exhibits 4 and 5 to Mr. Mangum's deposition, which document the timing of concerns that Mr. Mangum raised to PVHC's Chief of Surgery, Director of Risk Management, and CEO. Ex. I, Mangum Dep. Ex. 4, Ex. J, Mangum Dep. Ex. 5.

- Mr. Mangum's testimony that in March 2013 he reviewed six cases that he was concerned about with Dr. Nathaniel Rieb, then PVHC chief of staff. Ex. H, Mangum Dep. at 52:1-6.

- Mr. Mangum's Deposition Exhibit 4, which states that he met Tim Seeley, then PVHC's risk manager, in April 2013 with general concerns about Dr. Hansen.  Ex. I, Mangum Dep. Ex. 4

- Mr. Mangum's testimony that he discussed his concerns with PVHC's CEO, William Patten, at the end of May 2013 because he was disappointed given it was his belief nothing had happened after his conversations with Dr. Rieb and Mr. Seeley.  Ex. H, Mangum Dep. 135:13-15.  Mr. Patten told Mr. Mangum that the medical committees had to do their investigation and would take action if appropriate.  Ex. I, Mangum Dep. Ex. 4, at 5.

- Exhibits 8 and 9 to Mr. Mangum's deposition, which are two letters from February 14, 2014, acknowledging that information provided by Mr. Mangum led to Dr. Hansen's suspension in November 2013.  Ex. K, Mangum Dep. Ex. 8; Ex. L, Mangum Dep. Ex. 9.

Ex. G, Homeland Ans. to ROG 1.

Critically, Homeland does not allege (and the deposition testimony does not demonstrate) that Mr. Mangum raised concerns about (1) the care provided to the Underlying Plaintiffs; or (2) PVHC's credentialing, supervision, or hiring of Dr. Hansen between 2008 and 2012, when the Snell, Oliver, Johnson, Sommerville, and Stambaugh surgeries took place.

### 2.  Mr. Wilson's Testimony

Homeland also relies on the deposition testimony of Scott Wilson, a physician assistant who worked with Dr. Hansen at PVHC from 2006 to 2010.  Ex. G, Homeland Ans. to ROG 1. Homeland claims that pages 61-82 of Mr. Wilson's testimony support application of the prior knowledge exclusion to the Underlying Claimants.  *Id.*  Homeland characterizes Mr. Wilson's testimony as follows:

> Scott Wilson testified by deposition in the *Harris* matter that he repeatedly
> expressed concerns about Dr. Hansen to the Hospital during his tenure, including
> conversations with the Hospital's then CEO Mike Gilmore. Specifically, Mr.
> Wilson reported to the Hospital his concerns regarding Dr. Hansen's case
> selection and further that Dr. Hansen was taking on cases that he was not
> qualified to do. According to Mr. Wilson, the Hospital would not do anything
> and pushed back on Mr. Wilson which then led to Mr. Wilson's departure.

*Id.*

But in reality, Mr. Wilson raised a narrow set of concerns that are factually distinct from the Underlying Claims. For example, Mr. Wilson testified that during his tenure at PVHC, he brought concerns to Rod Barton, then CEO of PVHC, about Dr. Hansen's patient selection. Ex. M, Wilson Dep. 61:21-62:21. He testified, "it seemed that we repeatedly took on patients with a high chance of poor outcomes," although he clarified he was only speaking "from a physician assistant's perspective" and "I'm not an orthopedic-trained physician . . . ." *Id.* at 62:13-20. None of the Underlying Claims alleged that the claimant had a high chance of a poor outcome.

Mr. Wilson also spoke to Mike Gilmore, PVHC vice president of physician services, about Dr. Hansen's performance of total hip arthroplasties. Mr. Wilson felt that Dr. Hansen was ending up with "[a] disproportionate percentage of abnormal alignments." *Id.* at 62:20-21. Mr. Wilson refused to scrub-in on any back surgeries that Dr. Hansen performed because he did not feel PVHC was properly equipped for those types of surgeries. *Id.* at 65:10-24. None of the Underlying Claims involve hip arthroplasties or back surgeries.

Mr. Wilson also made clear that his concern was not Dr. Hansen's surgical skills. *Id.* at 79:16-18 ("I don't believe it was his surgical technique or his surgical — in time surgical decision-making."). Mr. Wilson stopped working at PVHC in November 2010 — nearly three years before the inception of the Homeland Policy. *Id.* at 66:8.

The Underlying Claims were of no concern to Mr. Wilson. His testimony does not support Homeland's prior knowledge exclusion.

9

III.  LEGAL STANDARDS

**A.  Summary Judgment Standards**

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in
> favor of either side. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106
> S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is material if under the
> substantive law it is essential to the proper disposition of the claim. *Adler v. Wal–
> Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers
> the evidence presented by the parties, "[t]he evidence of the non-movant is to be
> believed, and all justifiable inferences are to be drawn in the non-movant's favor."
> *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.
>
> The party moving for summary judgment has the burden of establishing the
> nonexistence of a genuine dispute of material fact. *Lynch v. Barrett,* 703 F.3d
> 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either
> (1) offering affirmative evidence that negates an essential element of the
> nonmoving party's claim, or (2) demonstrating that the nonmoving party's
> evidence is insufficient to establish an essential element of the nonmoving party's
> claim. *See* Fed.R.Civ.P. 56(c)(1)(A)-(B).
>
> Once the moving party satisfies this initial burden, the nonmoving party must
> support its contention that a genuine dispute of material fact exists either by (1)
> citing to particular materials in the record, or (2) showing that the materials cited
> by the moving party do not establish the absence of a genuine dispute.  *See id.*
>
> * * *
>
> When considering a motion for summary judgment, the court's role is not to
> weigh the evidence and decide the truth of the matter, but rather to determine
> whether a genuine dispute of material fact exists for trial. *Anderson,* 477 U.S. at
> 249, 106 S.Ct. 2505.

*Nat'l Union Fire Co. of Pittsburgh, PA. v. Toland*, 164 F.Supp.3d 1330, 1333–34 (D. Wyo.

2016).

Importantly, "[t]he mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there is no *genuine* issue of *material* fact." *Daniels v. Kerr McGee Coal Corp.*, 841 F. Supp. 1133, 1134 (D. Wyo. 1993) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

In the context of an insurance coverage dispute, "[i]nterpretation of the contractual language is a matter of law for the court, provided the language is clear and unambiguous. If the language is not clear or there are other material issues of fact, summary judgment is not appropriate." *Hurst v. Metro. Prop. & Cas. Ins. Co.*, 2017 WY 104, ¶ 10, 401 P.3d 891, 895 (Wyo. 2017). Where the application of an insurance exclusion turns on questions of fact, the Court may interpret the insurance contract in order to "give the jury guidance in reference to the law of the case to assist it in arriving at correct conclusions." *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 31 (Wyo. 1983).

**B. Standards Governing Insurance Policies**

"[A] federal court sitting in diversity must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question." *Cooperman v. David,* 214 F.3d 1162, 1164 (10th Cir. 2000). Wyoming applies "a standard of interpretation for insurance policies which declares that the words used are given the plain meaning that a reasonable person, in the position of the insured, understands them to mean." *Doctors' Co. v. Ins. Corp. of Am.*, 864 P.2d 1018, 1023 (Wyo. 1993).[8] "[T]he insurer has the burden of showing

---

[8]     Wyoming follows the Restatement (Second) of Conflict of Laws and holds that the law of the state that has the most significant relationship to the contract applies. *Elworthy v. First Tennessee Bank*, 2017 WY 33, ¶ 26, 391 P.3d 1113, 1121 (Wyo. 2017); *see Carolina Cas. Ins. Co. v. Burlington Ins. Co.*, No. 17-CV-20-F, 2018 WL 8131680, at *2–3 (D. Wyo. May 11, 2018), <u>amended,</u> No. 17-CV-20-F, 2018 WL 8131679 (D. Wyo. Aug. 31, 2018), *judgment corrected*, No. 17-CV-20-F, 2018 WL 8131678 (D. Wyo. Oct. 31, 2018). Here, the insurance contract was intended to cover a Wyoming hospital, treating patients in Wyoming. Therefore, Wyoming law applies.

that the loss was within a policy exclusion . . . " *Hursh Agency, Inc.*, 664 P.2d at 31.

Ambiguous insurance clauses are narrowly construed in favor of coverage. *See Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 540 (Wyo. 1996) ("[W]here such [insurance policy] contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be construed **liberally in favor of the insured and strictly against the insurer**." (alterations in original) (quotations omitted) (emphasis added)). "Whether a contract is ambiguous is for the court to decide as a matter of law." *T.M. ex rel. Cox v. Exec. Risk Indem. Inc.,* 2002 WY 179, ¶ 8, 59 P.3d 721, 725 (Wyo. 2002). An insurance policy is ambiguous "if it is capable of more than one reasonable interpretation." *Doctor's Co.,* 864 P.2d at 1024. "[I]f the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted." *Id.*

Further, even when insurance exclusions are clear and unambiguous, the Wyoming Supreme Court will not enforce exclusions that are against public policy. *See Century Sur. Co. v. Jim Hipner, LLC,* 2016 WY 81, ¶ 20, 377 P.3d 784, 792 (Wyo. 2016). To that end, exclusions that render coverage illusory are void. *Id.* "An illusory promise is one that makes performance entirely optional." *Reichert v. Daugherty,* 2018 WY 103, ¶ 19, 425 P.3d 990, 995 (Wyo. 2018). The Wyoming Supreme Court also will not enforce exclusions that provide a windfall to insurance companies. *Century Sur. Co.,* 2016 WY at ¶ 14, 377 P.3d at 790 (explaining that Wyoming has "expressed [a] disfavor of undeserved windfalls to insurance companies.").

IV. **ARGUMENT**

The prior knowledge exclusion has three requirements: (1) it requires Homeland to identify an "act, error, omission, or **Wrongful Act**" that PVHC knew of before the policy's

inception; (2) it requires that PVHC "reasonably could have foreseen that *such* act, error, omission, or **Wrongful Act** might result in a **Claim**"; and (3) the exclusion only applies to claims that are in fact "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving" the "act, error, omission, or **Wrongful Act**". Homeland frames the relevant act, error, omission or Wrongful Act as PVHC's failure to timely address concerns about Dr. Hansen's surgical incompetency — i.e., PVHC's negligent retention, credentialing, and supervision of Dr. Hansen after Mr. Mangum's and Mr. Wilson's complaints. Ex. G, Homeland Ans. to ROG 1.

The problem with Homeland's analysis is twofold.  **FIRST,** the Mangum and Wilson testimony does not demonstrate that PVHC had prior knowledge of an act, error, omission, or Wrongful Act actually giving rise to the Underlying Claims.  Even assuming *arguendo* that the Mangum and Wilson testimony demonstrates that PVHC had prior knowledge of its own negligence in retaining Dr. Hansen *after* March 2013, in credentialing Dr. Hansen for back surgeries or hip arthroplasties, or for negligently supervising his patient selection, the Underlying Claims do not arise from these Wrongful Acts.  **SECOND,** PVHC could not have reasonably foreseen the Underlying Claims, absent evidence that PVHC knew about allegations of deficient care to the Underlying Plaintiffs.  Because there is no such evidence, Trustee is entitled to judgment as a matter of law on the application of Homeland's "prior knowledge" defense to the Underlying Claims.

### A.  The Wilson and Mangum Testimony Does not Demonstrate that PVHC had Knowledge of any Act, Error, Omission, or Wrongful Act Giving Rise to the Underlying Claims

First, Homeland overlooks the specific language of its prior knowledge exclusion, which requires prior knowledge of the very same "Wrongful Act" for which coverage is being sought. Instead, Homeland relies on Mangum's and Wilson's testimony, which is completely irrelevant

13

to the Underlying Claims because it discusses complaints about PVHC's retention of Dr. Hansen months (or in some cases years), after the malpractice giving rise to the Underlying Claims, or complaints about Dr. Hansen's competence in areas having nothing to do with the type of medical negligence alleged by the Underlying Plaintiffs.  Thus, the Underlying Claims do not arise from these Wrongful Acts.

For example, with respect to Mr. Mangum's testimony, the Underlying Claims do not assert that PVHC was negligent in retaining Dr. Hansen in the spring of 2013, when Mr. Mangum began raising concerns about Dr. Hansen's competence.  Indeed, PVHC's alleged failure to react to Mr. Mangum's concerns cannot form the basis of the negligent hiring, credentialing, or supervision claims alleged in the Underlying Claims because the Snell, Oliver, Johnson, Sommerville, and Stambaugh surgeries all occurred before Mr. Mangum even began working at PVHC.

Likewise, although Mr. Wilson's complaints preceded the Snell, Oliver, Johnson, Sommerville, and Stambaugh surgeries, his concerns did not relate to the types of medical negligence alleged in the Underlying Claims.  Mr. Wilson testified that he complained to PVHC about Dr. Hansen's performance of back surgeries and hip arthroscopies — but none of the Underlying Claims involve those surgeries.  The Underlying Claims also do not implicate Mr. Wilson's concerns about Dr. Hansen's selection of patients with higher risks of bad outcomes.

In short, there is no evidence that Mr. Mangum or Mr. Wilson put PVHC on notice of an act, error, omission or Wrongful Act that the Underlying Claims are in fact "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving," so as a matter of law, their concerns cannot trigger the prior knowledge exclusion for the Underlying Claims.

14

**B.  The Underlying Claims Were not Reasonably Foreseeable to PVHC Prior to
August 1, 2013 Because PVHC Did not Know the Facts of the Underlying
Malpractice.**

Homeland's prior knowledge defense also fails under the "reasonably" foreseeable

requirement because there is no evidence that PVHC had prior knowledge of the allegations of

medical negligence for Snell, Oliver, Johnson, Sommerville or Stambaugh.  In order for a

negligent credentialing, supervision, or hiring claim to be cognizable, there must also be an event

of medical negligence.  *Beavis v. Campbell Cnty Mem'l Hosp.,* 2001 WY 32, ¶ 19, 20 P.3d 508,

515 (Wyo. 2001) ("[O]ne element of negligent hiring is some form of misconduct by the

employee resulting in damage to the plaintiff.").  However, nothing in Mr. Mangum's or Mr.

Wilson's testimony, suggests that PVHC had notice of Dr. Hansen's negligent treatment of any

Underlying Plaintiff prior to August 1, 2013 (or even notice of bad outcomes to these

individuals).  Thus, even assuming *arguendo* that PVHC had knowledge of its own negligence in

hiring Dr. Hansen, supervising Dr. Hansen, or credentialing him for the relevant procedures,

between 2008 and 2012 (which it did not), without knowledge of deficiencies in his care to each

Underlying Plaintiff, PVHC could not reasonably foresee their claims.

Homeland is likely to rely on the Tenth Circuit case *Cohen-Esrey Real Estate Services,*

*Inc. v. Twin City Fire Insurance Co.,* 636 F.3d 1300 (10th Cir. 2011).  In that case, an employee

of an apartment management company embezzled money from the Department of Housing and

Urban Development ("HUD").  *Id.* at 1301.  The management company discovered the fraud in

2006 and *immediately reported it to its insurer.  Id.*  Shortly thereafter, the management

company purchased a new insurance policy and, apparently because it believed that it had a good

defense to liability, did not report the fraud to its new insurer.  *Id.*  When HUD sought damages

for the company's negligent retention and supervision of the employee, the insurer denied

coverage based on a "condition precedent" (as opposed to an exclusion) that at the policy's

15

inception the insured "was not aware of a Wrongful Act, fact, circumstance or situation that it knew or could reasonably have foreseen might result in a claim." *Id.* at 1302. Applying Kansas law, the Tenth Circuit used a subjective-objective test. *Id.* at 1303. The subjective prong focused on what facts the insured actually knew, and the objective prong focused on whether, based on those facts, a claim was reasonably foreseeable. *Id.* The court held that a claim could be reasonably foreseeable, even where the insured had a good defense to liability. The court explained that "the threat of a claim, even an unfounded one, is relevant to the insurer's exposure . . . ." *Id.*

In contrast to the instant case, the insured in *Cohen-Esrey Real Estate, Inc.* knew that its employee committed fraud and that HUD had been damaged by its employee's theft, and was so concerned about potential liability *that it reported the event to its previous insurer*. The insured apparently chose not to report the claim to its new insurer after weighing the strengths of its liability defenses and determining that a claim was unlikely. Unlike the insured in *Cohen-Esrey Real Estate, Inc.,* prior to August 1, 2013, PVHC could not reach the step of weighing its possible defenses because PVHC did not have notice of negligent care to any of the Underlying Plaintiffs.

This case is more similar to *OneBeacon Insurance Company v. T. Wade Welch & Associates,* where the Fifth Circuit examined a similar prior knowledge exclusion in a Homeland[9] policy and held that the insured could not reasonably foresee a legal malpractice claim because although the insured knew of its mistake prior to the policy's inception, the insured did not yet know that its mistake would result in harm to the client. 841 F.3d 669, 677 (5th Cir. 2016). In that case, prior to the inception of the OneBeacon policy, the insured law firm

---

[9]     PVHC's Homeland Policy was also issued under the name OneBeacon. ECF # 1, at ECF p. 29.

violated a federal court's discovery order.  *Id.* at 672.  Two months after the law firm bound

coverage with OneBeacon, the court entered "death penalty" sanctions against the insured's

client in the underlying litigation, which deemed the claims against the client established and

precluded the client from challenging damages evidence.  *Id.* at 673.  After learning of the

resulting legal malpractice claim, OneBeacon denied coverage under its prior knowledge

exclusion.  At trial, a jury issued a verdict of twenty-eight million dollars against OneBeacon.

*Id.* at 675.  On appeal, the Fifth Circuit held that even though the insured law firm may have

known of its failure to comply with the discovery order before it bound coverage, it could not

have reasonably foreseen the severity of the sanctions order in the underlying litigation.  *Id.* at

677.  The court concluded "OneBeacon [aka Homeland], **which bears the burden of proving**

**an exclusion applies**, cannot prevail as a matter of law . . . ."  *Id.* (emphasis added).  Similarly,

in this case Homeland has the burden of proving that its exclusion applies.

The foreseeability requirement simply cannot be met when the insured does not know

that the potential claimant was damaged by its pre-policy mistake.  Here, even if Mr. Mangum

and Mr. Wilson's testimony could establish that prior to August 1, 2013, PVHC knew that it had

made a mistake in credentialing, retaining, or supervising Dr. Hansen (which it did not), without

knowledge of deficient care to each Underlying Plaintiff, PVHC still would be unable to

reasonably foresee the Underlying Claims.

## V.  Conclusion

Mr. Mangum's and Mr. Wilson's testimony and corresponding deposition exhibits do not

trigger Homeland's prior knowledge exclusion for each of the Underlying Claims.  The insured

must know of a **Wrongful Act**, the claim must be reasonably foreseeable, and the denied claim

must in fact arise from the **"Wrongful Act."**  The only "facts" Homeland relies on to assert this

exclusion are undisputed and do not meet these three requirements.  Accordingly, the Trustee

respectfully requests that the Court enter an order granting partial summary judgment that

Homeland's prior knowledge exclusion does not exclude coverage for the Snell, Oliver, Johnson,

Sommerville and Stambaugh claims.


Dated this 9th day of January 2020.

                         _ /s/ Robert A. Krause_____
                         Robert A. Krause
                         Mel C. Orchard, III
                         Elizabeth A. Richards
                         Sarah A. Kellogg
                         THE SPENCE LAW FIRM, LLC
                         15 S Jackson Street, P.O. Box 548
                         Jackson, WY 83001
                         (307) 733-7290;
                         (307) 733-5248 (fax)

                         Jon M. Moyers
                         MOYERS LAW P.C.
                         3936 Avenue B, Suite D
                         Billings, Montana 59102
                         (406) 655-4900

                         Kathryn Kohn Troldahl,
                         KOHN LAW, P.A.
                         P.O. Box 390074
                         Minneapolis, MN 55439
                         (612) 597-3899; (888) 519-3472 (fax)

                         *Attorneys for the Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2020, the foregoing Trustee's Motion for Partial Summary Judgment on the Application of Homeland Insurance Company of New York's Prior Knowledge Exclusion to the Snell, Oliver, Johnson, Sommerville, Stambaugh Claims was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Charles Spevacek
cspevacek@meagher.com
MEAGHER & GEER, PLLP
33 South Sixth Street
Suite 4400
Minneapolis, MN  55402

Judith Studer
jstuder@schwartzbon.com
SCHWARTZ BON WALKER & STUDER, LLC
141 South Center Street, Suite 500
Casper, WY  82601

*Attorneys for Homeland Insurance Company of New York*

R. Jeff Carlisle
jcarlisle@lynberg.com
Catherine A. Naltsas
cnaltsas@lynberg.com
Jerome P Doctors
jdoctors@lyndberg.com
LYNBERG & WATKINS, APC
1150 S. Olive Street
Eighteenth Floor
Los Angeles, CA 90015

Deborah M. Kellam
kellamd@hallevans.com
HALL & EVANS, LLC
866 North Fourth Street, Suite 3
Laramie, WY 82072

*Attorneys for Lexington Insurance Company*

_/s/ Robert A. Krause_____
*Attorney for the Trustee*

19