Robert A. Krause (WSB # 5-2824)
krause@spencelawyers.com
Mel C. Orchard, III (WSB # 5-2894)
orchard@spencelawyers.com
Elizabeth A. Richards (WSB # 6-4249)
richards@spencelawyers.com
Sarah A. Kellogg (WSB # 7-5355)
kellogg@spencelawyers.com
THE SPENCE LAW FIRM, LLC
15 S Jackson Street, P.O. Box 548
Jackson, WY 83001
(307) 733-7290

Jon M. Moyers (WSB # 6-3661)
jon@jmoyerslaw.com
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900

Kathryn Kohn Troldahl (*pro hac vice*)
kohnkathryn1@gmail.com
KOHN LAW, P.A.
P.O. Box 390074
Minneapolis, MN 55439
(612) 597-3899

*Attorneys for Scott J. Goldstein, Personal Injury Trustee for the Personal Injury Trust of Powell Valley Health Care, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| SCOTT J. GOLDSTEIN, PERSONAL INJURY TRUSTEE FOR THE PERSONAL INJURY TRUST OF POWELL VALLEY HEALTH CARE, INC.,<br><br>Plaintiff,<br>v.<br><br>LEXINGTON INSURANCE COMPANY,<br><br>Defendant. | Case No. 15-CV-31-J<br><br>**TRUSTEE'S MOTION TO COMPEL LEXINGTON INSURANCE COMPANY TO RESPOND TO REQUEST FOR PRODUCTION NO. 11** |

COMES NOW, Scott Goldstein, Personal Injury Trustee for the Personal Injury Trust for Powell Valley Health Care, Inc. ("Trust" and "Trustee") and files his Motion to Compel Lexington Insurance Company to Respond to Request for Production No. 11.

Between 2012 and 2015, Lexington Insurance Company ("Lexington") provided excess umbrella and healthcare professional liability coverage to HealthTech Management Services, Inc. ("HealthTech"), a hospital management company that contracted to manage Powell Valley Health Care, Inc. ("PVHC"). Pursuant to the HealthTech-PVHC management agreement, HealthTech employee William Patten served as the CEO of PVHC. Beginning in 2014, HealthTech and/or Patten were sued by sixteen patients of Jeffrey Hansen, M.D., an orthopedic surgeon employed at PVHC (hereinafter "Underlying Claims"). The patients alleged that HealthTech and Patten's negligent supervision of Dr. Hansen and of PVHC facilitated Dr. Hansen's negligent practice of medicine at the hospital. HealthTech and Patten timely tendered the Underlying Claims to Lexington — but Lexington denied coverage. As a result of PVHC's subsequent bankruptcy, HealthTech assigned its claims against Lexington[1] to the Trustee and the Trustee now asserts claims for coverage and bad faith under the HealthTech-Lexington policy.

This Motion to Compel relates to Lexington's refusal to provide its underwriting files in response to the Trustee's Request for Production No. 11.

I. BACKGROUND

Earlier in this case, the Court held that underwriting files belonging to a different insurance company, Homeland Insurance Company of New York ("Homeland"), were relevant

---

[1]   The assignment included all claims and rights arising under the HealthTech-Lexington policy number 6797081, except for claims arising under the policy's Errors and Omissions Coverage. *See* ECF # 154, Supp. Counterclaims at ¶ 6 (setting forth scope of assignment); ECF # 156, Lexington Answer at ¶ 6 (admitting scope of assignment).

2

and proportionate to the Trustee's claims for coverage under the insurance policy that Homeland issued to PVHC.  ECF # 137, Order on Motion to Compel.  The Court reasoned that the underwriting files could be relevant to the issues of whether Homeland's policy was ambiguous, to interpreting an ambiguous clause, or to a claim for estoppel.  The same reasoning compels the production of Lexington's underwriting files.  A brief discussion of three of the coverage issues presented under the HealthTech-Lexington policy is helpful to understanding how Lexington's underwriting files are relevant.

**First**, just like Homeland, Lexington takes the position that coverage is barred under its prior knowledge exclusion.  Ex. A, Answer to ROG 5.  The exclusion bars coverage for:

> Acts, errors or omissions of which an Insured had knowledge prior to the inception date of the policy period, if, as of such date and insured could reasonably foresee that a claim might result.

*Id.*  Lexington argues that the Underlying Claims are excluded because HealthTech had prior knowledge of Dr. Hansen's allege deficiencies.  This raises the question of whether Lexington also had prior knowledge of these allegations.

**Second,** the insuring agreement in the HealthTech-Lexington healthcare professional liability section of the policy states that Lexington will pay "damages resulting from a **medical incident** arising out of **professional services** provided by any insured . . . ."  ECF # 140-3, 2013–14 HealthTech Lexington Policy, at ECF p. 33 (emphasis in original).  The Policy defines "professional services," to include "[s]upervising . . . others at [HealthTech's] request."  *Id.* at ECF p. 12.  Lexington argues the Underlying Claims do not fall within the scope of the professional liability coverage because HealthTech did not provide "professional services" to PVHC.  Lexington relies on two provisions in the PVHC-HealthTech management agreement, which state that HealthTech's "supervisory and management authority shall not extend to any aspect of [PVHC's] employees' professional medical judgment . . ." and that "all matters

3

requiring professional medical judgment shall remain the sole responsibility of Hospital's medical staff . . . ." *See* Ex. B, Lexington Ans. to ROG 13.  Lexington argues that because HealthTech did not have supervisory authority over Dr. Hansen's **medical** decisions, it could not have provided "professional services" to PVHC so as to fall within the scope of the insuring agreement.  *See id*.

In making this argument, Lexington reads the requirement for supervisory authority over **medical** decisions into its policy language.  *See* ECF # 140-3, Policy at ECF p. 12.  Under a more reasonable interpretation of "professional services", the term "supervision" applies to the many supervisory functions that HealthTech unambiguously contracted to provide to PVHC.  This includes, for example, "provid[ing] CEO-level **oversight** of the recruitment, **hiring**, promotion, **discharge, supervision,** disciplining and management of all employees of Hospital (including employed physicians) . . ."; "**overseeing** that the Hospital has appropriate systems in place to administer compliance with the policies, rules, regulations, and compliance programs adopted by the Board . . ."; and "Exercis[ing] CEO-level **supervision** of Hospital's internal affairs and maintain[ing] order and discipline in the Hospital" Ex. C, Management Agreement at ¶¶ 1.2.1(a) & 2.2.1 (a) (emphasis added).  Mr. Patten testified to his own understanding that the management agreement and the bylaws gave him the authority to suspend Dr. Hansen's privileges (Ex. D, Patten Dep. 96:1-11, 100:21) and the authority to terminate Dr. Hansen's employment (*Id.* at 104:21–23).

More fundamentally, the Underlying Claimants alleged that irrespective of the language of the management agreement, in practice, HealthTech and Patten did in fact exercise supervisory functions at PVHC.  Claimant Kalan Nicholson, for example, alleged that Mr. Patten fielded patient safety complaints and had the power and authority to terminate Dr. Hansen — but

4

negligently failed to do so.[2]  Ex. E, Nicholson Complaint at ¶¶ 66–70.  To support her claim that HealthTech and Patten had a duty to supervise Dr. Hansen, Ms. Nicholson's Complaint attached a copy of PVHC's 2013 insurance application, which was signed by Mr. Patten.  *Id.* at Ex. C.  In that Application, Mr. Patten represented that HealthTech was involved in the "management of clinical services" at PVHC, was contracted to "manage all services" at PVHC, and that Mr. Patten was responsible for coordinating PVHC's risk management program.  *Id.* at p. 10.  The Trustee believes that Lexington's underwriting files may contain similar representations by HealthTech about functions that HealthTech and Patten were performing at PVHC and other hospitals.  These representations would be relevant to the scope of professional liability coverage that HealthTech intended to purchase and that Lexington knew is was underwriting.

**Third**, Lexington asserts that coverage is barred by the "Owned & Operated" exclusion contained in its policy.  *See* ECF # 140-3, Policy at ECF p. 53.  As its forty-ninth affirmative defense, Lexington asserts that the HealthTech-Lexington policy does not "apply to any liability arising out of any healthcare facility owned or operated by [HealthTech]."  ECF # 156, Lexington Ans. at ¶ 49.  The application of the Owned & Operated exclusion to the Underlying Claims turns on the meaning of the undefined term "operated."  Lexington urges a reading of its exclusion that equates "managing" a hospital to "operating" a hospital.  Any such construction of the term "operated" renders the Policy's Management Services Errors & Omissions Endorsement completely illusory because there could never be a facility *managed* by HealthTech but not *operated* by HealthTech.  *See* ECF # 140-3, at ECF p. 44.  For purposes of this Motion, the key

---

[2]     Ms. Nicholson was a juvenile in 2013 when Dr. Hansen operated on her during a time period when his privileges were restricted so that he should not have been performing juvenile surgeries.  Ms. Nicholson alleged that Mr. Patten failed to have appropriate systems in place to enforce these restrictions on Dr. Hansen's privileges.

5

point is that the parties will urge different constructions of "operated," and the Court will likely be required to determine if this term is ambiguous. Lexington's underwriting files may contain information bearing on the intended scope of the Owned & Operated exclusion. For example, the application likely required HealthTech to list each hospital it managed and/or operated and to specify what services were provided at each facility. *See* ECF # 140-3, Policy at ECF p. 44 ("You agree to provide us with a complete listing of all contracts with managed organizations as reasonably requested by us."). This information could be relevant to an argument that the undefined term "operated" is ambiguous.

## II. REQUEST FOR PRODUCTION NO. 11 & LEXINGTON'S RESPONSE

Against this backdrop, the Trustee served Request for Production No. 11, which seeks:

> [C]opies of all documents submitted to or by Lexington Insurance Company or others, including HealthTech, in connection with HealthTech's application for insurance coverage, including correspondence, insurance application forms and attachment, and other materials and information Lexington Insurance Company requested or relied upon while issuing or renewing Lexington-Health policy 6797081, effective September 30, 2011 through November 1, 2016.

Lexington objected on the basis of relevance and proportionality and provided no responsive documents. Lexington stated:

> Lexington incorporates its preliminary statement and General Objections as if fully set forth herein. Lexington further objects to this request because it seeks documents that are not relevant to any party's claim or defenses and are not proportional to the needs of this case because documents submitted in connection with HealthTech's application for insurance do not bear on the scope of coverage provided under the policies.

Ex. B, Response to RFP 11.

## III. COMPLIANCE WITH LOCAL RULES 7.1 & 37.1

Pursuant to Local Rules 7.1 and 37.1, on March 13, 2020 Trustee's Counsel sent a letter to Lexington's Counsel, setting forth the basis of Plaintiff's discovery objections. A copy of that letter is attached hereto as Exhibit F. Next, Trustee's counsel conferred orally with counsel for

6

Lexington on April 3, 2020. The parties then attended an informal discovery conference with Judge Carman on April 7, 2020 and Judge Carman granted Plaintiff permission to file this Motion

### IV. LEGAL STANDARDS

**a. Standards governing discovery**

Federal Rule of Civil Procedure 26 governs the scope of discovery. The Rule provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. **Information within this scope of discovery need not be admissible in evidence to be discoverable**.

Fed. R. Civ. P. 26(b)(1). "The burden to prove disproportionality remains with the party resisting discovery." *See Sinclair Wyo. Ref. Co. v. A&B Builders, Ltd.*, No. 15-CV-91-ABJ, 2017 WL 10309306, at *5 (D. Wyo. Oct. 31, 2017).

**b. Standards governing the discoverability of underwriting files**

Courts hold that underwriting files are relevant and discoverable to insurance coverage disputes for a variety of reasons:

> The underwriting file is relevant to determining the risks that [the insurer] expected to cover in the policy, how it interpreted the various policy terms, and whether the terms of the policy are ambiguous in the first instance.

*Silgan Containers v. Nat'l Union Fire Ins.,* No. C 09-05971 RS, 2010 WL 5387748, *8 (N.D. Cal. Dec. 21, 2010). *See e.g., Riverport Ins. Co. v. State Farm Fire & Cas. Co.,* No. 2:18-cv-00330-GMN-NJK, 2018 WL 6435883,* 2 (D. Nev. Dec. 6, 2018) ("[C]ourts do not generally resolve the issue of ambiguity through a motion to compel and will instead allow the discovery to proceed notwithstanding arguments of a lack of ambiguity."); *Thompson v. Nat'l Union Fire*

*Ins. Co. of Pitt.,* 3:14-CV-00259-WWE, 2015 WL 753721, * 8 (D. Ct. Feb. 23, 2015) (holding that underwriting materials are discoverable); *Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 702 (S.D. Fla. 2007) ("[I]n breach of contract claims, [underwriting files are] only discoverable when the contract terms are ambiguous.").

In its order compelling Homeland to provide its underwriting files, the Court primarily focused on the fact that information contained in the underwriting files could be relevant to whether the insurance contract was ambiguous and to interpreting any ambiguity. ECF # 37, Order on Motion to Compel, at 6–8. The Court held that extrinsic evidence is relevant not only to the construction of ambiguous contract clauses, but also to determining whether a clause is ambiguous in the first place. *Id.* at 7 (citing *Mathisen v. Thunder Basin Coal Co. LLC,* 169 P.3d 61, 65 (Wyo. 2007) (Wyoming courts "may consider extrinsic evidence bearing up the meaning of the written terms, such as evidence . . . of the circumstances surrounding the making of the contract.").

The underwriting process may also be relevant to a claim for estoppel. For example, in *Doctors' Company v. Insurance Corporation of America*, the Wyoming Supreme Court held that an insurer will be precluded from "a denial of insurance coverage in situations where fraud or injustice would otherwise result." 864 P.2d 1018, 1029 (Wyo. 1993). The Court further held that "[i]njustice is found when the promisor reasonably should have expected that the affirmative representations he or she made would induce the promisee into action or forbearance of a substantial nature and where the promisee shows such detrimental reliance." *Id.*

V. ANALYSIS

The Court should hold that Lexington's underwriting files are discoverable because they may be relevant to an argument that the terms "professional services," "supervising," and

8

"operated" are ambiguous or to a claim for estoppel. Lexington has not carried its burden to show that this request is disproportionate.

For example, if Lexington and HealthTech communicated their intent to provide coverage for liability arising from HealthTech's management of health care facilities (which seems apparent given the inclusion of the Management Services endorsement) this could bear on the meaning of the undefined term "operated," as used in Lexington's Owned & Operated exclusion. *See* ECF # 140-3, Policy at ECF p. 44 (Management Services endorsement) & p. 53 (Owned & Operated exclusion). Equating the phrase "managed" with "operated," as Lexington urges, renders the Management Services Endorsement illusory. *See Century Sur. Co. v. Jim Hipner, LLC,* 2016 WY 81, ¶ 20, 377 P.3d 784, 792 (Wyo. 2016) (holding exclusions that render coverage illusory are void as against public policy).

Along the same lines, HealthTech's communications about the scope of the services it provided to PVHC could be relevant to finding the undefined term "supervising" ambiguous, as used in Lexington's definition of "professional services." If HealthTech represented the scope of its management services as falling outside of Lexington's definition of "professional services," and yet Lexington sold HealthTech a professional liability policy that only covers damages arising from "professional services," coverage would be illusory and void.

Lexington's underwriting process might also be relevant to an argument that Lexington is estopped from denying coverage.[3] In *Doctors' Company,* the Wyoming Supreme Court held that an insurer was estopped from relying on its prior knowledge exclusion to deny coverage

---

[3] Lexington also puts its underwriting at issue by raising estoppel as its twenty-seventh affirmative defense. ECF# 156, Answer at ¶ 28. Lexington has not disclosed the factual basis of this affirmative defense, but to the extent that Lexington intends to argue, for example, that HealthTech failed to fully disclose the scope of its work at PVHC, Lexington's underwriting files would be essential to rebutting this defense.

after the insured disclosed a claim on his insurance application and the insurer failed to specifically exclude the claim from coverage. *Doctors' Company*, 864 P.2d at 1029. Here, information obtained during Lexington's underwriting could support an argument that Lexington is estopped from invoking its prior knowledge exclusion because it failed to specifically exclude the Underlying Claims from coverage.⁴

Finally, with respect to Lexington's proportionality objection, it is Lexington's burden to show that the underwriting files are disproportionate to the needs of the case. *See Sinclair Wyo. Ref. Co.*, No. 15-CV-91-ABJ, 2017 WL 10309306, at *5. In compelling the production of Homeland's underwriting files, the Court explained, "Homeland has no doubt already gathered and reviewed the documents." ECF # 137, at 9. Here, Lexington provides no explanation for why its underwriting files would be burdensome or expensive to produce and given the $23,000,000 in judgments entered against HealthTech, it is reasonable to expect that Lexington has also already gathered and reviewed the responsive documents.

## VI.   CONCLUSION

This Court has already held that underwriting files are relevant, proportionate, and discoverable to show that a policy is ambiguous or to support an argument for estoppel. Accordingly, the Trustee respectfully requests that the Court grant this motion and order Lexington to fully respond to Request for Production No. 11.

Dated this 23rd day of April 2020.    <u>/s/ Robert A. Krause</u>

    Robert A. Krause

---

⁴ Similarly, Lexington may be estopped from denying professional liability coverage for HealthTech's negligent management of PVHC, if HealthTech disclosed the scope of its management responsibilities to Lexington, but Lexington failed to specifically exclude management work from its professional liability coverage. Further, to the extent that Lexington made representations to HealthTech about the scope of its Owned & Operated exclusion that are inconsistent with Lexington's current position, this could support an argument for estoppel.

          Mel C. Orchard, III
Elizabeth A. Richards
Sarah A. Kellogg
THE SPENCE LAW FIRM, LLC
15 S Jackson Street, P.O. Box 548
Jackson, WY 83001
(307) 733-7290;

Jon M. Moyers
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900

Kathryn Kohn Troldahl
KOHN LAW, P.A.
P.O. Box 390074
Minneapolis, MN 55439
(612) 597-3899

*Attorneys for the Trustee*

## CERTIFICATE OF SERVICE

      I hereby certify that I have served a true and correct copy of the foregoing, Trustee's Motion to Compel, was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard H. Nicolaides, Jr.
rnicolaides@nicolaidesllp.com
Matthew S. Sorem
msorem@nicolaidesllp.com
Samuel Y. Chen
schen@nicolaidesllp.com
NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN, LLP
10 S. Wacker Driv,e Suite 2100
Chicago, IL 60606

R. Jeff Carlisle
jcarlisle@lynberg.com
Catherine A. Naltsas
cnaltsas@lynberg.com
Jerome P Doctors
jdoctors@lyndberg.com
LYNBERG & WATKINS, APC
1150 S. Olive Street, 18th Floor
Los Angeles, California 90015

Deborah M. Kellam
kellamd@hallevans.com
HALL & EVANS, LLC
866 North 4th Street, Suite 3
Laramie, WY 82072

*Attorneys for Lexington Insurance Company*

Dated this 23rd day of April, 2020.

                                                                     _/s/ Robert A. Krause__
                                                                       *Attorney for the Trustee*