Richard H. Nicolaides, Jr.
Matthew S. Sorem
Samuel Y. Chen
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker Drive, Suite 2100
Chicago, IL 60606
T: (312) 585-1400
rnicolaides@nicolaidesllp.com
msorem@nicolaidesllp.com
schen@nicolaidesllp.com

Deborah M. Kellam, WSB #5-2541
HALL & EVANS, LLC
866 N. 4th Street, Suite 3
Laramie, WY 82072
T: (307) 514-2567
kellamd@hallevans.com

*Attorneys for Counterclaim-Defendant*
*Lexington Insurance Company*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| SCOTT J. GOLDSTEIN, AS THE PERSONAL INJURY TRUSTEE FOR THE PERSONAL INJURY TRUST OF POWELL VALLEY HEALTHCARE, INC., | Civil Action No. 15-CV-31-J |
| Plaintiff, | |
| vs. | **LEXINGTON INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO TRUSTEE'S MOTION TO COMPEL LEXINGTON INSURANCE COMPANY TO RESPOND TO REQUEST FOR PRODUCTION NO. 11** |
| LEXINGTON INSURANCE COMPANY, | |
| Defendant. | |

Lexington Insurance Company ("Lexington") submits this Response in Opposition to Scott J. Goldstein, the Personal Injury Trustee of the Personal Injury Trust for Powell Valley Health Care, Inc.'s ("the Trustee") Motion to Compel (ECF 206).

### INTRODUCTION

This case concerns the Trustee's claim against Lexington seeking payment of more than $23 million in judgments entered by consent against William Patten and HealthTech Management

Services, Inc. ("HealthTech") in sixteen underlying lawsuits.  The underlying lawsuits arose from Dr. Jeffry Hansen's alleged medical malpractice during his tenure as an orthopedic surgeon with his employer, Powell Valley Health Care, Inc. ("Powell Valley").   The underlying lawsuits asserted that HealthTech, a hospital management company that contracted with Powell Valley, and HealthTech's employee, Patten, who served as Powell Valley's CEO, were also liable for patient injuries inflicted by Dr. Hansen.  The Trustee, as assignee of HealthTech and Patten's rights under certain insurance policies issued by Lexington, now claims that Lexington owes indemnity for the judgments.

The Trustee currently seeks to compel Lexington to produce documents responsive to its Request for Production No. 11, propounded on February 4, 2020 as part of the Trustee's Third Combined Discovery to Lexington.  Request for Production No. 11 requests:

> "[C]opies of all documents submitted to or by Lexington Insurance Company or others, including HealthTech, in connection with HealthTech's application for insurance coverage, including correspondence, insurance application forms and attachments, and other materials and information Lexington Insurance Company requested or relied upon when issuing or renewing Lexington-HealthTech policy 6797081, effective September 30, 2011 through November 1, 2016."

The documents and information sought in Request for Production No. 11 (collectively, "the Lexington underwriting files") are not relevant to the insurance coverage claims and defenses at issue.   In addition, with respect to HealthTech's insurance application submissions, those documents are already available to the Trustee, which stands in HealthTech's shoes for purposes of this coverage litigation.  Therefore, the discovery request is also disproportional, given the parties' relative access to the requested information.  For these reasons, the Court should deny the Trustee's Motion to Compel.

## ARGUMENT

**I.      Information In Lexington's Underwriting Files Is Not Relevant to Any of the Parties' Claims or Defenses**

The scope of appropriate discovery only includes information that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). At issue in this lawsuit is whether HealthTech and Patten's liability falls within the scope of coverage as provided by the unambiguous terms of Lexington's insurance policies. Nothing in the Lexington underwriting files can make any fact relevant to the insurance coverage issues more or less probable, and are thus irrelevant. Fed. R. Evid. 401.

**A.      Unlike Homeland, Lexington Has Not Placed Its Underwriting At Issue**

The Trustee attempts to analogize its motion to compel to a prior motion in this case in which the Court ordered Homeland Insurance Company of New York ("Homeland") to produce its underwriting documents. (ECF 137.) The two scenarios are distinct, however, and the Court's reasoning with respect to the motion against Homeland does not apply here.

The Court found that Homeland's underwriting process was placed at issue in significant part because Homeland originally defended Powell Valley against one of the underlying lawsuits, but later denied coverage, claiming to have learned of prior, purportedly related claims that were made before Homeland's policy period. (*Id.* at 9.) The Court found that Homeland's change of course placed at issue what Homeland itself knew about the prior claims and when it had that knowledge. (*Id.*) The Trustee fails to identify any similar change of position by Lexington that could arguably place at issue whether Lexington was aware of a potential coverage defense at the time its policies were issued. As a result, the Trustee's contention that Lexington and Homeland are similarly situated and that the Court already resolved the issues presented by the pending motion are not true, and Lexington's underwriting files are not relevant here.

**B.     The Lexington Policies' Terms Are Unambiguous and Must Be Construed According to Their Plain and Ordinary Meaning**

The Trustee does not contend in his motion that the Lexington policies' terms are ambiguous.  Instead, it is evident that the Trustee seeks Lexington's underwriting in the hopes of manufacturing an ambiguity.  The Trustee cites to the policies' use of the terms "professional services," "supervising," and "operated"[1] as instances where an ambiguity might *potentially* exist if certain hypothetical documents existed, and he relies on Wyoming case law holding that extrinsic evidence may be relevant to determining the existence of an ambiguity in a contract that is otherwise unambiguous on its face.  (ECF 206 8-9.)  *See Mathisen v. Thunder Basin Coal Co., LLC*, 169 P.3d 61, 65 (Wyo. 2007).  These arguments must fail, as the cases the Trustee relies on involve limited circumstances not present here, and even in those narrow circumstances, statements of what the parties intended their contract to mean still are not admissible.

The general rule is that the interpretation of an insurance policy's terms is a question of law for the Court.  *Mem'l Hosp. of Sweetwater Cty. v. Menapace*, 404 P.3d 1179, 1182 (Wyo. 2017).  The Court's interpretation should begin with the term's plain meaning, in the context of the policy as a whole.  *Id.*  If the insurance contract is unambiguous, the Court should enforce the contract in accordance with its plain meaning.  *Hurst v. Metro. Prop. & Cas. Ins. Co.*, 2017 401 P.3d 891, 895 (Wyo. 2017) (internal quotation omitted).  "Disagreement by the parties concerning the meaning of a contract term does not render the contract ambiguous."  *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 956 (Wyo. 1999).

---

[1] In discussing the term "operated," the Trustee discusses the policies' Management Services Errors & Omissions Endorsement (the "E&O coverage part").  The Trustee appears to contend that the E&O coverage part is the relevant and potentially applicable coverage part relative to HealthTech's liabilities in connection with its managed facilities such as the Powell Valley hospital.  (ECF 206 at 5.)  Lexington agrees, and notes that the Trustee *was not assigned and is not seeking coverage under the E&O coverage part of Lexington's policies*.

In the context of interpreting insurance policies, Wyoming law requires that the policy terms be given their plain meaning, as understood by a reasonable person. *See Doctors' Co. v. Ins. Corp. of Am.*, 864 P.2d 1018, 1024 (Wyo. 1993); *Hurst*, 401 P.3d at 895.  Because the courts apply an objective approach to interpreting insurance policies, "evidence of the parties' subjective intent is not relevant or admissible in interpreting a contract."  *Mem'l Hosp.*, 404 P.3d at 1182 (internal quotation omitted).  Therefore, when an insurance policy is unambiguous, the underwriting files, which reflect the process through which the policy was issued and agreed to, are irrelevant and not discoverable.  *See, e.g., St. Paul Fire & Marine Ins. Co. v. Rosen Millennium Inc.*, No. 617CV540ORL41GJK, 2018 WL 3827656, at *3 (M.D. Fla. June 12, 2018) (sustaining insurer's objection to production of underwriting files where underwriting was not at issue and policy was unambiguous); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691 (S.D. Fla. 2007) (holding underwriting files are not discoverable in breach of contract claims where there are no underwriting issues and policy is not ambiguous); *National Union Fire Ins. Co. v. Mead Johnson & Co.*, No. 3:11–CV00015–RLY–WGH, 2014 WL 931947, at *3 (S.D. Ind. March 10, 2014) (same).

Even in the limited Wyoming case law that the Trustee cites as allowing discovery of extrinsic evidence to determine whether an ambiguity exists, it is clear that any exception to the general rule is a limited one, and that it applies only in cases where the parties may have intended a word or phrase to carry a special meaning in the context of the contract rather than its plain and ordinary meaning.  For example, in *Mullinnix v. HKB Royalty*, the court looked to extrinsic evidence of "custom and usage" to determine whether the parties to a deed signed in the 1940s had understood the term "oil rights" to also encompass gas rights, explaining that such evidence can be considered relative to "the use of phrases of a peculiar technical meaning which, when unexplained, are susceptible of two or more plain and reasonable constructions."  *Mullinnix LLC*

*v. HKB Royalty Tr.*, 126 P.3d 909, 921 (Wyo. 2006).  *See also Mathisen v. Thunder Basin Coal*, 169 P.3d at 65 ("Even if the words of a deed are plain and unambiguous, when a party establishes the existence of a material issue of fact regarding whether a particular term or phrase used in a deed had a special meaning at the time and place of its use, we will consider extrinsic evidence to resolve that issue.")

Unlike in <u>Mullinix</u> and <u>Mathisen</u>, the Trustee has not raised an issue as to whether the parties here intended the phrases "professional services" (which is defined in the policies), "supervising," and "operated" to carry some special meaning rather than their plain and ordinary meaning based on a peculiar custom and usage.  Therefore, under Wyoming's fundamental principles of contract construction, extrinsic evidence regarding these terms is not relevant and the narrow exception allowing for the discovery of such information does not apply.  Furthermore, even in those narrow circumstances when extrinsic evidence may be relevant, which are not present here, the general rule that "the parties' statements of what they intended the contract to mean are not admissible" still applies.  *See Mullinnix*, 126 P.3d at 921.  The Trustee's arguments are based solely on the hypothetical existence of documents that express the parties' "intent" when they entered into the insurance contracts, thereby giving the Court insight as to the proper interpretation of the policies.  (ECF 206 at 5, 6, and 9.)  This type of argument is expressly impermissible under Wyoming law.

As the scope of coverage under the Lexington policies is an issue of law to be determined by the Court, and as Wyoming law does not support the use of the Lexington underwriting files in determining the scope of coverage provided, such evidence is not relevant to this case.

**C.** **Any Representations in Underwriting Submissions Regarding HealthTech's and/or Patten's Duties Would Be Irrelevant**

The Lexington underwriting files are also irrelevant for purposes of determining whether Patten and HealthTech committed any acts or omissions that fall within scope of coverage under Lexington's policies.  The Trustee refers to a document attached as an exhibit to a complaint in the underlying Nicholson lawsuit that is purportedly a Powell Valley insurance application, and which refers to HealthTech and Patten's role in the hospital's management.  The Trustee contends that if there are similar references in HealthTech's submissions, they could be relevant in showing what HealthTech and Lexington intended to be the scope of coverage.  As discussed above, this type of extrinsic evidence relating to what the parties intended their contract to be is irrelevant where the language of the contract itself is clear.

Moreover, the nature of the responsibilities or acts that exposed HealthTech and Patten to liability in the underlying lawsuits, if any, is a question of fact to be determined from information developed in the underlying lawsuits.  *See Carolina Cas. Ins. Co. v. Burlington Ins. Co.*, 951 F.3d 1199, 1214 (10th Cir. 2020).  Patten and HealthTech's purported liability in the underlying lawsuits depends on their contractual duties under the Management Services Agreement between HealthTech and Powell Valley, and on Patten's actual acts and omissions as Powell Valley's CEO.  An insurance application's characterization of Patten or HealthTech's role at the time the policies were applied for bears no relation to what HealthTech and Patten actually did or did not do relative to the underlying lawsuits.  As the Lexington underwriting files have no bearing on the facts relating to the determination of coverage, they are not relevant.

**D.** **The Trustee's Estoppel-Related Arguments Do Not Make The Lexington Underwriting Files Relevant**

The Trustee's attempt to place Lexington's underwriting files at issue by reference to hypothetical estoppel-related arguments should also be rejected.  The Trustee argues that estoppel

could preclude Lexington from relying on its policies' "prior acts" exclusion if the potentially excluded acts or omissions were also known to Lexington before the policies were issued.  (ECF 206 at 9-10.)  The prior acts exclusion applies to liability arising out of "acts, errors or omissions of which an insured had knowledge prior to the inception date of the policy period" if the insured "could reasonably foresee that a claim might result."  This argument is entirely hypothetical, as the Trustee fails to identify any dispute as to HealthTech's or Lexington's knowledge about any relevant act or omission.

In a footnote, the Trustee also argues that by pleading an affirmative defense of estoppel, Lexington has somehow placed its underwriting files at issue because Lexington *could* argue that HealthTech's failure to disclose certain information precludes coverage.  (*Id.* at 9.)   Again, Lexington has not made any argument regarding the information that HealthTech disclosed to it, nor has it asserted that any of its defenses depend on any information contained in its underwriting files.  As the Trustee's arguments are based purely on hypotheticals rather than on any party's actual claims or defenses, the Trustee has not made any showing of relevance and Lexington should not be compelled to produce its underwriting.  *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1234 (10th Cir. 2020) (upholding lower court's rejection of discovery requests, which were based on "pure speculation as to the existence of helpful facts").

### E.   The Trustee's Arguments Do not Support the Broad Scope of His Discovery Request

The Trustee's Motion to Compel addresses the purported relevance only of certain types of documents submitted by HealthTech relating to its knowledge, the nature of its work, and the scope of coverage it intended to purchase.  However, Request for Production No. 11 seeks, and the motion seeks to compel, production of Lexington's complete underwriting files.  The Trustee does not seek only the subset of application-related submissions he argues are potentially relevant,

but the complete underwriting files, which would include the additional proprietary information used by Lexington in underwriting and pricing its policies.  The Trustee makes no argument in support of requiring the complete files to be produced.  Thus, even if there were merit to the Trustee's arguments regarding the ambiguity of certain terms or the viability of certain claims or defenses, which Lexington denies, those arguments would only warrant discovery of materials relevant to those issues, not of Lexington's complete underwriting files.

## II.     The Disclosure of Lexington's Underwriting Files Is Disproportionate To The Needs of the Case

With respect to proportionality, Federal Rule of Civil Procedure 26(b)(1) directs the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  As discussed above, the only documents the Trustee argues are relevant are HealthTech's own submissions.  Even if those documents bore some minimal relevance to this case (they do not), compelling their production would be disproportionate to the needs of this case because the documents are readily available to the Trustee.  *See Swift Beef Co. v. Alex Lee, Inc.*, No. 18-0105-EFM-KGG, 2018 WL 5634003, at \*5 (D. Kan. Oct. 31, 2018) (quashing a subpoena for minimally relevant documents readily available from other sources). The Trustee is standing in HealthTech's shoes for purposes of discovery.  All of the documents the Trustee argues are potentially relevant are documents generated by or exchanged with HealthTech in connection with its application for coverage.  Even if those documents exist and contain the information the Trustee argues they might, he already has access to them.  Therefore, the request for production is disproportionate to the needs of the case.

## <u>CONCLUSION</u>

Lexington should not be compelled to produce its underwriting files because they are not relevant to the claims and defenses in this case, and because their production is disproportional to the needs of the case in light of the Trustee's direct access to the documents through HealthTech. For these reasons, Lexington respectfully requests that the Court deny the Trustee's Motion to Compel.

Respectfully submitted this 8th day of May 2020.

**LEXINGTON INSURANCE COMPANY**

*s/ Deborah M. Kellam*
Deborah M. Kellam, W.S.B. #5-2541
Hall & Evans, LLC
866 N. 4th Street, Suite 3
Laramie, Wyoming 82072
Telephone: (307) 514-2567
Facsimile: (307) 514-2568
kellamd@hallevans.com

**and**

Richard H. Nicolaides, Jr.
Matthew S. Sorem
Samuel Y. Chen
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker Drive, Suite 2100
Chicago, IL 60606
T: (312) 585-1400
rnicolaides@nicolaidesllp.com
msorem@nicolaidesllp.com
schen@nicolaidesllp.com

***Attorneys for Defendant, Lexington Insurance Company***

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of May, 2020, I electronically filed the foregoing **LEXINGTON'S RESPONSE IN OPPOSITION TO TRUSTEE'S MOTION TO COMPEL LEXINGTON TO RESPOND TO REQUEST FOR PRODUCTION NO. 11** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

*Counsel for Scott J. Goldstein, Personal Injury Trustee for the Personal Injury Trust of Powell Valley Health Care, Inc.*

Robert A. Krause, WSB #5-2824
Mel C. Orchard, III (WSB # 5-2894)
Elizabeth A. Richards (WSB # 6-4249)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, WY 83001
krause@spencelawyers.com
orchard@spencelawyers.com
richards@spencelaywers.com
kellogg@spencelaywers.com

*Counsel for Scott J. Goldstein, Personal Injury Trustee for the Personal Injury Trust of Powell Valley Health Care, Inc.*

Jon M. Moyers WY State Bar #6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900
(406) 655-4905 fax
jon@jmoyerslaw.com

Kathryn Kohn Troldahl (*Pro Hac Vice*)
KOHN LAW P.A.
P.O. Box 390074
Minneapolis, Minnesota 55439
(612) 597-6899
(888) 519-3472 fax
kohnkathryn1@gmail.com

William Fix
fixlawoffice@gmail.com

*Attorneys for Lexington Insurance Company*

R. Jeff Carlisle, Esq.
Jerome P. Doctors, Esq.
Catherine A. Naltsas, Esq.
LYNBERG & WATKINS, APC
1150 S. Olive Street, 18th Floor
Los Angeles, CA 90015
T:  213-624-8700
F:  213-892-2763
jcarlisle@lynberg.com
jdoctors@lynberg.com
cnaltsas@lynberg.com

*Attorneys for Lexington Insurance Company*

Richard H. Nicolaides, Jr., Esq.
Matthew S. Sorem, Esq.
Samuel Y. Chen, Esq.
NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP
10 S. Wacker Drive, Suite 2100
Chicago, Illinois 60606
Telephone: (312) 585-1400
Facsimile: (312) 585-1401
rnicolaides@nicolaidesllp.com
msorem@nicolaidesllp.com
schen@nicolaidesllp.com

*s/ Erica H. Malloy*
Erica H. Malloy, Legal Assistant
Hall & Evans, LLC